IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JOHN BUSSIAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Cause No. _____ |
| | ) |
| | ) |
| DAIMLERCHRYSLER CORPORATION; | ) |
| DAIMLERCHRYSLER AG; | ) |
| DAIMLERCHRYSLER MOTORS | ) |
| COMPANY OF DELAWARE LLC; and | ) |
| DAIMLERCHRYSLER NORTH | ) |
| AMERICA HOLDING CORPORATION, | ) |
| | ) |
| Defendants. | ) |

**1:04CV00387**

FILED
MAY 0 3 2004
IN THIS OFFICE
Clerk U. S. District Court
Greensboro, N. C.
BY _____

## NOTICE OF REMOVAL

This Notice of Removal is filed on behalf of DaimlerChrysler Corporation,

DaimlerChrysler Motors Company of Delaware LLC, and DaimlerChrysler North America

Holding Corporation.[1]

## BACKGROUND

1.    On or about March 5, 2004, Plaintiff John Bussian ("Plaintiff") filed a putative 49

state class action against DaimlerChrysler AG and DaimlerChrysler North America Holding

Corporation in the General Court of Justice, Durham County, North Carolina, entitled *John

Bussian vs. DaimlerChrysler AG and DaimlerChrysler North America Holding Corporation*,

No. 4CV01095. That Complaint was served on DaimlerChrysler North America Holding

Corporation by mail, postmarked March 8, 2004. The initial Complaint was not removable

---

[1]DaimlerChrysler AG, a foreign corporation with no offices in the United States, has not yet been served
with process. The served Defendants are all separate entities, none of which are authorized to accept service for
DaimlerChrysler AG.

based on the allegations made therein. (A copy of the Complaint and summons is attached hereto as Exhibit A).

2. On April 5, 2004, Plaintiff filed his "First Amended Class Action Complaint" in state court, adding DaimlerChrysler Corporation and DaimlerChrysler Motors Company of Delaware LLC as additional defendants, and requesting, for the first time, equitable relief.

3. Plaintiff's First Amended Class Action Complaint was served on DaimlerChrysler Corporation, DaimlerChrysler Motors Company of Delaware LLC, and DaimlerChrysler North America Holding Corporation, by mail postmarked April 5, 2004. (Copies of the First Amended Class Action Class Action Complaint, together with the summons served, are attached hereto as Exhibit B).

4. Plaintiff filed his First Amended Complaint on behalf of himself and a putative class defined as "[a]ll individuals and entities throughout the United States, excepting the State of Wisconsin, that have owned, own, leased, lease or otherwise acquired Dodge Durango sports utility vehicles from the model years 1998 through 2003." (First Amended Class Action Complaint ("Am. Comp."), ¶ 39).

5. In his Complaint, Plaintiff alleges that the vehicles owned by the class are defective in that "the control arm and the ball joint on the front suspension design are faulty, inferior, and prone to sudden failure." (Am. Comp. ¶ 3). Plaintiff alleges that Defendants have "failed to acknowledge or notify the public" of these alleged defects, "nor have Defendants voluntarily recalled or repaired these defective parts." (Am. Comp. ¶ 30). Plaintiff also alleges that he and the members of the putative class have no adequate remedy at law. (Am. Comp. ¶ 54).

2

6.     Plaintiff seeks relief under theories of: Breach of Express Warranty (Count I); Breach of Implied Warranty of Merchantability (Count II); and for Magnuson-Moss Warranty Act Violations (Count III). (Am. Comp. ¶¶ 55-79). Plaintiff seeks various forms of relief, including: "an award of actual damages in an amount above $10,000, to be proven at trial, and the establishment of a common fund"; "[a]ll remedies, including equitable relief, as may be permitted pursuant to the Magnuson-Moss warranty [sic] Act"; and, of course, attorneys' fees. (Am. Comp., Relief Requested).

## CONSTITUTIONALLY AUTHORIZED RIGHT TO REMOVAL

7.     Under 28 U.S.C. § 1441, Congress has granted defendants the statutory right to remove a case from a state court to a United States district court where that case could have originally been filed. This grant is authorized by Article III, Section 2 of the United States Constitution, which extends judicial power of the federal courts to controversies "between citizens of different states." U.S. Const. Art. III; 28 U.S.C. § 1332.

8.     Removal is proper in this case as this Court has original jurisdiction of this action under 28 U.S.C. § 1332. There is complete diversity of citizenship between the parties and the amount in controversy, exclusive of interests and costs, exceeds $75,000. *See* 28 U.S.C. § 1441. Furthermore, under 28 U.S.C. § 1367, this Court has jurisdiction over the claims of those class members whose claims do not exceed $75,000 (if any). *See* Rosmer v. Pfizer Inc., 263 F.3d 110 (4th Cir. 2001).

## BASIS FOR FEDERAL COURT JURISDICTION

9.     Plaintiff is a citizen of the State of North Carolina. (Am. Comp. ¶ 9).

10. DaimlerChrysler Corporation is a citizen of the State of Delaware where it is incorporated, and the State of Michigan where its principal place of business is located. (Am. Comp. ¶ 10).

11. DaimlerChrysler AG is a citizen of the Federal Republic of Germany with no office located in the United States. (Comp. ¶ 11).

12. DaimlerChrysler Motors Company of Delaware, LLC is a citizen of the State of Delaware where it is incorporated, and the State of Michigan where its principal place of business is located. (Am. Comp. ¶ 12).

13. DaimlerChrysler North America Holding Corporation is a citizen of both Delaware, where it is incorporated, and Michigan, where its principal place of business is located. (Comp. ¶ 13).

14. In this District, when a defendant removes a case based on 28 U.S.C. § 1332, and the parties are of diverse citizenship, jurisdiction exists if a preponderance of the evidence indicates that the amount in controversy exceeds $75,000. <u>Dash v. FirstPlus Home Loan Trust 1996-2</u>, 248 F.Supp.2d 489, 497 (M.D.N.C. 2003) (<i>citing</i> <u>Michael v. Bayer Corp.</u>, No. 1:01CV1106, 2003 WL 151850 at *3 (M.D.N.C. Jan. 8, 2003); <u>Turner v. CTS Con-Way Transp. Servs.</u>, No. 1:98CV00624, 1999 WL 1939243 at *1 (M.D.N.C. Apr. 28, 1999)).

15. In determining whether the amount in controversy exceeds this Court's jurisdictional threshold, "[e]ven if no single claim is for an amount in excess of [the required jurisdictional amount], if the aggregate of all claims is in excess of [the required amount], jurisdiction exists for each count." <u>Griffin v. Red Run Lodge, Inc.</u>, 610 F.2d 1198, 1204 (4th Cir. 1979); <i>see also</i> <u>Klepper v. First American Bank</u>, 916 F.2d 337, 341 (6th Cir. 1990) ("It is well established that claims can be aggregated to satisfy the jurisdictional amount requirement"). That

4

is, all of the claims asserted by a single plaintiff are considered together when determining whether the requisite amount in controversy is met. Id.

16. In the Fourth Circuit, when a plaintiff seeks equitable/injunctive relief, "the amount in controversy is the pecuniary result to *either party* which that judgment would produce." Government Employees Insurance Co. v. Lally, 327 F.2d 568, 569 (4th Cir. 1964) (emphasis added); *see also* Liberty Mutual Fire Insurance Co. v. Hayes, 122 F.3d 1061 (4th Cir. 1997) (Table Only), 1997 WL 568673 *3 (noting that "[i]n determining the value of the object of litigation" for purposes of determining the "amount in controversy," the Fourth Circuit "has employed the 'either party approach,' examining the potential pecuniary effect that a judgment would have on either party to the litigation" (citation omitted)).

17. Here, the "amount in controversy" requirement of 28 U.S.C. § 1332 is satisfied by Plaintiff's request for an award of actual damages, plus "[a]ll remedies, including equitable relief, as may be permitted ..." (Am. Comp., Relief Requested). The equitable relief requested by Plaintiff could take many forms, including a request for an injunction compelling Defendants to replace the "control arm" and "ball joints" on all Durango vehicles with new, differently designed components, and/or a request that Defendants engage in some type of a public notification campaign related to the alleged defect. *See, e.g.,* Lieb v. American Motors Corp., 538 F.Supp. 127, 134 (S.D.N.Y. 1982) (noting that the Magnuson-Moss Warranty Act "does not limit equitable relief in private suits to repair, replacement, or refund," and that, under the Act, a party can seek an injunction mandating that a defendant affix warning stickers to motor vehicles and/or that the defendant notify owners of alleged vehicle defects). Indeed, in two consolidated

cases virtually identical to this one, this is exactly what the plaintiffs requested.[2] *See* Zeqiri v. DaimlerChrysler AG, Case No. 03-C-0852 (E.D.Wis. April 9, 2004).[3] And, based on these allegations the court in Zeqiri held that the amount in controversy requisite was satisfied. Id. The plaintiffs in other unrelated vehicle defect cases have requested similar types of equitable relief. *See, e.g.,* In re Ford Motor Co. Bronco II Prod. Liab. Litig., 1995 WL 714441 *2 (E.D.La. 1995) (in case alleging defects in motor vehicle, court noted: "Plaintiffs seek a variety of equitable and damages relief, including ... an injunction requiring Ford to provide public notice that the Bronco II contains a latent, dangerous defect or to recall or retrofit all Bronco IIs").

18.     Plaintiff's request for "all" available equitable relief is sufficient to satisfy this Court's jurisdictional threshold because the remedies implicated by such a request would impose on Defendants costs exceeding $75,000, even if just one aspect of equitable relief was awarded to just the named Plaintiff. *See* Affidavit of Stephen L. Williams, attached hereto as Exhibit D. And, the fact that Plaintiff prays for "an award of actual damages" in addition to this requested "equitable relief" makes clear that this Court's jurisdictional threshold is satisfied. Indeed, at least one court has found that in class actions involving an alleged vehicle defect the requisite amount in controversy for exercise of federal jurisdiction is satisfied based solely on the costs associated with assembling a list of vehicle owners and mailing notice to them. Miller v. General Motors Corp., 2002 WL 31375526 *1 fn.1 (N.D.Ill. 2002).

---

[2] After removal, in an unsuccessful effort to defeat removal, the plaintiffs in Zeqiri amended their complaint and removed their request for injunctive relief in the form of an order compelling the defendants "to repair the defective upper ball joint on Dodge Durangos from the model years 1998 to 2003," and compelling the defendants to "institute, at their own cost, an awareness campaign to alert the Class of the defect in and the dangers associated with, the Dodge Durango."

[3] A copy of the opinion in Zeqiri is attached hereto as Exhibit C.

6

## REMOVAL IS PROPER

19.    DaimlerChrysler Corporation, DaimlerChrysler Motors Company of Delaware LLC, and DaimlerChrysler North America Holding Corporation were served with Plaintiff's First Amended Class Action Complaint by mail, postmarked April 5, 2004; therefore, this Notice of Removal is timely filed within thirty (30) days after receipt of the First Amended Class Action Complaint (the first pleading evidencing that removal was proper), and is timely filed within one (1) year of the filing of the original Complaint. 28 U.S.C. § 1446(b).

20.    This Court, therefore, has original jurisdiction over all claims pursuant to 28 U.S.C. § 1332, and/or supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). Accordingly, removal of this action to this Court is proper pursuant to 28 U.S.C. § 1441.

18.    The United States District Court for the Middle District of North Carolina is the federal judicial district embracing the General Court of Justice for Durham County, North Carolina where this suit was originally filed. Venue is, therefore, proper in this Court under 28 U.S.C. § 110.

FOR RELIEF DaimlerChrysler Corporation, DaimlerChrysler Motors Company of Delaware LLC, and DaimlerChrysler North America Holding Corporation respectfully request that this cause be removed from the General Court of Justice for Durham County, North Carolina, that this Court exercise jurisdiction over this matter, and that this Court grant all other appropriate relief.

This the ___ day of ~~April~~ May, 2004.

**WOMBLE CARLYLE SANDRIDGE & RICE, PLLC**

By: _____

Burley B. Mitchell Jr. NCSB # 3040
Christopher T. Graebe NCSB # 17416
2100 First Union Capitol Center
150 Fayetteville Street Mall
P.O. Box 831
Raleigh, North Carolina 27602
(919) 755-2100
Facsimile: (919) 755-2150

and

**BRYAN CAVE LLP**
Charles A. Newman
Kathy A. Wisniewski
One Metropolitan Square
St. Louis, Missouri 63102
(314) 259-2000
Facsimile: (314) 259-2020

Attorneys for DaimlerChrysler Corporation
DaimlerChrysler Motors Company of Delaware LLC, and
DaimlerChrysler North America Holding Corporation

8

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the Notice of Removal was forwarded, via first class mail, postage prepaid, this _3_ day of ~~April~~ May, 2004, to:

David M. Clark
Jonathan Wall
John F. Bloss
CLARK BLOSS & WALL, PLLC
125 South Elm Street; Suite 600
P.O. Box 1349
Greensboro, NC 27402-1349

Attorneys for Plaintiff

_____
Christopher T. Graebe

RALEIGH 473077v1

ATTACHMENT/EXHIBIT_____



CT System

TO: Holly Leese Attorney
DaimlerChrysler Corporation
Office Of General Counsel
1000 Chrysler Drive
CIMS 485-14-78
Auburn Hills, MI 48326-2766

Phone: (248) 512-3961 ex:
FAX: (248) 512-4196
EMAIL: HEL@DAIMLERCHRYSLER.COM

RE: **PROCESS SERVED IN NORTH CAROLINA**

FOR    DaimlerChrysler North America Holding Corporation Domestic State: De

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| 1. TITLE OF ACTION: | John Bussian, Pltf. vs DaimlerChrysler AG and DaimlerChrysler North America Holding Corporation, Defts |
| 2. DOCUMENT(S) SERVED: | Atty's Letter, Summons, Complaint |
| 3. COURT: | Superior Court of Durham County, NC<br>Case Number 04CVS1095 |
| 4. NATURE OF ACTION: | Breach of Warranties |
| 5. ON WHOM PROCESS WAS SERVED: | CT Corporation System, Raleigh, North Carolina |
| 6. DATE AND HOUR OF SERVICE: | By Certified mail on 03/09/2004 with Postmarked Date 03/08/2004 |
| 7. APPEARANCE OR ANSWER DUE: | Within 30 days |
| 8. ATTORNEY(S): | Jonathan Wall<br>Clark Bloss & Wall<br>125 South Elm Street<br>Greensboro, Nc 27401 |
| 9. REMARKS: | i-Note sent 03/09/2004 to HEL@DAIMLERCHRYSLER.COM |

| | |
|---|---|
| SIGNED | CT Corporation System |
| PER | Ron M. Strickland /MR |
| ADDRESS | 225 Hillsborough Street<br>Raleigh, NC 27603<br>SOP WS 0006131053 |

Information contained on this transmittal form is recorded for C T Corporation System's record keeping purposes only and to permit quick reference for the recipient. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information that can be obtained from the documents themselves. The recipient is responsible for interpreting the documents and for taking the appropriate action.

## CLARK BLOSS & WALL, PLLC
Attorneys at Law
Suite 600
125 South Elm Street
Greensboro, North Carolina 27401

David M. Clark
John F. Bloss*
Jonathan Wall†
James E. Tanner, III

* Also Admitted in VA
† Also Admitted in DC

Mailing Address:
P.O. Box 1349
Greensboro, NC 27402-1349

Telephone (336) 275-7275
Facsimile (336) 275-7276
e-mail: cbw@cbw-law.com

March 8, 2004

DaimlerChrysler North America Holding Corp.
Attn: Officer, Agent, or Director
1000 Chrysler Drive
Auburn Hills, MI 48326

Re: *John Bussian v. DaimlerChrysler AG, and Daimler Chrysler North America*
*Holding Corporation*
**Durham County (North Carolina) Superior Court, File No. 4-CV-01095**

Dear Officer, Agent, or Director:

Enclosed please find a Summons and Complaint filed Friday, March 5, 2004, in Durham County (North Carolina) Superior Court.

We are also serving a copy of the Summons and Complaint on your registered agent for service here in North Carolina, CT Corporation in Raleigh. Please advise if you would like us to forward a copy of the Summons and Complaint to local counsel; also, please advise at your earliest convenience whether local counsel would be willing to accept service on behalf of DaimlerChrysler AG.

Thank you.

Sincerely yours,

Jonathan Wall

enclosures
cc: John Bussian
CT Corporation

*U131053*

# STATE OF NORTH CAROLINA

_FILED_

**DURHAM** County

2004 MAR -5 PM 5:16

DURHAM COUNTY, C.S.C.

BY_____ _hcl_

File No. **4CV 01095**

In The General Court of Justice
☐ District  ☒ Superior Court Division

*Name of Plaintiff*
**JOHN BUSSIAN**

*Address*

*City, State, Zip*

**CIVIL SUMMONS**

☐ **Alias and Pluries Summons**

G.S. 1A-1, Rules 3, 4

**VERSUS**

*Name of Defendant(s)*
**DAIMLERCHRYSLER AG, and DAIMLERCHRYSLER NORTH AMERICA HOLDING CORPORATION**

*Date Original Summons Issued*

*Date(s) Subsequent Summon(es) Issued*

## To Each of The Defendant(s) Named Below:

*Name And Address of Defendant 1*
DaimlerChrysler North America Holding Corporation
Attn: Officer, Agent, or Director
1000 Chrysler Drive
Auburn Hills, Michigan 48326

*Name And Address of Defendant 2*

## A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| *Name And Address of Plaintiff's Attorney (If None, Address of Plaintiff)* | *Date Issued* | *Time* |
|---|---|---|
| Jonathan Wall, Attorney<br>Clark Bloss & Wall, PLLC<br>125 S. Elm Street, Suite 600<br>Greensboro, NC  27401          (336) 275-7275 | 3-5-05 | 5:16  ☐ AM  ☐ PM |
| | *Signature* H. C. Lands | |
| | ☐ Deputy CSC   ☐ Assistant CSC   ☐ Clerk of Superior Court | |

☐ **ENDORSEMENT**
This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days.

*Date of Endorsement*

*Time*

☐ AM  ☐ PM

*Signature*

☐ Deputy CSC   ☐ Assistant CSC   ☐ Clerk of Superior Court

**NOTE TO PARTIES:**  *Many Counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $15,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration and, if so, what procedure is to be followed.*

AOC-CV-100, Rev. 10/01
© 2001 Administrative Office of the Courts

(Over)

| | **RETURN OF SERVICE** | |
|---|---|---|

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served ☐ AM ☐ PM | Name of Defendant |
|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served ☐ AM ☐ PM | Name of Defendant |
|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to person named below.

*Name And Address of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason.

| Service Fee Paid $ | Signature of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name of Sheriff (Type or Print) |
| Date of Return | County of Sheriff |

AOC-CV-100, Side Two, Rev. 10/01
© 2001 Administrative of the Courts

FILED

2004 MAR -5 PM 5: 14

DURHAM COUNTY C.S.C.

NORTH CAROLINA

DURHAM COUNTY

GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO. _____ 4CV01095

JOHN BUSSIAN,                    BY_____)_____
           Plaintiff                       )
                                )
                                )
       v.                               )
                                  )
DAIMLERCHRYSLER AG, and           )
DAIMLERCHRYSLER NORTH             )
AMERICA HOLDING CORPORATION,  )
           Defendants

**CLASS ACTION
COMPLAINT**

## INTRODUCTION

1.      Plaintiff John Bussian brings this action on behalf of himself and a Plaintiff

Class (the "Class") consisting of all persons and entities in the United States, except within the

state of Wisconsin, who own or lease, or have owned or leased, a Dodge Durango sports

utility vehicle, model years 1998 through 2003 (the "Class Period"). Plaintiff brings this

action against DaimlerChrysler AG and DaimlerChrysler North America Holding Corporation,

which (a) designed and manufactured the Dodge Durango sports utility vehicles, model years

1998 through 2003; (b) designed, manufactured, marketed and sold in to the stream of

commerce Dodge Durango sports utility vehicles, model years 1998 through 2003; and (c)

provided specifications for and performed tests on the Dodge Durango sports utility vehicles,

model years 1998 through 2003, and specifically the control arm and the upper ball joint on the

Dodge Durango.

2.      Because of its design and/or manufacture, the 1998 through 2003 Dodge

Durangos (the "defective Dodge Durangos") are inherently defective in that the control arm

and the ball joint on the front suspension design are faulty, inferior, and prone to sudden

failure.

3.     As a result of the inherent control arm and ball joint defects in the defective

Dodge Durangos, those vehicles have an unreasonably dangerous propensity to suffer

premature control arm and ball joint failure, which results in the separation of the front wheels

and/or the collapse of the front suspension.

4.     The sudden and immediate failure of the control arm and the ball joint on Dodge

Durangos results in a complete loss of vehicle control and poses serious hazards to drivers and

passengers, as well as to other motorists who may be unable to safely maneuver around a

failed Dodge Durango.

5.     Defendants were, and remain, aware of these inherent defects in the Dodge

Durango for the model years 1998 through 2003.

6.     Defendants, despite considerable notice of these defects, have refused to take

any corrective action and remedy these serious defects, and they are liable to Plaintiff and the

Class for breaches of warranty, including (1) breach of express warranty under § 25-2-313 of

the North Carolina General Statutes (and the parallel provisions of the Uniform Commercial

Code contained in all other states' statutory codes); and (2) breach of the implied warranty of

merchantability under N.C.G.S. § 25-2-314 (and the parallel provisions of the Uniform

Commercial Code contained in all other states' statutory codes); and (3) violation of the

Magnuson Moss Warranty statute as alleged below.

JURISDICTION

7.     The North Carolina State Superior Court has jurisdiction over this action

pursuant to Article I, § 18 and Article IV of the North Carolina Constitution.  Plaintiff seeks

2

damages on behalf of himself and all others similarly situated. Personal jurisdiction over Defendants is proper because the Defendants conduct extensive, regular, and continuous business contacts within the State of North Carolina. During the relevant time period, **Defendants conducted sufficient business in, had sufficient contact with, and intentionally availed themselves of the laws and markets of North Carolina through the promotion, sale, marketing, distribution and operation of their products and services, as to render exercise of jurisdiction by North Carolina courts proper. Plaintiff's and each Class member's claims do not exceed $75,000, inclusive of interests and costs, and no federal statute or regulation is implicated.**

## VENUE

8.     Venue is proper in this Court because (a) Plaintiff is a resident of Durham County; (b) some of the herein described injuries occurred in Durham County, North Carolina; (c) some of the acts and transactions described herein occurred within this county; and (d) the Defendants conduct business in Durham County, North Carolina, by advertising, soliciting, selling, marketing, and/or warranting here the Dodge Durango sports utility vehicles from the model years 1998 through 2003.

## PARTIES

9.     Plaintiff Bussian is a North Carolina citizen who resides in Durham County, North Carolina and purchased a defective Dodge Durango.

10.     Defendant DaimlerChrysler AG is a business entity organized under the law of the Federal Republic of Germany with its headquarters located at EPPLESTRASSE 225, 70567 STUTTGART, GERMANY.

3

11.     Defendant DaimlerChrysler North America Holding Corporation is a 100%

wholly-owned subsidiary of DaimlerChrysler AG, is organized under the laws of the State of

Delaware, with its headquarters located at 1000 Chrysler Drive, Auburn Hills, Michigan.

DaimlerChrysler North America Holding Corporation is the main United States operating

subsidiary of DaimlerChrysler AG, and manufactured and manufactures the Defective Dodge

Durango, and is the agent of DaimlerChrysler AG in the United States.  Hereinafter all

Defendants shall be collectively referred to as "DaimlerChrysler," unless otherwise specifically

identified.

SUBSTANTIVE ALLEGATIONS

12.     DaimlerChrysler develops, manufactures, distributes and sells a wide range of

automotive products, mainly passenger cars, light trucks, and commercial vehicles. Among its

five business segments, DaimlerChrysler's main automotive segments are the 'MERCEDES

CAR GROUP" and the 'CHRYSLER GROUP."

13.     Defendants manufacture the Dodge Durango and offer it for sale through the

Chrysler Group and its dealers, and as such, Defendants deal in automobiles and they hold

themselves out as having knowledge and skill in the design and manufacture of automobiles.

14.     According to its Annual Report on Form 20-F for fiscal 2002:  "On May 7,

1998, Daimler-Benz Aktiengesellschaft and Chrysler Corporation entered into an agreement to

combine their businesses.  The stockholders of each company approved the agreement on

September 18, 1998.  Chrysler became a wholly owned subsidiary of DaimlerChrysler AG

through a merger transaction completed on November 12, 1998."

15.     DaimlerChrysler brand automobiles are sold throughout the United States.

According to its Annual Report on Form 20-F for fiscal 2002, the Chrysler Group

4

products, which includes the Dodge Durango, are distributed as follows, "In the United States, we distribute our Chrysler, Jeep-Registered Trademark, and Dodge products through 4,234 dealers at December 31, 2002, compared to 4,320 dealers at December 31, 2001. ..."

16.     According to its Annual Report on Form 20-F for fiscal 2002, DaimlerChrysler describes the Dodge Durango sports utility vehicle as follows: "The Dodge Durango, a five-to-eight-passenger sport utility vehicle, was derived from the Dakota platform and competes in the full-size sport utility segment. The Durango is available with a 4.7-liter or 5.9-liter V-8 engineer, packaged in the bold, Dodge Ram-inspired exterior."

17.     At all times relevant, Defendants designed, manufactured, tested, warranted, advertised, and sold the Dodge Durango sports utility vehicle at issue here to hundreds of thousands of consumers throughout the United States.

18.     According to its Annual Report on Form 20-F for fiscal world-wide unit sales of the Dodge Durango were as follows: 2002 – 122,200, 2001 – 132,600, and 2000 – 180,900. According to an Associated Press report dated July 21, 2003, there are approximately 450,000 Dodge Durangos from the model years 1998 to 2003 on the roads of the United States.

19.     According to its website, www.dodge.com, DaimlerChrysler made the following representations and warranties with respect to the Dodge Durango sports utility vehicle:

General

Dodge power, innovation and long-lasting capability is what the 2003 Durango is all about. From its best-in-class* torque, to its best-in-class* towing, to best-in-class* seating, - to its best-in-class 7/70 standard powertrain warranty, Durango will gladly tackle whatever you put it through for years to come.

5

[***]

Towing

Best-in-class* towing isn't something to take lightly. With the kind of power generated from Durango's strong Magnum® engines and the no-holds-barred toughness of the frame, this SUV can tow plenty.

[***]

Safety

Feeling secure in your vehicle is one of the most important purchase decisions you make. You can always count on Durango to get you through the tough situations and of course, to never break down in the beginning of a horror movie. Some of its security features include:

*     Sentry Key Engineer Immobilizer
*     Rigid box frame
*     Skid Plate Group (4x4 models)
*     New four-wheel disc brakes with rear-wheel ABS

20.     DaimlerChrysler also issues a warranty on the Dodge Durango sports utility vehicle, which covers 7 years or 70,000 miles on the powertrain, "the hardest working parts of our vehicle," in addition to its 3-year or 36,000 mile "Bumper-to-Bumper limited warranty."

21.     According to the website, www.dodge.com, the starting price of the Sports Durango, the lowest priced model, is $27,655 and the staring price of the Durango R/T, the highest priced model, is $39,470.

22.     The Defective Dodge Durango for the model years 1998 through 2003 had an has an inherent ball joint and control arm defect and an unreasonably dangerous propensity to suffer premature ball joint failure, which results in the separation of the front wheels and/or the collapse of the front suspension. According to the Associated Press report dated July 21, 2003,

WASHINGTON (AP) – The government is investigating an alleged defect on the

6

Dodge Durango that has led some drivers to lose control of their vehicles, according to documents released Monday.

The National Highway Traffic Safety Administration says four drivers have reported the failure of an upper ball joint on the Durango's front suspension. In two of those cases, the front wheels separated from the Durango. In the other two cases, the front suspension collapsed. All four drivers lost control of their vehicles, although no injuries were reported.

NHTSA also said it has received 81 complaints alleging that the front suspension ball joints are wearing out prematurely.

NHTSA is investigating Durangos from model years 1998 through 2003. There are 450,000 Durangos on the road from those years.

The agency will seek more information from DaimlerChrysler AG before deciding whether to upgrade the investigation. A spokeswoman for DaimlerChrysler didn't immediately return a telephone message left Monday.

23.     Contrary to their representations, Defendants failed to adequately research, design, test and/or manufacture the Dodge Durango sports utility vehicle before warranting, advertising, marketing and selling it, for the model years 1998 through 2003, as suitable and safe for use in an intended and/or reasonably foreseeable manner.

24.     Defendants advertised and marketed the Dodge Durango sports utility vehicles as premium quality ("Best in Class") sports utility vehicles that were safe and appropriate for their intended and foreseeable use.

. 25.     Defendants advertised, marketed, warranted, and sold through the stream of commerce to the Plaintiff and Class the Dodge Durango sports utility vehicles that Defendants knew or reasonably should have known were dangerously defective, and otherwise would not perform in accordance with the Plaintiff's and Class members' reasonable expectations that the vehicles would not suffer an inherent, disabling defect, and that the vehicles would be safe and suitable for their intended and foreseeable use.

7

26. Defendants expressly warranted the affected Dodge Durango sports utilities vehicles to be free from defects in materials or workmanship for a period of 36 months or 36,000 miles.

27. Buyers, lessees, and other owners of the Dodge Durango sports utility vehicle were without access to the information concealed by Defendants as described herein, and therefore reasonably relied on Defendants' representations and warranties regarding the quality, durability and other material characteristics of their vehicles. Had these buyers and lessees known of the defect and the danger, they would have taken steps to avoid that danger and/or would have paid less for their vehicles than the amounts they actually paid, or would not have purchased the vehicles.

28. By concealing the safety risks associated with the vehicles, Defendants have forced consumers to bear the risk of injury to persons and property as a result of control arm and ball joint failure, as well as the financial loss associated with the diminished value of their vehicles. Had Defendants revealed this information, consumers would not buy or lease, or would pay substantially less for, vehicles equipped with defective control arms and ball joints.

29. As a result of Defendants' misconduct, Plaintiff and the Class have suffered actual damages in that their Dodge Durango from the model years 1998 through 2003 are dangerous and hazardous to drive, resulting in loss of use, costly repairs, and substantially diminished value, including, without limitation, diminished resale value. Plaintiff and the Class would not have purchased the vehicles had they known them to be dangerously defective and unfit for their intended purpose.

30. The cost to repair the defective and dangerous control arm and ball joints will vary with vehicle, geographic location, and dealer/mechanic; however, it is expected to be

8

between $750.00 and $1,200.00 per vehicle. Because of the relatively small size of the Plaintiff's and the typical individual Class members' claims, and because most have only modest resources, it is unlikely that individual Class members could afford to seek recovery against these corporate Defendants, especially in light of the Defendants' size and resources. A class action is, therefore, the only reasonable means by which Class members can obtain relief.

## TOLLING OF APPLICABLE STATUTES OF LIMITATION

31.     Any applicable statutes of limitation have been tolled by Defendants' knowing and active concealment and denial of the facts as alleged herein. Plaintiff and members of the Class have been kept ignorant of vital information essential to the pursuit of these claims, without any fault or lack of diligence on their part. Plaintiff and members of the Class could not earlier have reasonably discovered the true, latent defective nature of control arms and ball joints on the Dodge Durango sports utility vehicle.

32.     Defendants are and were under a continuing duty to disclose to the Plaintiff and the Class the true character, quality, and nature of the control arms and ball joints on the Dodge Durango sports utility vehicle. Because of their knowing, affirmative, and/or active concealment of the true character, quality and nature of the suspension problems with the Durango and at issue, Defendants are estopped from relying on any statutes of limitation in their defense of this action.

33.     Any applicable statutes of limitation have been tolled by Defendants' knowing and active concealment and denial of the facts as alleged herein. Plaintiff and members of the Class have been kept ignorant of vital information essential to the pursuit of these claims,

9

without any fault or lack of diligence on their part. Plaintiff and members of the Class could not reasonably have discovered the Dodge Durango sports utility vehicle.

## CLASS REPRESENTATIVE ALLEGATIONS

34.     Plaintiff John Bussian owns a Dodge Durango of model year 1998. Bussian's mechanic informed him that the Durango's upper ball joints needed to be replaced immediately. Continuing to drive the Durango without repair would be extremely hazardous, and complete failure of the ball joint would result in wheel separation while the vehicle was being driven.

35.     Plaintiff Bussian had the upper ball joints replaced on his Durango at his own expense, at a cost of several hundred dollars.

36.     After Bussian became aware that over 800 people had had the exact same problem on their Dodge Durangos, and that the Durangos' ball joint failure rate was over 50 times that of similar sport utility vehicles, he contacted his local Dodge dealership/authorized repair facility, and requested that Dodge or DaimlerChrysler reimburse him for his repair costs. The dealership/repair facility refused, and stated that Defendants would not authorize reimbursement for that repair.

37.     Plaintiff Bussian has been damaged in that he has expended several hundred dollars to replace his upper ball joints and, further, that the vehicle, upon information and belief, has suffered a loss of value because its design results in premature ball joint failure.

## CLASS ACTION ALLEGATIONS

38.     Plaintiff brings this lawsuit as a class action on behalf of himself and all others similarly situated pursuant to N.C.G.S. § 1A-1, Rule 23. This action satisfies the numerosity,

10

commonality, typicality, adequacy, predominance and superiority requirements for maintaining

this action.

39.  The class is defined as:

All individuals and entities throughout the United States, excepting the State of
Wisconsin, that have owned, own, leased, lease, or acquired Dodge Durango sports
utility vehicles from the model years 1998 through 2003.

Excluded from the Class are individuals and entities with claims against the Defendants
for personal injuries as a result of the defect alleged herein; Defendants; any entity in
which Defendants have a controlling interest or which has a controlling interest of
Defendants; Defendants' legal representatives, assigns and successors; any judge or
special master assigned to hear any aspect of this litigation, and any member of their
immediate families; and, to the extent the class certification order permits exclusion, all
people who submit timely and otherwise proper requests for exclusion from the Class.

40.  The Class is so numerous and geographically dispersed throughout the United

States so that joinder of all Class members is impracticable. While Plaintiffs do not know the

exact number and identity of Class members, Plaintiffs believe there are hundreds of thousands

of Class members, and that their identities can be ascertained from Defendants' books and

records. Joining and naming each Class member as a co-plaintiff would be unreasonable and

impracticable. Furthermore, the disposition of all of the Class members' common claims in a

single class action proceeding will provide substantial economies and benefits to all affected

parties and to the Court.

41.  Numerous questions of law and fact are common to the Plaintiff and the Class.

These common questions predominate over any other issues that may affect only individual

Class members, and include, inter alia, the following:

a.  Whether the Dodge Durango sports utility vehicles from the model years
1998 through 2003 are defective in that: they fail to perform in accordance with
the reasonable expectations of ordinary consumers; they are not fit and safe for
their ordinary, intended, and foreseeable use; their risks and dangers outweigh

11

their benefits, if any; and/or they would not be offered for sale by a reasonably careful manufacturer or seller who knew of their defective nature;

b.     Whether Defendants knew of the unreasonably dangerous nature of the Dodge Durango sports utility vehicle from model years 1998 through 2003;

c.     Whether Defendants represented through their advertising, warranties and other representations, that the Dodge Durango sports utility vehicle from model years 1998 through 2003 had characteristics that it does not actually have, or omitted to disclose material facts regarding the Dodge Durango sports utility vehicle from model years 1998 through 2003 actual characteristics;

d.     Whether Defendants made any affirmations of fact or promise relating to Dodge Durangos that became a basis of the bargain between seller and buyer, and thereby created an express warranty that the vehicles would conform to those affirmations or promises;

e.     Whether the Dodge Durango sports utility vehicles from the model years 1998 through 2003 conform(ed) to Defendants' express warranties;

f.     Whether the Dodge Durango sports utility vehicles from the model years 1998 through 2003 are merchantable, pass without objection in the trade, and are fit for their ordinary and intended purposes of sport utility vehicles;

g.     Whether the Plaintiff and the Class are entitled to compensatory damages, and the amount of such damages.

42.     There is a common, general interest among the Plaintiff and Class members. The claims of the representative Plaintiff are typical of Class members' claims in that the representative Plaintiff, like all Class members, owns a Dodge Durango sports utility vehicle from the model years 1998 through 2003. The representative Plaintiff, like all Class members, has been damaged by Defendants' conduct in that he has been forced to bear the risk of a dangerously defective product, and has suffered diminished value of his vehicle, including, without limitation, diminished resale value, as a result of the inherently defective control arm and ball joints. The representative Plaintiff and the Class are further damaged in the amount it costs to repair or replace the defective control arm and ball joints. Furthermore, the factual

12

evidentiary basis for the representative Plaintiff's claims is coextensive with that of the claims of Class members. Defendants engaged in a uniform course of wrongful conduct that is common to all Class members, such that Defendants are liable in the same way for the resulting injuries suffered by the Plaintiff and all Class members.

43. The representative Plaintiff will fairly and adequately protect the common interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting national consumer class actions. Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Class they represent, and have the financial resources to do so. Neither Plaintiff nor his counsel has any interests adverse to those of the Class.

44. A class action is superior to any other available methods for the fair and efficient adjudication of this controversy. Because of the relatively small size of the individual Class members' claims, absent a class action most Class members would likely find the cost of litigating their claims against the corporate Defendants to be prohibitive. The practical result is that they have no effective remedy against Defendants at law. Even for those Class members who might afford to seek legal redress against Defendants on their own, the cost of litigation would undoubtedly exceed any recovery, making their pursuit of individual relief uneconomical. Unitary treatment of common, Class-wide issues of law and fact is also superior to multiple individual actions or piecemeal litigation, as it will provide both litigants and the courts with economies of time, effort, and expense, and will promote consistency and efficiency. Accordingly, this case is manageable as a class action.

## COUNT I – BREACH OF EXPRESS WARRANTIES

45. Plaintiff incorporates by reference the allegations in paragraphs 1-44 as if the same were fully set forth herein.

13

46    Defendants expressly warranted the Dodge Durango to be free of defects in factory materials and workmanship at the time of sale and for a period of three years or 36,000 miles, and, further, that Defendants would repair at no cost any defective item on the vehicle at the time of sale and for three years. Such warranties are express warranties within the meaning of N.C.G.S. § 25-2-313.

47.    Through advertising and promotional literature, Defendants represented that the Dodge Durango sport utility vehicle was a rugged, tough sport utility vehicle, suitable for driving in all conditions, including rain and wet conditions, and in off-road venues. Defendants further represented the Durango had "long-lasting capability" and would "gladly tackle whatever you put it through for years to come."

48.    Defendants' "Basic Warranty" states that it "coves the costs of all parts and labor needed to repair any defective item on your vehicle that was supplied by Chrysler – that is, defective in material, workmanship, or factory preparation...You pay nothing for these repairs. These warranty repairs or adjustments – including all parts and labor connected with them – will be made by your dealer at no charge..."

49.    At the time of sale and forward, Defendants have breached these express warranties by selling to Plaintiff and the Class Dodge Durangos equipped with defective items – control arms and ball joints that are, by design, defective, unsafe, subject to extreme premature wearing, and unreasonably likely to cause serious injury to Plaintiff and Class members.

50.    As a direct and proximate cause of Defendants' breach of express warranties, Plaintiff and Class members have suffered actual damages and are threatened with irreparable harm by undue risk of serious bodily injury.

14

51.     Any limitation periods or limitations on recovery in Defendants' express warranties are unconscionable within the meaning of N.C.G.S. § 25-2-302 (and the parallel provisions of the Uniform Commercial Code contained in all other states' statutory codes), and therefore are unenforceable, in that, among other things, Dodge Durangos contain a latent defect of which Defendants were actually or constructively aware at the time of sale, and purchasers lacked a meaningful choice with respect to the terms of the warranty due to unequal bargaining power and a lack of warranty competition.

52.     Any applicable notice requirement was met by the filing of this action, and because Plaintiff alleges Defendants had notice of the defect in the Dodge Durango before Plaintiff and the Class did, and did nothing to remedy the defect.

53.     Plaintiff on behalf of himself and all others similarly situated, demand judgment against the Defendants for compensatory, incidental and consequential damages (excepting damages for personal injuries) for themselves and each member of the Class, for the establishment of the common fund, plus an award of attorney fees, interest, and costs.

## COUNT II – B REACH OF IMPLIED WARRANTY OF MERCHANTABILITY

54.     Plaintiff incorporates by reference the allegations in paragraphs 1-53 as if the same were fully set forth herein.

55.     Defendants impliedly warranted Dodge Durangos to be merchantable in that they would pass without objection in the trade and were fit for their ordinary and intended purpose(s).

56.     The Dodge Durangos are not merchantable, and because of the control arm and ball joint defect, the Durangos are not fit for the ordinary purposes to which sport utility

15

vehicles are used, and the vehicles were not merchantable at the time of purchase, in violation of Defendants' implied warranties.

57.     Any applicable notice requirement was met by the filing of this action, and because Plaintiff alleges Defendants had notice of the defect in the Dodge Durangos before Plaintiff and the Class did, and did nothing to remedy the defect.

58.     Plaintiff, on behalf of himself and all others similarly situated, demand judgment against the Defendants for compensatory, incidental and consequential damages (excepting damages for personal injuries) for themselves and each member of the Class, for the establishment of a common fund, plus an award of attorneys' fees, interest and costs.

## COUNT III – MAGNUSON MOSS WARRANTY ACT VIOLATIONS

59.     Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

60.     Congress enacted the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq. (the "Act"), in 1975 in response to widespread complaints from consumers that many warranties were misleading and deceptive and were not being honored. To remedy this problem, the Act imposes civil liability on any "warrantor" for, inter alia, failing to comply with any obligation under a written warranty and/or implied warranty under state law. See 15 U.S.C. § 2310(d)(1). The Act authorizes a "suit for damages and other legal and equitable relief." Id. The Act authorizes the award of attorney fees, and expressly authorizes class actions. 15 U.S.C. § 2310(e). 15 U.S.C. § 2310(d)(3) of the Act establishes jurisdiction in the state courts and prohibits Federal jurisdiction if, inter alia, the action is brought as a class action, and the number of named plaintiffs is less than one hundred.

16

61.     Defendants are "warrantors" within the meaning of § 2301(5) of the Act.
Plaintiffs are "consumers" within the meaning of § 2301(3) of the Act.

62.     Defendant impliedly warranted that the Durango vehicles would be merchantable, which warranty is implied within the meaning of § 2301(7) of the Act, and § 2-314 of the Uniform Commercial Code. See N.C.G.S. § 25-2-304. Defendants breached this implied warranty in the manner described above.

63.     Defendants' knowledge of the fact that the control arm and the ball joints on the Dodge Durango were inherently defective and prone to sudden failure and that they would need repair and/or replacement, gave Defendant more than adequate opportunity to cure the problem, which opportunity it failed to timely undertake. Defendants were alerted to this problem by

(a) over 850 reports of ball joint failure to the National Highway Traffic Safety Adminisitration (NHTSA);

(b) additional complaints registered directly from consumers;

(c) reports from their dealerships and authorized repair facilities regarding the nature and frequency of the premature failure of the ball joints;

(d) discussions in internet chatrooms, forums, and listserves sponsored by Defendants or, if not sponsored by Defendants, monitored by Defendants' employees;

(e) letters, phone calls, e-mail messages, and other messages, documents, and correspondence received from consumers, dealers, and repair facilities messages relating to the ball joint defect, repairs thereto, and the need for repairs;

(f) the July 2003 AP report referenced in paragraph 22 above;

17

(g) the filing of a class action lawsuit in July 2003 in Wisconsin calling for a recall and repair of the ball joint defects, among other claims;

(h) the investigation initiated by NHTSA into the Dodge Durango defective ball joint;

(i) an October 27, 2003 report from CBS News;

(j) a November 18, 2003 report by Consumer Affairs;

(k) a December 18, 2003, CBS News Report;

(l) a March 3, 2004 CBS News Report; and

(m) pressure from consumer safety groups such as Public Citizen.

64.    As of March 5, 2003, Defendants have steadfastly denied that there is a defect in the Durango upper ball joints that warrants a recall, repair, compensation, or other remedy to the consumers owning these vehicles.

65.    Plaintiff and members of the Class were damaged by Defendants' failure to comply with its obligations under the above-referenced implied warranties.  As a direct and proximate result of Defendants' breaches of implied warranties, Plaintiff and the Class have suffered damages in an amount to be proven at the time of trial.

66.    The number of named plaintiffs is fewer than one hundred.

## RELIEF REQUESTED

WHEREFORE, on behalf of themselves and all others similarly situated, the Plaintiff prays that the Court certify the Class, enter judgment against Defendants and in favor of Plaintiff and the Class, and award additional relief as follows:

a.    For an award of actual damages in an amount above $10,000, to be proven at trial;

b.    For interest at the legal rate of interest on the foregoing sum;

18

c.     For attorneys' fees herein incurred as may be provided by law;

d.     For costs of suit herein incurred; and

e.     For such other or further relief as may be appropriate under the

circumstances.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a jury trial for all individual and class claims so triable.


This, the 5 day of March, 2004.

OF COUNSEL:
CLARK BLOSS & WALL, PLLC
125 South Elm Street, Suite 600
P. O. Box 1349
Greensboro, NC 27402-1349
Telephone: 336-275-7275
Facsimile: 336-275-7276

David M. Clark  (NC Bar #813)

Jonathan Wall  (NC Bar #22839)

John F. Bloss (NC Bar #23947)

Counsel for Plaintiffs

19

ATTACHMENT/EXHIBIT_____

# STATE OF NORTH CAROLINA

File No.
4 CVS 01095

FILED

_____ DURHAM _____ County

2004 APR 5 PM 4:54

DURHAM COUNTY, C.S.C.

BY _____

In The General Court of Justice
☐ District ☒ Superior Court Division

| | |
|---|---|
| *Name of Plaintiff*<br>JOHN BUSSIAN | **CIVIL SUMMONS** |
| *Address* | |
| *City, State, Zip* | ☐ **Alias and Pluries Summons** |
| **VERSUS** | G.S. 1A-1, Rules 3, 4 |
| *Name of Defendant(s)*<br>DAIMLERCHRYSLER CORPORATION;<br>DAIMLERCHRYSLER AG; DAIMLERCHRYSLER MOTORS<br>COMPANY LLC; and DAIMLERCHRYSLER NORTH<br>AMERICA HOLDING CORPORATION | *Date Original Summons Issued*<br><br>*Date(s) Subsequent Summon(es) Issued* |

## To Each of The Defendant(s) Named Below:

| *Name And Address of Defendant 1*<br>DaimlerChrysler Corporation<br>CT Corporation System, Registered Agent<br>225 Hillsborough Street<br>Raleigh, NC 27603 | *Name And Address of Defendant 2*<br>DaimlerChrysler Motors Company LLC<br>CT Corporation System, Registered Agent<br>225 Hillsborough Street<br>Raleigh, NC 27603 |
|---|---|

## A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the First Amended Class Action Complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| *Name And Address of Plaintiff's Attorney (If None, Address of Plaintiff)*<br>Jonathan Wall, Attorney<br>Clark Bloss & Wall, PLLC<br>125 S. Elm Street, Suite 600<br>Greensboro, NC 27401    (336) 275-7275 | *Date Issued* 4 5 04 | *Time* 4:54 ☐ AM ☒ PM |
|---|---|---|
| | *Signature* | |
| | ☒ Deputy CSC  ☐ Assistant CSC | ☐ Clerk of Superior Court |

| ☐ ENDORSEMENT<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | *Date of Endorsement* | *Time* ☐ AM ☐ PM |
|---|---|---|
| | *Signature* | |
| | ☐ Deputy CSC  ☐ Assistant CSC | ☐ Clerk of Superior Court |

**NOTE TO PARTIES:** *Many Counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $15,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

AOC-CV-100, Rev. 10/01
© 2001 Administrative Office of the Courts                    (Over)

## RETURN OF SERVICE

I certify that this Summons and a copy of the First Amended Class Action Complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served ☐ AM ☐ PM | Name of Defendant |
|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served ☐ AM ☐ PM | Name of Defendant |
|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to person named below.

*Name And Address of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason.

| Service Fee Paid $ | Signature of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name of Sheriff (Type or Print) |
| Date of Return | County of Sheriff |

AOC-CV-100, Side Two, Rev. 10/01
© 2001 Administrative of the Courts

# STATE OF NORTH CAROLINA

FILED

2004 APR -5 PM 4:54

DURHAM COUNTY, C.S.C.

BY_____

___DURHAM___ County

| | |
|---|---|
| *Name of Plaintiff*<br>JOHN BUSSIAN | |
| *Address* | |
| *City, State, Zip* | |

**VERSUS**

*Name of Defendant(s)*
DAIMLERCHRYSLER CORPORATION;
DAIMLERCHRYSLER AG; DAIMLERCHRYSLER MOTORS
COMPANY LLC; and DAIMLERCHRYSLER NORTH
AMERICA HOLDING CORPORATION

File No.
4 CVS 01095

In The General Court of Justice
☐ District ☒ Superior Court Division

## CIVIL SUMMONS

☐ Alias and Pluries Summons

G.S. 1A-1, Rules 3, 4

*Date Original Summons Issued*

*Date(s) Subsequent Summon(es) Issued*

### To Each of The Defendant(s) Named Below:

| *Name And Address of Defendant 1*<br>DaimlerChrysler Corporation<br>CT Corporation System, Registered Agent<br>225 Hillsborough Street<br>Raleigh, NC 27603 | *Name And Address of Defendant 2*<br>DaimlerChrysler Motors Company LLC<br>CT Corporation System, Registered Agent<br>225 Hillsborough Street<br>Raleigh, NC 27603 |
|---|---|

### A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the First Amended Class Action Complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| *Name And Address of Plaintiff's Attorney (If None, Address of Plaintiff)*<br>Jonathan Wall, Attorney<br>Clark Bloss & Wall, PLLC<br>125 S. Elm Street, Suite 600<br>Greensboro, NC 27401    (336) 275-7275 | *Date Issued* 4\|5\|04 | *Time* 4:54 ☐ AM ☒ PM |
|---|---|---|
| | *Signature* | |
| | ☒ *Deputy CSC* ☐ *Assistant CSC* ☐ *Clerk of Superior Court* | |

| ☐ ENDORSEMENT<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | *Date of Endorsement* | *Time* ☐ AM ☐ PM |
|---|---|---|
| | *Signature* | |
| | ☐ *Deputy CSC* ☐ *Assistant CSC* ☐ *Clerk of Superior Court* | |

**NOTE TO PARTIES:** *Many Counties have MANDATORY ARBITRATION programs in which most cases where the amount in controversy is $15,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

AOC-CV-100, Rev. 10/01
© 2001 Administrative Office of the Courts        (Over)

## RETURN OF SERVICE

I certify that this Summons and a copy of the First Amended Class Action Complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served □ AM □ PM | Name of Defendant |
|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service (*specify*)

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served □ AM □ PM | Name of Defendant |
|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to person named below.

*Name And Address of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service (*specify*)

☐ Defendant WAS NOT served for the following reason.

| Service Fee Paid $ | Signature of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name of Sheriff (Type or Print) |
| Date of Return | County of Sheriff |

AOC-CV-100, Side Two, Rev. 10/01
© 2001 Administrative of the Courts

# CLARK BLOSS & WALL, PLLC

Attorneys at Law
Suite 600
125 South Elm Street
Greensboro, North Carolina 27401

David M. Clark
John F. Bloss*
Jonathan Wall†
James E. Tanner, III

April 5, 2004

* Also Admitted in VA
† Also Admitted in DC

Mailing Address:
P.O. Box 1349
Greensboro, NC 27402-1349

Telephone (336) 275-7275
Facsimile (336) 275-7276
e-mail: cbw@cbw-law.com

CT Corporation System
Registered Agent, DaimlerChrysler Corporation
225 Hillsborough Street
Raleigh, NC 27603

**VIA CERTIFIED MAIL**
**No. 7000 1670 0008 7481 8700**

Dear Sir/Madam:

Enclosed please find a First Amended Class Action Complaint served upon you as registered agent for DaimlerChrysler Corporation.

Sincerely yours,

Rebecca S. Moore
Secretary to Jonathan Wall

enclosure

6204111

# CLARK BLOSS & WALL, PLLC

Attorneys at Law
Suite 600
125 South Elm Street
Greensboro, North Carolina 27401

David M. Clark
John F. Bloss*
Jonathan Wall†
James E. Tanner, III

April 5, 2004

* Also Admitted in VA
† Also Admitted in DC

Mailing Address:
P.O. Box 1349
Greensboro, NC 27402-1349

Telephone (336) 275-7275
Facsimile (336) 275-7276
e-mail: cbw@cbw-law.com

CT Corporation System
Registered Agent, DaimlerChrysler Motors Co., LLC
225 Hillsborough Street
Raleigh, NC 27603

**VIA CERTIFIED MAIL**
**No. 7002 0860 0003 3364 2114**

Dear Sir/Madam:

Enclosed please find a First Amended Class Action Complaint served upon you as registered agent for DaimlerChrysler Motors Co., LLC.

Sincerely yours,

Rebecca S. Moore
Secretary to Jonathan Wall

enclosure

6 204117

# CLARK BLOSS & WALL, PLLC

Attorneys at Law
Suite 600
125 South Elm Street
Greensboro, North Carolina 27401

David M. Clark
John F. Bloss*
Jonathan Wall†
James E. Tanner, III

April 5, 2004

* Also Admitted in VA
† Also Admitted in DC

Mailing Address:
P.O. Box 1349
Greensboro, NC 27402-1349

Telephone (336) 275-7275
Facsimile (336) 275-7276
e-mail: cbw@cbw-law.com

CT Corporation System
Registered Agent, DaimlerChrysler N.A. Holding Corp.
225 Hillsborough Street
Raleigh, NC 27603

Dear Sir/Madam:

Enclosed please find a First Amended Class Action Complaint served upon you as registered agent for DaimlerChrysler North American Holding Corporation and various other DaimlerChrysler corporate entities.

Sincerely yours,

Rebecca S. Moore
Secretary to Jonathan Wall

enclosure

6204311

NORTH CAROLINA

FILED

2004 APR -5 PM 4: 54

DURHAM COUNTY, C.S.C.

BY

DURHAM COUNTY

GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO. 4CVS01095

JOHN BUSSIAN,

Plaintiff

v.

DAIMLERCHRYSLER CORPORATION;
DAIMLERCHRYSLER AG;
DAIMLERCHRYSLER MOTORS
COMPANY OF DELAWARE, LLC; and
DAIMLERCHRYSLER NORTH
AMERICA HOLDING CORPORATION,
Defendants

)
)
)
)
)
)
)
)
)
)
)

**FIRST AMENDED CLASS
ACTION COMPLAINT**

COMES NOW the Plaintiff, and pursuant to Rule 15(a) of the North Carolina Rules of

Civil Procedure, amends his Complaint as of right by filing this First Amended Class Action

Complaint.

## INTRODUCTION

1.     Plaintiff John Bussian brings this action on behalf of himself and a Plaintiff

Class (the "Class") consisting of all persons and entities in the United States, except within the

state of Wisconsin, who own or lease, or have owned or leased, a Dodge Durango sports

utility vehicle, model years 1998 through 2003 (the "Class Period").  Plaintiff brings this

action against DaimlerChryler Corporation, DaimlerChrysler AG, DaimlerChrysler Motors

Company of Delaware, LLC, and DaimlerChrysler North America Holding Corporation

(hereinafter referred to collectively as "DaimlerChrysler" or "Defendants"), which (a)

designed and manufactured the Dodge Durango sports utility vehicles, model years 1998

through 2003; (b) designed, manufactured, marketed and sold in to the stream of commerce

Dodge Durango sports utility vehicles, model years 1998 through 2003; and (c) provided specifications for and performed tests on the Dodge Durango sports utility vehicles, model years 1998 through 2003, and specifically the control arm and the upper ball joint on the Dodge Durango.

2.     Because of its design and/or manufacture, the 1998 through 2003 Dodge Durangos (the "defective Dodge Durangos") are inherently defective in that the control arm and the ball joint on the front suspension design are faulty, inferior, and prone to sudden failure.

3.     As a result of the inherent control arm and ball joint defects in the defective Dodge Durangos, those vehicles have an unreasonably dangerous propensity to suffer premature control arm and ball joint failure, which results in the separation of the front wheels and/or the collapse of the front suspension.

4.     The sudden and immediate failure of the control arm and the ball joint on Dodge Durangos results in a complete loss of vehicle control and poses serious hazards to drivers and passengers, as well as to other motorists who may be unable to safely maneuver around a failed Dodge Durango.

5.     Defendants were, and remain, aware of these inherent defects in the Dodge Durango for the model years 1998 through 2003.

6.     Defendants, despite considerable notice of these defects, have refused to take any corrective action and remedy these serious defects, and they are liable to Plaintiff and the Class for breaches of warranty, including (1) breach of express warranty under § 25-2-313 of the North Carolina General Statutes (and the parallel provisions of the Uniform Commercial

2

Code contained in all other states' statutory codes); (2) breach of the implied warranty of merchantability under N.C.G.S. § 25-2-314 (and the parallel provisions of the Uniform Commercial Code contained in all other states' statutory codes); and (3) violation of the Magnuson Moss Warranty statute as alleged below.

## JURISDICTION

7.     The North Carolina State Superior Court has jurisdiction over this action pursuant to Article I, § 18 and Article IV of the North Carolina Constitution. Plaintiff seeks damages on behalf of himself and all others similarly situated. Personal jurisdiction over Defendants is proper because the Defendants have extensive, regular, and continuous business contacts within the State of North Carolina. During the relevant time period, Defendants conducted sufficient business in, had sufficient contact with, and intentionally availed themselves of the laws and markets of North Carolina through the promotion, sale, marketing, distribution and operation of their products and services, as to render exercise of jurisdiction by North Carolina courts proper. Plaintiff's and each Class member's claims do not exceed $75,000, inclusive of interests and costs, and no federal statute or regulation is implicated.

## VENUE

8.     Venue is proper in this Court because (a) Plaintiff is a resident of Durham County; (b) some of the herein described injuries occurred in Durham County, North Carolina; (c) some of the acts and transactions described herein occurred within this county; and (d) the Defendants conduct business in Durham County, North Carolina, by advertising, soliciting, selling, marketing, and/or warranting here the Dodge Durango sports utility vehicles from the model years 1998 through 2003.

3

9. Plaintiff Bussian is a North Carolina citizen who resides in Durham County, North Carolina and purchased a defective Dodge Durango.

10. Defendant DaimlerChrysler Corporation is a business entity organized under the laws of the State of Delaware, with a principal place of business in the State of Michigan, and conducting advertising, sales, and other business within Durham County and the State of North Carolina.

11. Defendant DaimlerChrysler AG is a business entity organized under the laws of the Federal Republic of Germany with its headquarters located at EPPLESTRASSE 225, 70567 STUTTGART, GERMANY.

12. Upon information and belief, Defendant DaimlerChrysler Motors Company of Delaware, LLC, is a business entity organized under the laws of the State of Delaware, with a principal place of business in the State of Michigan, and conducting advertising, promotion, sales, and other business within Durham County and the State of North Carolina.

13. Defendant DaimlerChrysler North America Holding Corporation is a business entity organized under the laws of the State of Delaware, with a principal place of business in the State of Michigan, and conducting advertising, promotion, sales, and other business within Durham County and the State of North Carolina.

14. Upon information and belief, all Defendants are related companies under common ownership and control, with their United States headquarters located at 1000 Chrysler Drive, Auburn Hills, Michigan. Upon information and belief, the DaimlerChrysler companies are the main United States operating subsidiaries of DaimlerChrysler AG, and those companies

4

manufactured and manufacture the defective Dodge Durango, and are the agents of

DaimlerChrysler AG in the United States. Hereinafter all Defendants shall be collectively

referred to as "DaimlerChrysler," unless otherwise specifically identified.

## SUBSTANTIVE ALLEGATIONS

15.    DaimlerChrysler develops, manufactures, distributes and sells a wide range of

automotive products, mainly passenger cars, light trucks, and commercial vehicles. Among its

five business segments, DaimlerChrysler's main automotive segments are the "MERCEDES

CAR GROUP" and the 'CHRYSLER GROUP."

16.    Defendants manufacture the Dodge Durango and offer it for sale through the

Chrysler Group and its dealers, and as such, Defendants deal in automobiles and they hold

themselves out as having knowledge and skill in the design and manufacture of automobiles.

17.    According to its Annual Report on Form 20-F for fiscal 2002:  "On May 7,

1998, Daimler-Benz Aktiengesellschaft and Chrysler Corporation entered into an agreement to

combine their businesses.  The stockholders of each company approved the agreement on

September 18, 1998.  Chrysler became a wholly owned subsidiary of DaimlerChrysler AG

through a merger transaction completed on November 12, 1998."

18.    DaimlerChrysler brand automobiles are sold throughout the United States.

According to its Annual Report on Form 20-F for fiscal 2002, the Chrysler Group products,

which includes the Dodge Durango, are distributed as follows, "In the United States, we

distribute our Chrysler, Jeep-Registered Trademark, and Dodge products through 4,234

dealers at December 31, 2002, compared to 4,320 dealers at December 31, 2001. ..."

5

19.    According to its Annual Report on Form 20-F for fiscal 2002, DaimlerChrysler describes the Dodge Durango sports utility vehicle as follows: "The Dodge Durango, a five-to-eight-passenger sport utility vehicle, was derived from the Dakota platform and competes in the full-size sport utility segment. The Durango is available with a 4.7-liter or 5.9-liter V-8 engineer, packaged in the bold, Dodge Ram-inspired exterior."

20.    Upon information and belief, DaimlerChrsyler realized savings of about $74 million relating to the Dodge Durango before the first Durango went into production through Defendants' Supplier Cost Reduction Effort (SCORE) program. Through the SCORE program, DaimlerChrysler encouraged its suppliers to submit proposals designed to reduce costs in a variety of areas including design, manufacturing, logistics, sourcing, and administrative transactions. DaimlerChrysler adopted several of the 357 cost-cutting proposals submitted to it in regard to the Dodge Durango. Despite all of these cost-cutting measures, Durango's concept-to-production timetable was the shortest in corporate history – 132 weeks.

21.    Upon information and belief, in describing the history behind the Dodge Durango, DaimlerChrysler states that:

Upper ball joints are permanently lubricated and maintenance-free. Improved sealing assures durability equal to or greater than that provided by ball joints that require periodic lubrication.

22.    At all times relevant, Defendants designed, manufactured, tested, warranted, advertised, and sold the Dodge Durango sports utility vehicle at issue here to hundreds of thousands of consumers throughout the United States.

23.    According to its Annual Report on Form 20-F for fiscal world-wide unit sales of the Dodge Durango were as follows: 2002 – 122,200, 2001 – 132,600, and 2000 – 180,900.

6

According to an Associated Press report dated July 21, 2003, there are approximately 450,000 Dodge Durangos from the model years 1998 to 2003 on the roads of the United States.

24.    According to its website, www.dodge.com, DaimlerChrysler made the following additional representations and warranties with respect to the Dodge Durango sports utility vehicle:

General

Dodge power, innovation and long-lasting capability is what the 2003 Durango is all about. From its best-in-class* torque, to its best-in-class* towing, to best-in-class* seating, - to its best-in-class 7/70 standard powertrain warranty, Durango will gladly tackle whatever you put it through for years to come.

[***]

Towing

Best-in-class* towing isn't something to take lightly. With the kind of power generated from Durango's strong Magnum® engines and the no-holds-barred toughness of the frame, this SUV can tow plenty.

[***]

Safety

Feeling secure in your vehicle is one of the most important purchase decisions you make. You can always count on Durango to get you through the tough situations and of course, to never break down in the beginning of a horror movie. Some of its security features include:

*    Sentry Key Engineer Immobilizer
*    Rigid box frame
*    Skid Plate Group (4x4 models)
*    New four-wheel disc brakes with rear-wheel ABS

25.    DaimlerChrysler also issues a warranty on the Dodge Durango sports utility vehicle, which covers 7 years or 70,000 miles on the powertrain, "the hardest working parts of our vehicle," in addition to its 3-year or 36,000 mile "Bumper-to-Bumper limited warranty."

7

26. According to the website, www.dodge.com, the starting price of the Sports Durango, the lowest priced model, is $27,655 and the staring price of the Durango R/T, the highest priced model, is $39,470.

27. The Defective Dodge Durango for the model years 1998 through 2003 has an has an inherent ball joint and control arm defect and an unreasonably dangerous propensity to suffer premature ball joint failure, which results in the separation of the front wheels and/or the collapse of the front suspension. Upon information and belief, the upper ball joints cannot be lubricated, and, in contrast to DaimlerChryler's representations, the lubrication is prone to deteriorate, break down, and or waste way, resulting in un-lubricated ball joints that experience rapid and unsafe degradation.

28. Suspension systems, and in particular ball joints, are designed to, and ordinarily do, function for periods (and mileages) substantially in excess of those specified in DaimlerChrysler's warranties, and given past experience, consumers could legitimately expect to enjoy the use of an automobile without worry that the ball joint would fail (resulting in wheel separation) for significantly longer than the limited times and mileages expressed in Defendants' express warranties.

29. According to the Associated Press report dated July 21, 2003,

WASHINGTON (AP) – The government is investigating an alleged defect on the Dodge Durango that has led some drivers to lose control of their vehicles, according to documents released Monday.

The National Highway Traffic Safety Administration says four drivers have reported the failure of an upper ball joint on the Durango's front suspension. In two of those cases, the front wheels separated from the Durango. In the other two cases, the front suspension collapsed. All four drivers lost control of their vehicles, although no injuries were reported.

8

NHTSA also said it has received 81 complaints alleging that the front suspension ball joints are wearing out prematurely.

NHTSA is investigating Durangos from model years 1998 through 2003. There are 450,000 Durangos on the road from those years.

The agency will seek more information from DaimlerChrysler AG before deciding whether to upgrade the investigation. A spokeswoman for DaimlerChrysler didn't immediately return a telephone message left Monday.

30.     Upon information and belief, Defendants, through (1) their own records of customer complaints, (2) dealership repair records, (3) records from the National Highway Traffic Safety Administration (NHTSA), and (4) other various sources are well aware of the alarming failure rate of the Dodge Durangos' ball joints, and yet have failed to acknowledge or notify the public of these major, inherent product defects, nor have Defendants voluntarily recalled or repaired these defective parts.

31.     Members of the Class could not have discovered the latent ball joint defects through any reasonable inspection of the vehicle before purchase.

32.     Contrary to their representations, Defendants failed adequately to research, design, test and/or manufacture the Dodge Durango sports utility vehicle before warranting, advertising, promoting, marketing, and selling it, for the model years 1998 through 2003, as suitable and safe for use in an intended and/or reasonably foreseeable manner.

33.     Defendants advertised and marketed the Dodge Durango sports utility vehicles as premium quality ("Best in Class") sports utility vehicles that were safe and appropriate for their intended and foreseeable use.

34.     Defendants advertised, promoted, marketed, warranted, and sold through the stream of commerce to the Plaintiff and Class the Dodge Durango sports utility vehicles that

9

Defendants knew or reasonably should have known were dangerously defective, and otherwise would not perform in accordance with the Plaintiff's and Class members' reasonable expectations that the vehicles would not suffer an inherent, disabling defect, and that the vehicles would be safe and suitable for their intended and foreseeable use.

35. Defendants expressly warranted the affected Dodge Durango sports utilities vehicles to be free from defects in materials or workmanship for a period of 36 months or 36,000 miles, and also represented that utilization of the "maintenance-free" ball joints assured durability equal to or greater than that provided by ball joints that require periodic lubrication.

36. Buyers, lessees, and other owners of the Dodge Durango sports utility vehicle were without access to the information concealed by Defendants as described herein, and therefore reasonably relied on Defendants' representations and warranties regarding the quality, durability, and other material characteristics of their vehicles. Had these buyers and lessees known of the defect and the danger, they would have taken steps to avoid that danger and/or would have paid less for their vehicles than the amounts they actually paid, or would not have purchased the vehicles.

37. By concealing the safety risks associated with the vehicles, Defendants have forced consumers to bear the risk of injury to themselves and other persons and as well as to property as a result of control arm and ball joint failure, as well as the financial loss associated with the diminished value of their vehicles. Had Defendants revealed this information, consumers would not buy or lease, or would pay substantially less for, vehicles equipped with defective control arms and ball joints.

10

38.     Upon information and belief, failure of Defendants' defective ball joints has resulted in fatality, serious injury, vehicle loss of control, vehicle and other property damage, and other risks that are completely unacceptable, as evidenced by the records of the National Highway Traffic Safety Administration (NHTSA) documenting actual wheel separation during operation of the vehicle, attached as **Exhibit A**. In addition, Defendants have evidence of over a thousand reports and complaints of premature ball joint failure, upon information and belief.

39.     As a result of Defendants' misconduct, Plaintiff and the Class have suffered actual damages in that their Dodge Durango from the model years 1998 through 2003 are dangerous and hazardous to drive, resulting in loss of use, costly repairs, and substantially diminished value, including, without limitation, diminished resale value. Plaintiff and the Class would not have purchased the vehicles had they known them to be dangerously defective and unfit for their intended purpose.

40.     The cost to repair the defective and dangerous control arm and ball joints will vary with vehicle, geographic location, and dealer/mechanic; however, it is expected to be between $600.00 and $1,200.00 per vehicle. Because of the relatively small size of the Plaintiff's and the typical individual Class members' claims, and because most have only modest resources, it is unlikely that individual Class members could afford to seek recovery against these corporate Defendants, especially in light of the Defendants' size and resources. A class action is, therefore, the only reasonable means by which Class members can obtain relief.

11

## TOLLING OF APPLICABLE STATUTES OF LIMITATION

41. Any applicable statutes of limitation have been tolled by Defendants' knowing and active concealment and denial of the facts as alleged herein. Plaintiff and members of the Class have been kept ignorant of vital information essential to the pursuit of these claims, without any fault or lack of diligence on their part. Plaintiff and members of the Class could not earlier have reasonably discovered the true, latent defective nature of control arms and ball joints on the Dodge Durango sports utility vehicle.

42. Defendants are and were under a continuing duty to disclose to the Plaintiff and the Class the true character, quality, and nature of the control arms and ball joints on the Dodge Durango sports utility vehicle. Because of their knowing, affirmative, and/or active concealment of the true character, quality and nature of the suspension problems with the Durango and at issue, Defendants are estopped from relying on any statutes of limitation in their defense of this action.

43. Any applicable statutes of limitation have been tolled by Defendants' knowing and active concealment and denial of the facts as alleged herein. Plaintiff and members of the Class have been kept ignorant of vital information essential to the pursuit of these claims, without any fault or lack of diligence on their part. Plaintiff and members of the Class could not reasonably have discovered the Dodge Durango sports utility vehicle.

## CLASS REPRESENTATIVE ALLEGATIONS

44. Plaintiff John Bussian owns a Dodge Durango of model year 1998. Bussian's mechanic informed him that the Durango's upper ball joints needed to be replaced immediately because continuing to drive the Durango without repair would be extremely

12

hazardous, and complete failure of the ball joint would result in wheel separation while the vehicle was being driven.

45.     Plaintiff Bussian had the upper ball joints replaced on his Durango at his own expense, at a cost of over $700.

46.     After Bussian became aware that over 800 people had had the exact same problem on their Dodge Durangos, and that the Durangos' ball joint failure rate was over 50 times that of similar sport utility vehicles, he contacted his local Dodge dealership/authorized repair facility, and requested that Dodge or DaimlerChrysler reimburse him for his repair costs. The dealership/repair facility refused, and stated that Defendants would not authorize reimbursement for that repair.

47.     Plaintiff Bussian has been damaged in that he has expended over $700 to replace his upper ball joints and, further, that the vehicle, upon information and belief, has suffered a loss of value because its design results in premature ball joint failure.

## CLASS ACTION ALLEGATIONS

48.     Plaintiff brings this lawsuit as a class action on behalf of himself and all others similarly situated pursuant to N.C.G.S. § 1A-1, Rule 23. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements for maintaining this action.

49.     The class is defined as:

All individuals and entities throughout the United States, excepting the State of Wisconsin, that have owned, own, leased, lease, or otherwise acquired Dodge Durango sports utility vehicles from the model years 1998 through 2003.

Excluded from the Class are individuals and entities with claims against the Defendants for personal injuries as a result of the defect alleged herein; Defendants; any entity in

13

which Defendants have a controlling interest or which has a controlling interest of Defendants; Defendants' legal representatives, assigns and successors; any judge or special master assigned to hear any aspect of this litigation, and any member of their immediate families; and, to the extent the class certification order permits exclusion, all people who submit timely and otherwise proper requests for exclusion from the Class.

50.     The Class is so numerous and geographically dispersed throughout the United States so that joinder of all Class members is impracticable. While Plaintiffs do not know the exact number and identity of Class members, Plaintiffs believe there are hundreds of thousands of Class members, and that their identities can be ascertained from Defendants' books and records and/or from state Department of Motor Vehicle (DMV) records. Joining and naming each Class member as a co-plaintiff would be unreasonable and impracticable. Furthermore, the disposition of all of the Class members' common claims in a single class action proceeding will provide substantial economies and benefits to all affected parties and to the Court.

51.     Numerous questions of law and fact are common to the Plaintiff and the Class. These common questions predominate over any other issues that may affect only individual Class members, and include, inter alia, the following:

a.     Whether the Dodge Durango sports utility vehicles from the model years 1998 through 2003 are defective in that: they fail to perform in accordance with the reasonable expectations of ordinary consumers; they are not fit and safe for their ordinary, intended, and foreseeable use; their risks and dangers outweigh their benefits, if any; and/or they would not be offered for sale by a reasonably careful manufacturer or seller who knew of their defective nature;

b.     Whether Defendants knew of the unreasonably dangerous nature of the Dodge Durango sports utility vehicle from model years 1998 through 2003;

c.     Whether Defendants represented through their advertising, warranties and other representations, that the Dodge Durango sports utility vehicle from model years 1998 through 2003 had characteristics that it does not actually have, or omitted to disclose material facts regarding the Dodge Durango sports utility vehicle from model years 1998 through 2003 actual characteristics;

14

d.     Whether Defendants made any affirmations of fact or promise relating to Dodge Durangos that became a basis of the bargain between seller and buyer, and thereby created an express warranty that the vehicles would conform to those affirmations or promises;

e.     Whether the Dodge Durango sports utility vehicles from the model years 1998 through 2003 conform(ed) to Defendants' express warranties;

f.     Whether the Dodge Durango sports utility vehicles from the model years 1998 through 2003 are merchantable, pass without objection in the trade, and are fit for their ordinary and intended purposes of sport utility vehicles;

g.     Whether the Plaintiff and the Class are entitled to compensatory damages, and the amount of such damages.

52.     There is a common, general interest among the Plaintiff and Class members. The claims of the representative Plaintiff are typical of Class members' claims in that the representative Plaintiff, like all Class members, owns a Dodge Durango sports utility vehicle from the model years 1998 through 2003. The representative Plaintiff, like all Class members, has been damaged by Defendants' conduct in that he has been forced to bear the risk of a dangerously defective product, and has suffered diminished value of his vehicle, including, without limitation, diminished resale value, as a result of the inherently defective control arm and ball joints. The representative Plaintiff and the Class have been further damaged in the amount it costs to bring their vehicles into a safely operable condition by repairing or replacing the defective control arm and ball joints. Furthermore, the factual evidentiary basis for the representative Plaintiff's claims is coextensive with that of the claims of Class members. Defendants engaged in a uniform course of wrongful conduct that is common to all Class members, such that Defendants are liable in the same way for the resulting injuries suffered by the Plaintiff and all Class members.

15

53.     The representative Plaintiff will fairly and adequately protect the common

interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting

class actions. Plaintiff and his counsel are committed to prosecuting this action vigorously on

behalf of the Class they represent, and have the financial resources to do so. Neither Plaintiff

nor his counsel has any interests adverse to those of the Class.

54.     A class action is superior to any other available methods for the fair and

efficient adjudication of this controversy. Because of the relatively small size of the individual

Class members' claims, absent a class action most Class members would likely find the cost of

litigating their claims against the corporate Defendants to be prohibitive. The practical result

is that they have no effective remedy against Defendants at law. Even for those Class

members who might afford to seek legal redress against Defendants on their own, the cost of

litigation would undoubtedly exceed any recovery, making their pursuit of individual relief

uneconomical. Unitary treatment of common, Class-wide issues of law and fact is also

superior to multiple individual actions or piecemeal litigation, as it will provide both litigants

and the courts with economies of time, effort, and expense, and will promote consistency and

efficiency. Accordingly, this case is manageable as a class action.

## COUNT I – BREACH OF EXPRESS WARRANTIES

55.     Plaintiff incorporates by reference the allegations in paragraphs 1-54 as if the

same were fully set forth herein.

56.     Defendants expressly warranted the Dodge Durango to be free of defects in

factory materials and workmanship at the time of sale and for a period of three years or 36,000

miles, and, further, that Defendants would repair at no cost any defective item on the vehicle

16

at the time of sale and for three years. Such warranties are express warranties within the meaning of N.C.G.S. § 25-2-313.

57.    Through advertising and promotional literature, Defendants represented that the Dodge Durango sport utility vehicle was a rugged, tough sport utility vehicle, suitable for driving in all conditions, including rain and wet conditions, and in off-road venues. Defendants also represented the Durango had "long-lasting capability" and would "gladly tackle whatever you put it through for years to come." Defendants further promoted the incorporation of "maintenance-free" ball joints that assured "durability equal to or greater than that provided by ball joints that require periodic lubrication."

58.    Defendants' "Basic Warranty" states that it "covers the costs of all parts and labor needed to repair any defective item on your vehicle that was supplied by Chrysler – that is, defective in material, workmanship, or factory preparation...You pay nothing for these repairs. These warranty repairs or adjustments – including all parts and labor connected with them – will be made by your dealer at no charge..."

59.    At the time of sale and forward, Defendants have breached these express warranties by selling to Plaintiff and the Class Dodge Durangos equipped with defective items – control arms and ball joints that are, by design, defective, unsafe, subject to extreme premature wearing, and unreasonably likely to cause serious injury to Plaintiff and Class members, and/or by refusing voluntarily to repair the vehicles.

60.    As a direct and proximate cause of Defendants' breach of express warranties, Plaintiff and Class members have suffered actual damages and are threatened with irreparable harm by undue and unreasonable risk of serious bodily injury.

17

61. Any limitation periods or limitations on recovery in Defendants' express warranties are unconscionable within the meaning of N.C.G.S. § 25-2-302 (and the parallel provisions of the Uniform Commercial Code contained in all other states' statutory codes), and therefore are unenforceable, in that, among other things, Dodge Durangos contain a latent defect of which Defendants were actually or constructively aware at the time of sale, and purchasers lacked a meaningful choice with respect to the terms of the warranty due to unequal bargaining power and a lack of warranty competition.

62. Any applicable notice requirement was met by the filing of this action, and because Plaintiff alleges Defendants had notice of the defect in the Dodge Durango before Plaintiff and the Class did, and did nothing to remedy the defect.

63. Plaintiff on behalf of himself and all others similarly situated, demand judgment against the Defendants for compensatory, incidental and consequential damages (excepting damages for personal injuries) for themselves and each member of the Class, for the establishment of the common fund, plus an award of attorney fees, interest, and costs.

## COUNT II – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

64. Plaintiff incorporates by reference the allegations in paragraphs 1-63 as if the same were fully set forth herein.

65. Defendants impliedly warranted Dodge Durangos to be merchantable in that they would pass without objection in the trade and were fit for their ordinary and intended purpose(s).

66. The Dodge Durangos are not merchantable, and because of the control arm and ball joint defect, the Durangos are not fit for the ordinary purposes to which sport utility

18

vehicles are used, and the vehicles were not merchantable at the time of purchase, in violation of Defendants' implied warranties.

67. Any applicable notice requirement was met by the filing of this action, and because Plaintiff alleges Defendants had notice of the defect in the Dodge Durangos before Plaintiff and the Class did, and did nothing to advise the Class or remedy the defect.

68. Any purported limitations on the implied warranty of merchantability contained in Defendants' Warranty Information (a) are ambiguous and not set forth in clear and unmistakable language, (b) do not specifically refer to the warranty of merchantability, (c) are not in bold, underlined, italics, or colored ink, in larger point-type or different font, or is in any other way prominent or conspicuous.

69. Plaintiff, on behalf of himself and all others similarly situated, demand judgment against the Defendants for compensatory, incidental and consequential damages (excepting damages for personal injuries) for themselves and each member of the Class, for the establishment of a common fund, plus an award of attorneys' fees, interest and costs.

## COUNT III – MAGNUSON MOSS WARRANTY ACT VIOLATIONS

70. Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

71. Congress enacted the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq. (the "Act"), in 1975 in response to widespread complaints from consumers that many warranties were misleading and deceptive and were not being honored. To remedy this problem, the Act imposes civil liability on any "warrantor" for, inter alia, failing to comply with any obligation under a written warranty and/or implied warranty under state law. See 15

19

U.S.C. § 2310(d)(1). The Act authorizes a "suit for damages and other legal and equitable relief." Id. The Act authorizes the award of attorney fees, and expressly authorizes class actions. 15 U.S.C. § 2310(e). 15 U.S.C. § 2310(d)(3) of the Act establishes jurisdiction in the state courts and prohibits Federal jurisdiction if, inter alia, the action is brought as a class action, and the number of named plaintiffs is less than one hundred.

72. Defendants are "warrantors" within the meaning of § 2301(5) of the Act. Plaintiffs are "consumers" within the meaning of § 2301(3) of the Act.

73. Upon information and belief, Defendants knew or should have known at the time of sale that the ball joints incorporated in the Dodge Durango were defective and rendered the vehicle unfit for the customary and usual purposes of a sport utility vehicle.

74. Defendant impliedly warranted that the Durango vehicles would be merchantable, which warranty is implied within the meaning of § 2301(7) of the Act, and § 2-314 of the Uniform Commercial Code. See N.C.G.S. § 25-2-304. Defendants breached this implied warranty in the manner described above.

75. Defendants' knowledge of the fact that the control arm and the ball joints on the Dodge Durango were inherently defective and prone to sudden failure and that they would need repair and/or replacement, gave Defendant more than adequate opportunity to cure the problem, which opportunity it failed to timely undertake. Defendants were alerted to this problem by

(a) over 850 reports of ball joint failure to the National Highway Traffic Safety Adminisitration (NHTSA);

(b) additional complaints registered directly from consumers;

20

(c) reports from their dealerships and authorized repair facilities regarding the nature and frequency of the premature failure of the ball joints;

(d) discussions in internet chatrooms, forums, and listserves sponsored by Defendants or, if not sponsored by Defendants, monitored by Defendants' employees;

(e) letters, phone calls, e-mail messages, and other messages, documents, and correspondence received from consumers, dealers, and repair facilities messages relating to the ball joint defect, repairs thereto, and the need for repairs;

(f) the July 2003 AP report referenced in paragraph 22 above;

(g) the filing of a class action lawsuit in July 2003 in Wisconsin calling for a recall and repair of the ball joint defects, among other claims;

(h) the investigation initiated by NHTSA into the Dodge Durango defective ball joint;

(i) an October 27, 2003 report from CBS News;

(j) a November 18, 2003 report by Consumer Affairs;

(k) a December 18, 2003, CBS News Report;

(l) a March 3, 2004 CBS News Report; and

(m) requests for action from consumer safety groups such as Public Citizen.

76. As of March 5, 2003, Defendants have steadfastly denied that there is a defect in the Durango upper ball joints that warrants a recall, repair, compensation, or other remedy to the consumers owning these vehicles.

77. Plaintiff Bussian and many other Class Members have made demand upon Defendants and/or Defendants' agents to make necessary repairs occasioned by the premature ball joint failure or to reimburse them for repairs made at other facilities, and have otherwise

21

provided Defendants them with a reasonable opportunity to comply with their warranty obligations, and Defendants have failed to comply with their written and implied warranty obligations.

78.     Plaintiff and members of the Class were damaged by Defendants' failure to comply with its obligations under the above-referenced written and implied warranties. As a direct and proximate result of Defendants' breaches of these warranties, Plaintiff and the Class have suffered damages in an amount to be proven at the time of trial.

79.     The number of named plaintiffs is fewer than one hundred.

## RELIEF REQUESTED

WHEREFORE, on behalf of themselves and all others similarly situated, the Plaintiff prays that the Court certify the Class, enter judgment against Defendants and in favor of Plaintiff and the Class, and award additional relief as follows:

a.     For an award of actual damages in an amount above $10,000, to be proven at trial, and the establishment of a common fund;

b.     For interest at the legal rate of interest on the foregoing sum;

c.     For attorneys' fees herein incurred as may be provided by law;

d.     For costs of suit herein incurred;

e.     All remedies, including equitable relief, as may be permitted pursuant to the Magnuson-Moss warranty Act, and

e.     For such other or further relief as may be appropriate under the circumstances.

22

## JURY TRIAL DEMANDED

Plaintiff hereby demands a jury trial for all individual and class claims so triable.

This, the 5th day of April, 2004.

OF COUNSEL:
CLARK BLOSS & WALL, PLLC
125 South Elm Street, Suite 600
P. O. Box 1349
Greensboro, NC 27402-1349
Telephone: 336-275-7275
Facsimile: 336-275-7276

David M. Clark  (NC Bar #813)

Jonathan Wall  (NC Bar #22839)

John F. Bloss (NC Bar #23947)

Counsel for Plaintiffs

23

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing First Amended Class Action Complaint was served

on defendants by mailing a copy thereof to their registered agents for service as follows:

> CT Corporation, Registered Agent
> 225 Hillsborough Street
> Raleigh, NC 27603

with a courtesy copy to:

> Burley B. Mitchell, Jr. Esquire
> Womble Carlyle Sandrige & Rice
> P. O. Box 831
> Raleigh, NC 27602

This the 5th day of April, 2004.

_____
Counsel for Plaintiffs

24

# EXHIBIT A

## DOT Auto Safety Hotline
# Vehicle Owner's Questionnaire
### To Report Vehicle Safety Defects
### 1-888-DASH-2-DOT
### (1-888-327-4236)
### INTERNET:www.nhtsa.dot.gov/hotline

| FOR AGENCY USE ONLY | 100148 |

**U.S. Department of Transportation**

**National Highway Traffic Safety Administration**

| Date Received | Repository ☐ |
|---|---|
| 30-OCT-2003 | Reference No. 10045092 |

## OWNER INFORMATION (Type or Print)

| | |
|---|---|
| **Name** ············· | Daytime Telephone Number ············· |
| **Address** ············· | E-mail Address ············· |
| **City** SACRAMENTO **State** CA **Zip Code** ············· | Evening Telephone Number ············· |

*Do you authorize NHTSA to provide a copy of this report to the manufacturer of your vehicle?* ☐ YES  ☒ NO
*In the absence of an authorization, NHTSA WILL NOT provide your name or address to the vehicle manufacturer.*

Signature of Owner _____ Date __/__/__

## VEHICLE INFORMATION

| 17 digit Vehicle Identification Number Located at bottom of windshield on driver's side | Make | Model | Model Year |
|---|---|---|---|
| 1B4HS28N9YF142832 | DODGE | DURANGO | 2000 |

| Date Purchased 25-MAY-03 | Dealer's Name and Telephone Number | Engine: No: Cylinders 8 | Fuel Type: Gas |
|---|---|---|---|
| Original Owner ☐ | Dealer's City   State   Zip Code | | |

| Transmission Type AUTOMATIC | ☒ Antilock Brakes ☒ Cruise Control | Powertrain 4 WHEEL DRIVE | Vehicle Component Code 203000 WHEELS:LUGS/NUTS/BOLTS Multiple Failure: 1 |
|---|---|---|---|

## FAILED COMPONENT(S)/PART(S) INFORMATION

| Incident Date(s) 27-SEP-2003 | Failure Mileage 70000 | Failure Speed 75 |
|---|---|---|

## ADDITIONAL ITEMS TO BE COMPLETED WHEN REPORTING A TIRE FAILURE

| Tire Make | Tire Model (Name or Number) | Tire Size (Example P215/65R15) |
|---|---|---|
| DOT No. (Example: DOTMAL9ABC036) | ☐ Original Equipment ☐ Prior Repair | Failure Location: |
| Tire Component Code | | Tire Failure Type |

## ADDITIONAL ITEMS TO BE COMPLETED WHEN REPORTING A CHILD SEAT FAILURE

| Make: | Date Manufactured: | Model No./Name: |
|---|---|---|
| Seat Type: | Installation System: | |
| Child Seat Component Code: | Failed Part: | |

## APPLICABLE INCIDENT INFORMATION
*(Please describe in detail the incident(s), Failure(s), Crash(es), and injury(ies).)*

| Crash ☒Yes ☐No | Fire ☐Yes ☒No | Number of Persons Injured 5 | Number of Deaths 3 | Reported to Police Y |
|---|---|---|---|---|

**Narrative Description of Incident(S), Crash(es), and Injury(ies).**
**Please describe (1) events leading up to the failure, (2) failure and its consequences, and (3) what was done to correct the failure; i.e, parts repaired or replaced (and if old part is available).**

WHILE DRIVING IN A 2000 DODGE DURANGO THE LEFT FRONT WHEEL FELL OFF CAUSING THE VEHICLE TO ROLL NUMEROUS TIMES.  THREE PEOPLE DIED AS A RESULT OF THIS ACCIDENT.  *LA

Include, if available: Police/Fire Department Report, Photos, and Repair Invoice.       ATTACH ADDITIONAL SHEETS IF NECESSARY

The Privacy Act of 1974-Public Law 93-579 This information is requested pursuant to authority vested in the National Highway Traffic Safety Act and subsequent amendments. You are under no obligation to respond this questionnaire. Your response may be used to assist the NHTSA in determining whether a Manufacturer should take appropriate action to correct a safety defect. If the NHTSA proceeds with administrative enforcement or litigation against a manufacturer, your response, or a statistical summary thereof, may be used in support of the agency's action.

# DOT Auto Safety Hotline
# Vehicle Owner's Questionnaire
## To Report Vehicle Safety Defects
## 1-888-DASH-2-DOT
## (1-888-327-4236)
### INTERNET:www.nhtsa.dot.gov/hotline

U.S. Department
of Transportation

**National Highway
Traffic Safety
Administration**

| FOR AGENCY USE ONLY | 100161 |
| --- | --- |
| Date Received | Repository ☐ |
| 27-JAN-2004 | Reference No. 10044862 |

## OWNER INFORMATION (Type or Print)

| Name | ·············· | Daytime Telephone Number ·············· | E-mail Address ·············· |
| --- | --- | --- | --- |
| Address | ·············· | | |
| City WAXHAW | State NC | Zip Code ·············· | Evening Telephone Number ·············· |

Do you authorize NHTSA to provide a copy of this report to the manufacturer of your vehicle?  ☐ YES  ☒ NO
In the absence of an authorization, NHTSA WILL NOT provide your name or address to the vehicle manufacturer.

Signature of Owner _____ Date ___/___/___

## VEHICLE INFORMATION

| 17 digit Vehicle Identification Number Located at bottom of windshield on driver's side 1B4HS28Z0XF655551 | Make DODGE | Model DURANGO | Model Year 1999 |
| --- | --- | --- | --- |
| Date Purchased 18-JAN-03 | Dealer's Name and Telephone Number METROLINA DODGE | Engine: No: Cylinders 8 | Fuel Type: Gas |
| Original Owner ☒ | Dealer's City CHARLOTTE | State NC · Zip Code 28273 | |

| Transmission Type | ☐ Antilock Brakes ☐ Cruise Control | Powertrain | Vehicle Component Code 200000 WHEELS |
| --- | --- | --- | --- |
| | | | Multiple Failure: 1 |

## FAILED COMPONENT(S)/PART(S) INFORMATION

| Incident Date(s) 06-AUG-2003 | Failure Mileage 40000 | Failure Speed 45 |
| --- | --- | --- |

## ADDITIONAL ITEMS TO BE COMPLETED WHEN REPORTING A TIRE FAILURE

| Tire Make | Tire Model (Name or Number) | Tire Size (Example P215/65R15) |
| --- | --- | --- |
| DOT No. (Example: DOTMAL9ABC036) | ☐ Original Equipment ☐ Prior Repair | Failure Location: |
| Tire Component Code | | Tire Failure Type |

## ADDITIONAL ITEMS TO BE COMPLETED WHEN REPORTING A CHILD SEAT FAILURE

| Make: | Date Manufactured: | Model No./Name: |
| --- | --- | --- |
| Seat Type: | Installation System: | |
| Child Seat Component Code: | Failed Part: | |

## APPLICABLE INCIDENT INFORMATION
### (Please describe in detail the incident(s), Failure(s), Crash(es), and Injury(ies).)

| Crash ☒ Yes ☐ No | Fire ☐ Yes ☒ No | Number of Persons Injured | Number of Deaths | Reported to Police Y |
| --- | --- | --- | --- | --- |

**Narrative Description of Incident(s), Crash(es), and Injury(ies).**
**Please describe (1) events leading up to the failure, (2) failure and its consequences, and (3) what was done to correct the failure;**
**i.e, parts repaired or replaced (and if old part is available).**

WHILE DRIVING APPROXIMATELY 45 MPH, THE LEFT FRONT WHEEL COLLAPSED, AND CAUSED THE VEHICLE TO HIT ANOTHER VEHICLE. *AK *SC *JB

Include, if available: Police/Fire Department Report, Photos, and Repair Invoice.    ATTACH ADDITIONAL SHEETS IF NECESSARY

The Privacy Act of 1974-Public Law 93-579 This information is requested pursuant to authority vested in the National Highway Traffic Safety Act and subsequent amendments. You are under no obligation to respond this questionnaire. Your response may be used to assist the NHTSA in determining whether a Manufacturer should take appropriate action to correct a safety defect. If the NHTSA proceeds with administrative enforcement or litigation against a manufacturer, your response, or a statistical summary thereof, may be used in support of the agency's action.

**DOT Auto Safety Hotline**

# Vehicle Owner's Questionnaire
To Report Vehicle Safety Defects
1-888-DASH-2-DOT
(1-888-327-4236)
INTERNET:www.nhtsa.dot.gov/hotline

**U.S. Department of Transportation**
**National Highway Traffic Safety Administration**

| FOR AGENCY USE ONLY | 100161 |
|---|---|
| Date Received | Repository ☐ |
| 28-OCT-2003 | |
| | Reference No. |
| | 10044462 |

## OWNER INFORMATION (Type or Print)

| Name | ███████ | Daytime Telephone Number | E-mail Address |
|---|---|---|---|
| Address | ███████ | | |
| City WAXHAW | State NC | Zip Code ███ | Evening Telephone Number |

Do you authorize NHTSA to provide a copy of this report to the manufacturer of your vehicle? ☐ YES ☒ NO
In the absence of an authorization, NHTSA WILL NOT provide your name or address to the vehicle manufacturer.

Signature of Owner _____ Date _/_/_

## VEHICLE INFORMATION

| 17 digit Vehicle Identification Number Location at bottom of windshield on driver's side | Make DODGE | Model DURANGO | Model Year 1998 |
|---|---|---|---|
| 1B4HS28Z0X█ | | | |

| Date Purchased 1-8-03 | Dealer's Name and Telephone Number Metrolina Dodge | Engine: No: Cylinders 8 | Fuel Type: Gas |
|---|---|---|---|
| Original Owner ☒ | Dealer's City Charlotte, N.C. | State N.C. | Zip Code 28213 |

| Transmission Type | ☐ Antilock Brakes ☐ Cruise Control | Powertrain | Vehicle Component Code 300000 WHEELS |
|---|---|---|---|
| | | | Multiple Failure 1 |

## FAILED COMPONENT(S)/PART(S) INFORMATION

| Incident Date(s) 05-AUG-2003 | Failure Mileage 40000 | Failure Speed 45 | Left front end collapsed |
|---|---|---|---|

### ADDITIONAL ITEMS TO BE COMPLETED WHEN REPORTING A TIRE FAILURE

| Tire Make | Tire Model (Name or Number) | Tire Size (Example P215/85R15) |
|---|---|---|
| DOT No. (Example: DOTMAL9ABC036) | ☐ Original Equipment ☐ Prior Repair | Failure Location: |
| Tire Component Code | | Tire Failure Type |

### ADDITIONAL ITEMS TO BE COMPLETED WHEN REPORTING A CHILD SEAT FAILURE

| Make: | Date Manufactured: | Model No./Name: |
|---|---|---|
| Seat Type: | Installation System: | |
| Child Seat Component Code: | Failed Part: | |

## APPLICABLE INCIDENT INFORMATION
(Please describe in detail the Incident(s), Failure(s), Crash(es), and Injuries(.)

| Crash ☒ Yes ☐ No | Fire ☐ Yes ☒ No | Number of Persons Injured 0 | Number of Deaths | Reported to Police Y |
|---|---|---|---|---|

Narrative Description of Incident(S), Crash(es), and Injury(ies).
Please describe (1) events leading up to the failure, (2) failure and its consequences, and (3) what was done to correct the failure; i.e. parts repaired or replaced (and if old part is available).

WHILE DRIVING APPROXIMATELY 45 MPH LEFT FRONT WHEEL COLLAPSED, CAUSING THE VEHICLE TO HIT TWO OTHER VEHICLES THAT WERE ON THE ROAD. *AK                                                          One

See police report

Include, if available: Police/Fire Department Report, Photos, and Repair Invoice.     ATTACH ADDITIONAL SHEETS IF NECESSARY

The Privacy Act of 1974-Public Law 93-579 This information is requested pursuant to authority vested in the National Highway Traffic Safety Act and subsequent amendments. You are under no obligation to respond to this questionnaire. Your response may be used to assist the NHTSA in determining whether a manufacturer should take appropriate action to correct a safety defect. If the NHTSA proceeds with administrative enforcement or litigation against a manufacturer, your response, or a statistical summary thereof, may be used in support of the agency's action.

DMV-349 (Rev. 3/94)  THIS REPORT IS FOR THE USE OF THE DIVISION OF MOTOR VEHICLES. THE DATA IS COLLECTED FOR STATISTICAL ANALYSIS AND SUBSEQUENT HIGHWAY SAFETY PROGRAMMING. DETERMINATION OF "FAULT" ARE THE RESPONSIBILITY OF INSURERS OR OF THE STATE'S COURTS.

**B22 30 14**

| Crash Date | County | Time | Local Use/Local Area |
|---|---|---|---|
| 08/06/2003 | MECKLENBURG | 1645 | 200308061645 01 |

City: CHARLOTTE

REA ROAD

I-485   RIVER GLEN RD

UNIT 1 ☑ VEHICLE ☐ PEDESTRIAN ☐ HIT & RUN ☐ COMMERCIAL VEHICLE

City: WAXHAW   State: NC

D.L. State: NC

Owner

Plate #   State: NC   Year: 2002

VIN: 1B4HS28Z0XF

Vehicle Make: DODGE   Vehicle Year: 1999   Body Style: 4

At TAG: LD-A   Est. Damage: 7,000.48

Insurance Company: HARLEYSVILLE MUTUAL

UNIT 2 ☑ VEHICLE ☐ PEDESTRIAN ☐ HIT & RUN ☐ OTHER

City: CHARLOTTE   State: NC

D.L. State: NC

Owner

Plate #   State: NC   Year: 2004

VIN: 2T1BR18E9WW

Vehicle Make: TOYT   Vehicle Year: 1998   Body Style: 1

At TAG: LD-3   Est. Damage: $5,000.00

Insurance Company: STATE FARM

| | | | | | | | | | Name and Address | |
|---|---|---|---|---|---|---|---|---|---|---|
| A | 1 | 1 | | WM | 2 | 3 | 2 | 5 | WAX | DELLINGER WRECKER |
| B | 2 | 1 | 1 | WM | 2 | 3 | 2 | 5 | WAX | DELLINGER WRECKER |
| C | 2 | 3 | 2.8.1905 | W/F | 2 | 1 | 3 | 2 | 5 | LOUISE BIGGERSTAFF |
| D | | | | | | | | | | |
| E | | | | | | | | | | |
| F | | | | | | | | | | |
| G | | | | | | | | | | |
| H | | | | | | | | | | |

46 Name of EMS: NA
47 Injured Taken by EMS to: NA

46 Name of EMS: MEDIC 23 / 1700 HRS.
47 Injured Taken by EMS to: PRESBYTERIAN MATTHEWS

**DOT Auto Safety Hotline**
# Vehicle Owner's Questionnaire
**To Report Vehicle Safety Defects**
**1-888-DASH-2-DOT**
**(1-888-327-4236)**
**INTERNET:www.nhtsa.dot.gov/hotline**

U.S. Department
of Transportation

**National Highway
Traffic Safety
Administration**

| | |
|---|---|
| Date Received | Repository ☐ |
| 14-AUG-2003 | Reference No. 10034008 |

## OWNER INFORMATION (Type or Print)

| | | |
|---|---|---|
| **Name** ············ | | Daytime Telephone Number / E-mail Address ············· |
| **Address** ·········· | | |
| **City** OAKLAND | **State** NJ | **Zip Code** ············ / Evening Telephone Number ············· |

Do you authorize NHTSA to provide a copy of this report to the manufacturer of your vehicle? ☐ YES ☒ NO
In the absence of an authorization, NHTSA WILL NOT provide your name or address to the vehicle manufacturer.
Signature of Owner _____ Date ___/___/___

## VEHICLE INFORMATION

| 17 digit Vehicle Identification Number Located at bottom of windshield on driver's side | Make DODGE | Model DURANGO | Model Year 1999 |
|---|---|---|---|

| Date Purchased | Dealer's Name and Telephone Number | | Engine: No: Cylinders | Fuel Type: |
|---|---|---|---|---|
| Original Owner ☐ | Dealer's City | State / Zip Code | | |

| Transmission Type | ☐ Antilock Brakes ☐ Cruise Control | Powertrain | Vehicle Component Code 200000 WHEELS |
|---|---|---|---|
| | | | Multiple Failure: 1 |

## FAILED COMPONENT(S)/PART(S) INFORMATION

| Incident Date(s) 02-SEP-2002 | Failure Mileage | Failure Speed | |
|---|---|---|---|

## ADDITIONAL ITEMS TO BE COMPLETED WHEN REPORTING A TIRE FAILURE

| Tire Make | Tire Model (Name or Number) | Tire Size (Example P215/65R15) |
|---|---|---|
| DOT No. (Example: DOTMAL9ABC036) | ☐ Original Equipment ☐ Prior Repair | Failure Location: |
| Tire Component Code | | Tire Failure Type |

## ADDITIONAL ITEMS TO BE COMPLETED WHEN REPORTING A CHILD SEAT FAILURE

| Make: | Date Manufactured: | Model No./Name: |
|---|---|---|
| Seat Type: | Installation System: | |
| Child Seat Component Code: | Failed Part: | |

## APPLICABLE INCIDENT INFORMATION
(Please describe in detail the incident(s), Failure(s), Crash(es), and injury(ies).)

| Crash ☒Yes ☐No | Fire ☐Yes ☒No | Number of Persons Injured | Number of Deaths | Reported to Police Y |
|---|---|---|---|---|

**Narrative Description of Incident(S), Crash(es), and Injury(ies).**
**Please describe (1) events leading up to the failure, (2) failure and its consequences, and (3) what was done to correct the failure; i.e, parts repaired or replaced (and if old part is available).**

VEHICLE'S LEFT REAR WHEEL SEPARATED FROM AXLE CAUSING VEHICLE TO GO OUT OF CONTROL.  *MR  THE CONSUMER HAD GONE AROUND A SMALL BEND AND THE VEHICLE PULLED TO THE LEFT.  AS THE CONSUMER TRIED TO STEER BACK INTO THE LANE, THE VEHICLE WENT INTO THE RIGHT LANE.  THE CONSUMER HAD NO CONTROL OF THE STEERING.  THE CONSUMER APPLIED THE BRAKES BUT THE VEHICLE DIDN'T SLOW DOWN, INSTEAD IT WENT OUT CONTROL AND TRAVELED BACKWARDS FACING TRAFFIC, THE VEHICLE HIT A BARRIER WALL OF THE BRIDGE ON THE DRIVERS SIDE, BOUNCED OFF THE WALL, SPUN AROUND AGAIN, AND HIT THE BARRIER WALL AGAIN IN THE REAR LEFT SIDE.  THE VEHICLE SPUN AROUND AGAIN AND ENDED BACK ON THE INTERSTATE.  THE LEFT REAR WHEEL HAD SEPARATED FROM THE VEHICLE AND WAS FOUND ACROSS THE HIGHWAY.  A WITNESS STATED THAT IT APPEARED AS IF THE REAR AXLE CRACKED AND THE LEFT REAR WHEEL WENT AT AN OPPOSITE ANGLE OF THE VEHICLE. *SCC  *JB

Include, if available: Police/Fire Department Report, Photos, and Repair Invoice.       ATTACH ADDITIONAL SHEETS IF NECESSARY

The Privacy Act of 1974-Public Law 93-579 This information is requested pursuant to authority vested in the National Highway Traffic Safety Act and subsequent amendments. You are under no obligation to respond this questionnaire. Your response may be used to assist the NHTSA in determining whether a Manufacturer should take appropriate action to correct a safety defect. If the NHTSA proceeds with administrative enforcement or litigation against a manufacturer, your response, or a statistical summary thereof, may be used in support of the agency's action.

Case 1:04-cv-00387-WO-PTS   Document 1   Filed 05/03/04   Page 72 of 110

**DOT Auto Safety Hotline**

# Vehicle Owner's Questionnaire
### To Report Vehicle Safety Defects
### 1-888-DASH-2-DOT
### (1-888-327-4236)
INTERNET: www.nhtsa.dot.gov/hotline

U.S. Department of Transportation
National Highway Traffic Safety Administration

| FOR AGENCY USE ONLY | 100145 |
|---|---|
| Date Received | Repository ☐ |
| 2004 FEB 26 | Referred No. 38 |
| 28-OCT-2003 | 10044907 |

## OWNER INFORMATION (Type or Print)

| Name | | Daytime Telephone Number | E-mail Address |
|---|---|---|---|
| Address | | | |
| City  IRONS | State  MI | Zip Code | Evening Telephone Number |

Do you authorize NHTSA to provide a copy of this report to the manufacturer of your vehicle?  ☐ YES  ☒ NO
In the absence of an authorization, NHTSA WILL NOT provide your name or address to the vehicle manufacturer.

Signature of Owner _____   Date __/__/__

## VEHICLE INFORMATION

| 17 digit Vehicle Identification Number Located at bottom of windshield on driver's side | Make  DODGE | Model  DURANGO | Model Year  1998 |
|---|---|---|---|
| 1 B4HS28Y3W | | | |

| Date Purchased  1-2001 | Dealer's Name and Telephone Number  Watson's Manistee Chrysler | Engine:  No. Cylinders  8 | Fuel Type:  Gas |
|---|---|---|---|
| Original Owner ☐ | Dealer's City  manistee | State  MI | Zip Code  49660 | | |

| Transmission Type  Automatic | ☒ Antilock Brakes  ☒ Cruise Control | Powertrain | Vehicle Component Code  021520 SUSPENSION:FRONT:CONTROL ARM:UPPER BALL JOINT |
|---|---|---|---|
| | | | Multiple Failure:  1 |

## FAILED COMPONENT(S)/PART(S) INFORMATION

| Incident Date(s)  23-NOV-2001 | Failure Mileage  67255 | Failure Speed  30 | Shaft - Arm - Hub. Rotor - Knuckle - wheel |
|---|---|---|---|

### ADDITIONAL ITEMS TO BE COMPLETED WHEN REPORTING A TIRE FAILURE

| Tire Make | Tire Model (Name or Number) | Tire Size (Example P215/85R15) |
|---|---|---|

| DOT No. (Example: DOTMAL9ABC036) | ☐ Original Equipment  ☐ Prior Repair | Failure Location: |
|---|---|---|

| Tire Component Code | | Tire Failure Type |
|---|---|---|

### ADDITIONAL ITEMS TO BE COMPLETED WHEN REPORTING A CHILD SEAT FAILURE

| Make: | Date Manufactured: | Model No./Name: |
|---|---|---|
| Seat Type: | Installation System: | |
| Child Seat Component Code: | Failed Part: | |

### APPLICABLE INCIDENT INFORMATION
*(Please describe in detail the Failure(s), Failure(s), Crash(es), and Injury(ies).)*

| Crash  ☐ Yes  ☒ No | Fire  ☐ Yes  ☒ No | Number of Persons Injured  0 | Number of Deaths  0 | Reported to Police  N |
|---|---|---|---|---|

Narrative Description of Incident(s), Crash(es), and Injury(ies).
Please describe (1) events leading up to the failure, (2) failure and its consequences, and (3) what was done to correct the failure;
i.e. parts repaired or replaced (and if old part is available).

WHILE DRIVING 30 MPH DRIVER'S SIDE TIRE COLLAPSED WITHOUT WARNING. DEALER STATED UPPER BALL JOINTS FAILED. *AK

Include, if available: Police/Fire Department Report, Photos, and Repair Invoice.   ATTACH ADDITIONAL SHEETS IF NECESSARY

The Privacy Act of 1974-Public Law 93-579 This information is requested pursuant to authority vested in the National Highway Traffic Safety Act and subsequent amendments. You are under no obligation to respond this questionnaire. Your response may be used to assist the NHTSA in determining whether a Manufacturer should take appropriate action to correct a safety defect. If the NHTSA proceeds with administrative enforcement or litigation against a manufacturer, your response, or a statistical summary thereof, may be used in support of the agency's action.

**Narrative Description of Incident(s), Failure(s), Crash(es), and Injury(ies)**

Grinding

We were on the Hwy + heard a squeaking noise
took the next ramp off + as we drove to park
for the wheel collapse. We had our
4yrs + 2yrs in the car. It could of been
tragic. My husband called his friend in
Ionia to come + get us with a flat bed to tow
us from Grand Rapids to Manistee (100 miles)
Then the manager of service had a hard
time passing this damage on the warranty
we ended up paying a deductable of $100
We feel we should be reimbursed for the
towing also. Try to call the Corporation
+ it went no where I am falling

ATTACH ADDITIONAL SHEETS IF NECESSARY

We are seriously considering filing our own lawsuit

U.S. Department
of Transportation

**National Highway
Traffic Safety
Administration**

400 Seventh St., S.W.
Washington, D.C. 20590

Official Business
Penalty for Private Use $300

**BUSINESS REPLY MAIL**
FIRST CLASS    PERMIT NO 73173    WASHINGTON, D.C.

POSTAGE WILL BE PAID BY NATL. HWY. TRAFFIC SAFETY ADMIN.

U.S. Department of Transportation
National Highway Traffic Safety Administration
Office of Defects Investigation, NVS-216
400 7th Street, SW
Washington, DC 20590

NO POSTAGE
NECESSARY
IF MAILED
IN THE
UNITED STATES



**VEHICLE OWNER'S QUESTIONNAIRE**

DOT AUTO SAFETY HOTLINE

TO REPORT VEHICLE SAFETY DEFECTS
COMPLETE THIS FORM
OR

**DASH2DOT**

and dial toll free at

**1-888-DASH-2-DOT**
1-888-327-4236

DOT Auto Safety Hotline
(DASH) 2 DOT

US Department of Transportation
National Highway Traffic Safety
Administration
http://www.nhtsa.dot.gov

DOT Auto Safety Hotline

# Vehicle Owner's Questionnaire

**To Report Vehicle Safety Defects**
1-888-DASH-2-DOT
(1-888-327-4236)
INTERNET: www.nhtsa.dot.gov/hotline

U.S. Department
of Transportation
National Highway
Traffic Safety
Administration

| FOR AGENCY USE ONLY 1388 | |
|---|---|
| Date Received **2004 FEB 10 PM 1:36** 30-OCT-2003 | Repository ☐ Reference No. 10049064 |

## OWNER INFORMATION (Type or Print)

| Name | ▓▓▓ | Daytime Telephone Number | E-mail Address |
|---|---|---|---|
| Address | ▓▓▓ | | |
| City **BELLEVUE** | State **MI** | Zip Code ▓▓▓ | Evening Telephone Number |

Do you authorize NHTSA to provide a copy of this report to the manufacturer of your vehicle?  ☒ YES   ☒ NO
In the absence of specific notification, NHTSA WILL NOT provide your name or address to the vehicle manufacturer.

Signature of Owner ▓▓▓   Date **1-22-04**

## VEHICLE INFORMATION

| 17 digit Vehicle Identification Number located at bottom of windshield on driver's side | Make **DODGE** | Model **DURANGO** | Model Year **1999** |
|---|---|---|---|
| **1B4HS28Y8 X** ▓▓▓ | | | |

| Date Purchased **1-02** | Dealer's Name and Telephone Number **Sunshine Toyota** | Engine: No. Cylinders | Fuel Type: |
|---|---|---|---|
| Original Owner ☐ | Dealer's City **Battle Creek** | State **MI**  Zip Code **49017** | |

| Transmission Type | ☒ Antilock Brakes  ☐ Cruise Control | Powertrain | Vehicle Component Code 021520 SUSPENSION:FRONT:CONTROL ARM:UPPER BALL JOINT |
|---|---|---|---|
| | | | Multiple Failure:  1 |

## FAILED COMPONENT(S)/PART(S) INFORMATION

| Incident Date(s) **18-JUN-2002** | Failure Mileage **40000** | Failure Speed **65** | |
|---|---|---|---|

## ADDITIONAL ITEMS TO BE COMPLETED WHEN REPORTING A TIRE FAILURE

| Tire Make | Tire Model (Name or Number) | Tire Size (Example P215/95R15) |
|---|---|---|
| DOT No. (Example: DOTMALBABC036) | ☐ Original Equipment  ☐ Prior Repair | Failure Location: |
| Tire Component Code | | Tire Failure Type |

## ADDITIONAL ITEMS TO BE COMPLETED WHEN REPORTING A CHILD SEAT FAILURE

| Make: | Date Manufactured: | Model No./Name: |
|---|---|---|
| Seat Type: | Installation System: | |
| Child Seat Component Code: | Failed Part: | |

## APPLICABLE INCIDENT INFORMATION
*(Please describe in chart the Incident(s), Failure(s), Crash(es), and Injuries(s).)*

| Crash ☒ Yes ☐ No  Fire ☐ Yes ☒ No | Number of Persons Injured | Number of Deaths | Reported to Police **N** |
|---|---|---|---|

Narrative Description of Incident (S), Crash(es), and Injury(ies).
Please describe (1) events leading up to the failure, (2) failure and its consequences, and (3) what was done to correct the failure; i.e. parts repaired or replaced (and if old part is available.).

WHILE DRIVING 65 MPH FRONT BALL JOINTS SNAPPED, CAUSING THE FRONT DRIVERS SIDE TIRE TO DISCONNECT FROM VEHICLE. CONSUMER MANAGED TO PULL OVER, AND HAD THE VEHICLE TOWED. DEALERSHIP MECHANIC WAS NOTIFIED, BUT THE PROBLEM STILL PERSISTS. *AK

Include, if available: Police/Fire Department Report, Photos, and Repair Invoice.          **ATTACH ADDITIONAL SHEETS IF NECESSARY**

The Privacy Act of 1974—Public Law 93-579 This information is requested pursuant to authority vested in the National Highway Traffic Safety Act and subsequent amendments. You are under no obligation to respond to this questionnaire. Your responses may be used to assist the NHTSA in determining whether a Manufacturer should take appropriate action to correct a safety defect. If the NHTSA proceeds with administrative enforcement or litigation against a manufacturer, your response, or a statistical summary thereof, may be used in support of the agency's action.

**Narrative Description of Incident(s), Failure(s), Crash(es), and Injury(ies)**

Ball joint + applicable parts were replaced at nearby dea garage on 6-19-02. (Ball joint, nuts, studs, rotor, knuckle). Spare tire was installed. Additional tire and cap were purchased. Inside tire wear - had to replace all 4 tires 7-2-02. Tire wear still abnormal to date.

ATTACH ADDITIONAL SHEETS IF NECESSARY

U.S. Department
of Transportation

National Highway
Traffic Safety
Administration

400 Seventh St., S.W.
Washington, D.C. 20590

Official Business
Penalty for Private Use $300

NO POSTAGE
NECESSARY
IF MAILED
IN THE
UNITED STATES

**BUSINESS REPLY MAIL**
FIRST CLASS    PERMIT NO 73173    WASHINGTON, D.C.

POSTAGE WILL BE PAID BY NATL. HWY. TRAFFIC SAFETY ADMIN.

U.S. Department of Transportation
National Highway Traffic Safety Administration
Office of Defects Investigation, NVS-216
400 7th Street, S.W.
Washington, DC 20590



VEHICLE OWNER'S QUESTIONNAIRE

DOT AUTO SAFETY HOTLINE

TO REPORT VEHICLE SAFETY DEFECTS
COMPLETE THIS FORM
OR

DASH2DOT
and dial toll free at

1-888-DASH-2-DOT
1-800-327-4236

DOT Auto Safety Hotline
(DASH) 2 DOT

US Department of Transportation
National Highway Traffic Safety
Administration

# DOT Auto Safety Hotline
## Vehicle Owner's Questionnaire
### To Report Vehicle Safety Defects
### 1-888-DASH-2-DOT
### (1-888-327-4236)
### INTERNET:www.nhtsa.dot.gov/hotline

**U.S. Department of Transportation**

**National Highway Traffic Safety Administration**

| FOR AGENCY USE ONLY   252 | |
|---|---|
| Date Received | Repository ☐ |
| 28-OCT-2003 | Reference No. 10044903 |

## OWNER INFORMATION (Type or Print)

Name  ·············

Address ·············

| City  ALTOONA | State  PA | Zip Code  ············· |
|---|---|---|

| Daytime Telephone Number ············· | E-mail Address ············· |
|---|---|
| Evening Telephone Number ············· | |

Do you authorize NHTSA to provide a copy of this report to the manufacturer of your vehicle?  ☐ YES   ☒ NO
In the absence of an authorization, NHTSA WILL NOT provide your name or address to the vehicle manufacturer.

Signature of Owner _____  Date __/__/__

## VEHICLE INFORMATION

| 17 digit Vehicle Identification Number Located at bottom of windshield on driver's side | Make DODGE | Model DURANGO | Model Year 1999 |
|---|---|---|---|

| Date Purchased | Dealer's Name and Telephone Number | Engine: No: Cylinders | Fuel Type: |
|---|---|---|---|
| Original Owner ☐ | Dealer's City | State | Zip Code |

| Transmission Type | ☐ Antilock Brakes  ☐ Cruise Control | Powertrain | Vehicle Component Code 200000 WHEELS  Multiple Failure:  1 |
|---|---|---|---|

## FAILED COMPONENT(S)/PART(S) INFORMATION

| Incident Date(s) 28-OCT-2003 | Failure Mileage 42000 | Failure Speed 35 | |
|---|---|---|---|

## ADDITIONAL ITEMS TO BE COMPLETED WHEN REPORTING A TIRE FAILURE

| Tire Make | Tire Model (Name or Number) | Tire Size (Example P215/65R15) |
|---|---|---|
| DOT No. (Example: DOTMAL9ABC036) | ☐ Original Equipment  ☐ Prior Repair | Failure Location: |
| Tire Component Code | | Tire Failure Type |

## ADDITIONAL ITEMS TO BE COMPLETED WHEN REPORTING A CHILD SEAT FAILURE

| Make: | Date Manufactured: | Model No./Name: |
|---|---|---|
| Seat Type: | Installation System: | |
| Child Seat Component Code: | Failed Part: | |

## APPLICABLE INCIDENT INFORMATION
*(Please describe in detail the incident(s), Failure(s), Crash(es), and injury(ies).)*

| Crash ☐ Yes ☒ No | Fire ☐ Yes ☒ No | Number of Persons Injured 0 | Number of Deaths 0 | Reported to Police N |
|---|---|---|---|---|

Narrative Description of Incident(S), Crash(es), and Injury(ies).
Please describe (1) events leading up to the failure, (2) failure and its consequences, and (3) what was done to correct the failure; i.e, parts repaired or replaced (and if old part is available).

THE PASSENGER SIDE FRONT WHEEL FELL OFF WHILE DRIVING 35 MPH ON THE ROAD. DRIVER WAS ABLE TO PULL THE VEHICLE OFF THE ROAD. NO INJURIES WERE REPORTED. VEHILCE WAS TOWED TO THE DEALER. THE PROBLEM WAS UNDETERMINED AT THIS TIME. *AK

Include, if available: Police/Fire Department Report, Photos, and Repair Invoice.   ATTACH ADDITIONAL SHEETS IF NECESSARY

The Privacy Act of 1974-Public Law 93-579 This information is requested pursuant to authority vested in the National Highway Traffic Safety Act and subsequent amendments. You are under no obligation to respond this questionnaire. Your response may be used to assist the NHTSA in determining whether a Manufacturer should take appropriate action to correct a safety defect. If the NHTSA proceeds with administrative enforcement or litigation against a manufacturer, your response, or a statistical summary thereof, may be used in support of the agency's action.

## DOT Auto Safety Hotline
# Vehicle Owner's Questionnaire
## To Report Vehicle Safety Defects
### 1-888-DASH-2-DOT
### (1-888-327-4236)
### INTERNET:www.nhtsa.dot.gov/hotline

U.S. Department of Transportation

**National Highway Traffic Safety Administration**

FOR AGENCY USE ONLY   231

| | |
|---|---|
| Date Received | Repository ☐ |
| 23-JUL-2003 | Reference No. 10029928 |

### OWNER INFORMATION (Type or Print)

**Name** ············

**Address** ············

| City | State | Zip Code |
|---|---|---|
| SAINT CLAIR | MI | ············ |

| Daytime Telephone Number | E-mail Address |
|---|---|
| ············ | ············ |
| Evening Telephone Number ············ | |

Do you authorize NHTSA to provide a copy of this report to the manufacturer of your vehicle?  ☐ YES  ☒ NO
In the absence of an authorization, NHTSA WILL NOT provide your name or address to the vehicle manufacturer.

Signature of Owner _____ Date __/__/__

### VEHICLE INFORMATION

| 17 digit Vehicle Identification Number Located at bottom of windshield on driver's side | Make DODGE | Model DURANGO | Model Year 1999 |
|---|---|---|---|

| Date Purchased | Dealer's Name and Telephone Number | Engine: No: Cylinders | Fuel Type: |
|---|---|---|---|

| Original Owner ☐ | Dealer's City | State | Zip Code |
|---|---|---|---|

| Transmission Type | ☐ Antilock Brakes  Powertrain  ☐ Cruise Control | Vehicle Component Code 200000 WHEELS |
|---|---|---|
| | | Multiple Failure:  1 |

### FAILED COMPONENT(S)/PART(S) INFORMATION

| Incident Date(s) | Failure Mileage | Failure Speed | |
|---|---|---|---|

### ADDITIONAL ITEMS TO BE COMPLETED WHEN REPORTING A TIRE FAILURE

| Tire Make | Tire Model (Name or Number) | Tire Size (Example P215/65R15) |
|---|---|---|

| DOT No. (Example: DOTMAL9ABC036) | ☐ Original Equipment  ☐ Prior Repair | Failure Location: |
|---|---|---|

| Tire Component Code | Tire Failure Type |
|---|---|

### ADDITIONAL ITEMS TO BE COMPLETED WHEN REPORTING A CHILD SEAT FAILURE

| Make: | Date Manufactured: | Model No./Name: |
|---|---|---|
| Seat Type: | Installation System: | |
| Child Seat Component Code: | Failed Part: | |

### APPLICABLE INCIDENT INFORMATION
*(Please describe in detail the incident(s), Failure(s), Crash(es), and injury(ies).)*

| Crash ☐ Yes ☒ No | Fire ☐ Yes ☒ No | Number of Persons Injured | Number of Deaths | Reported to Police N |
|---|---|---|---|---|

**Narrative Description of Incident(S), Crash(es), and Injury(ies).**
**Please describe (1) events leading up to the failure, (2) failure and its consequences, and (3) what was done to correct the failure; i.e, parts repaired or replaced (and if old part is available).**

CONSUMER NOTICED WHILE TRAVELING 50-55 MPH AND WITHOUT ANY INDICATION PASSENGER'S FRONT WHEEL FELL OFF. DEALER WAS CONTACTED. *AK

Include, if available: Police/Fire Department Report, Photos, and Repair Invoice.          ATTACH ADDITIONAL SHEETS IF NECESSARY

The Privacy Act of 1974-Public Law 93-579 This information is requested pursuant to authority vested in the National Highway Traffic Safety Act and subsequent amendments. You are under no obligation to respond this questionnaire. Your response may be used to assist the NHTSA in determining whether a Manufacturer should take appropriate action to correct a safety defect. If the NHTSA proceeds with administrative enforcement or litigation against a manufacturer, your response, or a statistical summary thereof, may be used in support of the agency's action.

## DOT Auto Safety Hotline
# Vehicle Owner's Questionnaire
## To Report Vehicle Safety Defects
### 1-888-DASH-2-DOT
### (1-888-327-4236)
### INTERNET:www.nhtsa.dot.gov/hotline

U.S. Department of Transportation

National Highway Traffic Safety Administration

| FOR AGENCY USE ONLY  100184 | |
| --- | --- |
| Date Received | Repository ☐ |
| 15-SEP-2003 | Reference No. 10034118 |

### OWNER INFORMATION (Type or Print)

| | |
| --- | --- |
| **Name** ·············· | |
| **Address** ·············· | |
| **City** AURORA | **State** IL **Zip Code** ·············· |

| Daytime Telephone Number ·············· | E-mail Address ·············· |
| --- | --- |
| Evening Telephone Number ·············· | |

Do you authorize NHTSA to provide a copy of this report to the manufacturer of your vehicle?  ☐ YES  ☒ NO
In the absence of an authorization, NHTSA WILL NOT provide your name or address to the vehicle manufacturer.

Signature of Owner _____  Date  /  /

### VEHICLE INFORMATION

| 17 digit Vehicle Identification Number Located at bottom of windshield on driver's side 1B4HS28N2YF134555 | Make DODGE | Model DURANGO | Model Year 2000 |
| --- | --- | --- | --- |

| Date Purchased 01-NOV-99 | Dealer's Name and Telephone Number WESTSIDE DODGE | | Engine: No: Cylinders  8 | Fuel Type: Gas |
| --- | --- | --- | --- | --- |
| Original Owner ☒ | Dealer's City NORTH AURORA | State IL  Zip Code | | |

| Transmission Type AUTOMATIC | ☒ Antilock Brakes ☐ Cruise Control | Powertrain | Vehicle Component Code 021520 SUSPENSION:FRONT:CONTROL ARM:UPPER BALL JOINT |
| --- | --- | --- | --- |
| | | | Multiple Failure:  1 |

### FAILED COMPONENT(S)/PART(S) INFORMATION

| Incident Date(s) 14-AUG-2003 | Failure Mileage 43000 | Failure Speed 5 | |
| --- | --- | --- | --- |

### ADDITIONAL ITEMS TO BE COMPLETED WHEN REPORTING A TIRE FAILURE

| Tire Make | Tire Model (Name or Number) | Tire Size (Example P215/65R15) |
| --- | --- | --- |
| DOT No. (Example: DOTMAL9ABC036) | ☐ Original Equipment ☐ Prior Repair | Failure Location: |
| Tire Component Code | | Tire Failure Type |

### ADDITIONAL ITEMS TO BE COMPLETED WHEN REPORTING A CHILD SEAT FAILURE

| Make: | Date Manufactured: | Model No./Name: |
| --- | --- | --- |
| Seat Type: | Installation System: | |
| Child Seat Component Code: | Failed Part: | |

### APPLICABLE INCIDENT INFORMATION
*(Please describe in detail the incident(s), Failure(s), Crash(es), and injury(ies).)*

| Crash ☐ Yes ☒ No | Fire ☐ Yes ☒ No | Number of Persons Injured 0 | Number of Deaths 0 | Reported to Police N |
| --- | --- | --- | --- | --- |

**Narrative Description of Incident(S), Crash(es), and Injury(ies).**
**Please describe (1) events leading up to the failure, (2) failure and its consequences, and (3) what was done to correct the failure;**
**i.e, parts repaired or replaced (and if old part is available).**

PE 03-032 FRONT SUSPENSION UPPER BALL JOINT: VEHICLE EXPERIENCED COMPLETE UPPER BALL JOINT FAILURE, WHICH CAUSED WHEEL SEPARATION, ALMOST RESULTING IN LOSS OF CONTROL. *AK  THE STEERING BECAME LOSE AND THE TIRE FELL FLAT TO THE GROUND.  *PH *JB

Include, if available: Police/Fire Department Report, Photos, and Repair Invoice.         ATTACH ADDITIONAL SHEETS IF NECESSARY

**The Privacy Act of 1974-Public Law 93-579 This information is requested pursuant to authority vested in the National Highway Traffic Safety Act and subsequent amendments. You are under no obligation to respond this questionnaire. Your response may be used to assist the NHTSA in determining whether a Manufacturer should take appropriate action to correct a safety defect. If the NHTSA proceeds with administrative enforcement or litigation against a manufacturer, your response, or a statistical summary thereof, may be used in support of the agency's action.**

## DOT Auto Safety Hotline
# Vehicle Owner's Questionnaire
### To Report Vehicle Safety Defects
### 1-888-DASH-2-DOT
### (1-888-327-4236)
### INTERNET:www.nhtsa.dot.gov/hotline

**U.S. Department of Transportation**

**National Highway Traffic Safety Administration**

| FOR AGENCY USE ONLY | 100145 |
|---|---|
| Date Received | Repository ☐ |
| 23-JUL-2003 | Reference No. 10029971 |

## OWNER INFORMATION (Type or Print)

| | |
|---|---|
| **Name** ············· | Daytime Telephone Number ············· |
| **Address** ············· | E-mail Address ············· |
| **City** CHARLEROI **State** PA **Zip Code** ············· | Evening Telephone Number ············· |

*Do you authorize NHTSA to provide a copy of this report to the manufacturer of your vehicle?* ☒ YES ☐ NO
*In the absence of an authorization, NHTSA WILL NOT provide your name or address to the vehicle manufacturer.*
Signature of Owner _____ Date / /

## VEHICLE INFORMATION

| 17 digit Vehicle Identification Number Located at bottom of windshield on driver's side | Make DODGE | Model DURANGO | Model Year 2000 |
|---|---|---|---|

| Date Purchased | Dealer's Name and Telephone Number | Engine: No: Cylinders | Fuel Type: |
|---|---|---|---|
| Original Owner ☐ | Dealer's City | State | Zip Code |

| Transmission Type | ☐ Antilock Brakes ☐ Cruise Control | Powertrain | Vehicle Component Code 021520 SUSPENSION:FRONT:CONTROL ARM:UPPER BALL JOINT |
|---|---|---|---|
| | | | Multiple Failure: |

## FAILED COMPONENT(S)/PART(S) INFORMATION

| Incident Date(s) 22-JUL-2003 | Failure Mileage | Failure Speed |
|---|---|---|

## ADDITIONAL ITEMS TO BE COMPLETED WHEN REPORTING A TIRE FAILURE

| Tire Make | Tire Model (Name or Number) | Tire Size (Example P215/65R15) |
|---|---|---|
| DOT No. (Example: DOTMAL9ABC036) | ☐ Original Equipment ☐ Prior Repair | Failure Location: |
| Tire Component Code | | Tire Failure Type |

## ADDITIONAL ITEMS TO BE COMPLETED WHEN REPORTING A CHILD SEAT FAILURE

| Make: | Date Manufactured: | Model No./Name: |
|---|---|---|
| Seat Type: | Installation System: | |
| Child Seat Component Code: | Failed Part: | |

## APPLICABLE INCIDENT INFORMATION
*(Please describe in detail the Incident(s), Failure(s), Crash(es), and injury(ies).)*

| Crash ☐ Yes ☒ No | Fire ☐ Yes ☒ No | Number of Persons Injured | Number of Deaths | Reported to Police N |
|---|---|---|---|---|

**Narrative Description of Incident(S), Crash(es), and Injury(ies).**
**Please describe (1) events leading up to the failure, (2) failure and its consequences, and (3) what was done to correct the failure;**
**i.e, parts repaired or replaced (and if old part is available).**

CONSUMER STATES TOP BALL JOINTS SEPARATED AND WHEEL FELL OFF WHILE DRIVING. DEALER NOTIFIED. *AK

Include, if available: Police/Fire Department Report, Photos, and Repair Invoice. ATTACH ADDITIONAL SHEETS IF NECESSARY

The Privacy Act of 1974-Public Law 93-579 This information is requested pursuant to authority vested in the National Highway Traffic Safety Act and subsequent amendments. You are under no obligation to respond this questionnaire. Your response may be used to assist the NHTSA in determining whether a Manufacturer should take appropriate action to correct a safety defect. If the NHTSA proceeds with administrative enforcement or litigation against a manufacturer, your response, or a statistical summary thereof, may be used in support of the agency's action.

Form Approved OMB No 2127-0001

## Auto Safety Hotline
# Vehicle Owner's Questionnaire
**NATIONWIDE 1-800-424-9393**
**DC METRO AREA (202) 366-0123**
**INTERNET: http://www.nhtsa.dot.gov**

U.S. Department
of Transportation
**National Highway
Traffic Safety
Administration**

| FOR AGENCY USE ONLY | 335 |
|---|---|
| Date Received | Dd_or _____ |
| | rt_dt _____ |
| **15-JUN-2001** | bd_rt _____ |
| | rtp_ltr _____ |
| | **Reference No.** |
| | **890459** |

*Do you authorize NHTSA to provide a copy of report to the manufacturer of your vehicle?* ☐ YES ☐ NO
*In the absence of an authorization, NHTSA WILL NOT provide your name and address to the vehicle manufacturer.*

Signature of Owner _____ Date ___/___/___

## VEHICLE INFORMATION

| Vehicle Ident. No. (VIN.) | Vehicle Make | Vehicle Model | Vehicle Year | Current Odometer Reading |
|---|---|---|---|---|
| | DODGE TRUCK | DURANGO | 2001 | |

| Purchase Date | Dealer's Name _____ | Engine Size (CID/CC/L) | ☐ Turbo |
|---|---|---|---|
| ☐ New ☒ Used | City _____ State ____ Zip Code ____ | No Cylinders _____ | ☐ Diesel ☐ Gas ☐ Fuel Injection |

| Transmission Type | Antilock Brakes | Restraint System | Cruise Control | Drive Train | Vehicle Type | Body Style |
|---|---|---|---|---|---|---|
| ☐ Manual ☐ Automatic | ☐ Yes ☒ No | ☐ 3-Point Belt  ☐ Motorbelt<br>☐ Driverside Airbag  ☐ 2-Point Belt<br>☐ Passengerside Airbag | ☐ Yes ☒ No | ☐ Front ☐ Rear ☐ 4-Wheel | ☐ Car ☐ Sport Utility<br>☐ Van ☐ Truck<br>☐ Minivan ☐ Motorcycle<br>☐ Other_____ | ☐ 2-Door ☐ 4-Door<br>☐ Stationwagon<br>☐ Pick Up Truck<br>☒ Other_____ |

## FAILED COMPONENT(S)/PART(S) INFORMATION

| Component<br>02600000 | Part Name(s)<br>WHEELS | Location<br>☐ Left ☐ Right<br>☐ Front ☐ Rear | Failed Parts<br>☐ Original<br>☐ Replacement |
|---|---|---|---|
| No of Failure | Date(s) of Failure(s)  10-JUN-2001<br>Mileage at Failure(s) _____ | Failed Part(s)<br>☐ Yes ☐ No | NHTSA Previously<br>☐ Yes ☐ No |

## APPLICATION INCIDENT INFORMATION
(Please describe in detail the incident(s), failure(s), crash(es), and injury(ies) on the back of this form)

| Crash | Fire | Number of Persons Injured | Number of Fatalities | Estimated Property Damage | Reported to Police |
|---|---|---|---|---|---|
| ☐ Yes ☒ No | ☐ Yes ☒ No | | | | ☐ Yes ☒ No |

## NARRATIVE DESCRIPTION OF FAILURE(S), INCIDENT(S), INJURY(IES)

WHILE TURNING HEARD A POPPING NOISE AND VEHICLE STARTED TO GO TO LEFT. THEN, WHOLE FRONT DRIVER'S SIDE WHEEL CAME OFF. CONSUMER HAS YET TO CONTACT DEALER. PLEASE PROVIDE FURTHER INFORMATION. *AK

The Privacy Act of 1974-Public Law 93-579 This information is requested pursuant to authority vested in the National Highway Traffic Safety Act and subsequent amendments. You are under no obligation to respond this questionnaire. Your response may be used to assist the NHTSA in determining whether a manufacturer should take appropriate action to correct a safety defect. If the NHTSA proceeds with administrative enforcement or litigation against a manufacturer, your response, or a statistical summary thereof, may be used in support of the agency's action.

**U.S. Department of Transportation**

**National Highway Traffic Safety Administration**

# Vehicle Owner's Questionnaire
## To Report Vehicle Safety Defects
### 1-888-DASH-2-DOT
### (1-888-327-4236)
### INTERNET:www.nhtsa.dot.gov/hotline

| FOR AGENCY USE ONLY    335 | |
|---|---|
| Date Received | Repository ☐ |
| 12-NOV-2003 | Reference No. 10030098 |

## OWNER INFORMATION (Type or Print)

| | | | |
|---|---|---|---|
| **Name** ·············· | | Daytime Telephone Number ·············· | E-mail Address ·············· |
| **Address** ·············· | | | |
| **City** CORONA | **State** CA | **Zip Code** ·············· | Evening Telephone Number ·············· |

*Do you authorize NHTSA to provide a copy of this report to the manufacturer of your vehicle?* ☐ YES ☒ NO
*In the absence of an authorization, NHTSA WILL NOT provide your name or address to the vehicle manufacturer.*
Signature of Owner _____ Date __/__/__

## VEHICLE INFORMATION

| 17 digit Vehicle Identification Number Located at bottom of windshield on driver's side | Make | Model | Model Year |
|---|---|---|---|
| 1B4HR28YXYF112941 | DODGE | DURANGO | 2000 |

| Date Purchased | Dealer's Name and Telephone Number | Engine: | Fuel Type: |
|---|---|---|---|
| 01-SEP-99 | UNION DODGE | No: Cylinders 8 | Gas |

| Original Owner ☒ | Dealer's City GARDEN GROVE | State CA | Zip Code 92840 | |
|---|---|---|---|---|

| Transmission Type AUTOMATIC | ☒ Antilock Brakes  Powertrain | Vehicle Component Code 106000 POWER TRAIN:AXLE ASSEMBLY |
|---|---|---|
| | ☐ Cruise Control | Multiple Failure:  1 |

## FAILED COMPONENT(S)/PART(S) INFORMATION

| Incident Date(s) | Failure Mileage | Failure Speed | |
|---|---|---|---|
| 18-JUL-2003 | 33338 | 20 | |

## ADDITIONAL ITEMS TO BE COMPLETED WHEN REPORTING A TIRE FAILURE

| Tire Make | Tire Model (Name or Number) | Tire Size (Example P215/65R15) |
|---|---|---|
| DOT No. (Example: DOTMAL9ABC036) | ☐ Original Equipment  ☐ Prior Repair | Failure Location: |
| Tire Component Code | | Tire Failure Type |

## ADDITIONAL ITEMS TO BE COMPLETED WHEN REPORTING A CHILD SEAT FAILURE

| Make: | Date Manufactured: | Model No./Name: |
|---|---|---|
| Seat Type: | Installation System: | |
| Child Seat Component Code: | Failed Part: | |

## APPLICABLE INCIDENT INFORMATION
*(Please describe in detail the incident(s), Failure(s), Crash(es), and injury(ies).)*

| Crash ☐ Yes ☒ No | Fire ☐ Yes ☒ No | Number of Persons Injured | Number of Deaths | Reported to Police N |
|---|---|---|---|---|

**Narrative Description of Incident(S), Crash(es), and Injury(ies).**
**Please describe (1) events leading up to the failure, (2) failure and its consequences, and (3) what was done to correct the failure; i.e, parts repaired or replaced (and if old part is available).**

WHILE PULLING INTO AN INTERSECTION VEHICLE MADE A LOUD CRUNCHING SOUND. CONSUMER PULLED OVER, AND NOTICED THAT DRIVERS SIDE FRONT WHEEL HAD ALMOST COME OFF. *AK     THE LEFT FRONT AXLE BROKE. MECHANIC RECOMMENDED REPLACING THE HUB AND BEARING, STEERING KNUCKLE, ABS SENSOR, FRONT BRAKE AND CALIPER PINS. CONSUMER DECLINED AND NOTED THAT THE REPAIR INCLUDED KEEPING THE FAILED PARTS.     *PH  *NLM

Include, if available: Police/Fire Department Report, Photos, and Repair Invoice.     ATTACH ADDITIONAL SHEETS IF NECESSARY

The Privacy Act of 1974-Public Law 93-579 This information is requested pursuant to authority vested in the National Highway Traffic Safety Act and subsequent amendments. You are under no obligation to respond this questionnaire. Your response may be used to assist the NHTSA in determining whether a Manufacturer should take appropriate action to correct a safety defect. If the NHTSA proceeds with administrative enforcement or litigation against a manufacturer, your response, or a statistical summary thereof, may be used in support of the agency's action.

## DOT Auto Safety Hotline
## Vehicle Owner's Questionnaire
### To Report Vehicle Safety Defects
**1-888-DASH-2-DOT**
**(1-888-327-4236)**
INTERNET:www.nhtsa.dot.gov/hotline

U.S. Department
of Transportation

**National Highway
Traffic Safety
Administration**

| FOR AGENCY USE ONLY | 100148 |
| --- | --- |

| Date Received | Repository ☐ |
| --- | --- |
| 06-OCT-2003 | Reference No.<br>10041324 |

### OWNER INFORMATION (Type or Print)

| Name | ............... |
| --- | --- |
| Address | ............... |

| City | ALPHARETTA | State | GA | Zip Code | ............... |
| --- | --- | --- | --- | --- | --- |

| Daytime Telephone Number | E-mail Address |
| --- | --- |
| Evening Telephone Number | |

Do you authorize NHTSA to provide a copy of this report to the manufacturer of your vehicle? ☒ YES ☐ NO
In the absence of an authorization, NHTSA WILL NOT provide your name or address to the vehicle manufacturer.

Signature of Owner _____  Date ___/___/___

### VEHICLE INFORMATION

| 17 digit Vehicle Identification Number Located at bottom of windshield on driver's side | Make | Model | Model Year |
| --- | --- | --- | --- |
| 1B4HS28N5YF137482 | DODGE | DURANGO | 2000 |

| Date Purchased<br>01-NOV-00 | Dealer's Name and Telephone Number<br>PALMER DODGE | Engine:<br>No: Cylinders 6 | Fuel Type:<br>Gas |
| --- | --- | --- | --- |
| Original Owner<br>☒ | Dealer's City<br>ROSWELL | State<br>GA | Zip Code | | |

| Transmission Type<br>AUTOMATIC | ☐ Antilock Brakes<br>☒ Cruise Control | Powertrain<br>4 WHEEL DRIVE | Vehicle Component Code<br>020000 SUSPENSION<br><br>Multiple Failure: 1 |
| --- | --- | --- | --- |

### FAILED COMPONENT(S)/PART(S) INFORMATION

| Incident Date(s)<br>03-OCT-2003 | Failure Mileage<br>56000 | Failure Speed<br>10 | |
| --- | --- | --- | --- |

### ADDITIONAL ITEMS TO BE COMPLETED WHEN REPORTING A TIRE FAILURE

| Tire Make | Tire Model (Name or Number) | Tire Size (Example P215/65R15) |
| --- | --- | --- |
| DOT No. (Example: DOTMAL9ABC036) | ☐ Original Equipment<br>☐ Prior Repair | Failure Location: |
| Tire Component Code | | Tire Failure Type |

### ADDITIONAL ITEMS TO BE COMPLETED WHEN REPORTING A CHILD SEAT FAILURE

| Make: | Date Manufactured: | Model No./Name: |
| --- | --- | --- |
| Seat Type: | Installation System: | |
| Child Seat Component Code: | Failed Part: | |

### APPLICABLE INCIDENT INFORMATION
*(Please describe in detail the incident(s), Failure(s), Crash(es), and Injury(ies).)*

| Crash<br>☐ Yes ☒ No | Fire<br>☐ Yes ☒ No | Number of Persons Injured<br>0 | Number of Deaths<br>0 | Reported to Police<br>N |
| --- | --- | --- | --- | --- |

**Narrative Description of Incident(S), Crash(es), and Injury(ies).**
**Please describe (1) events leading up to the failure, (2) failure and its consequences, and (3) what was done to correct the failure;**
**i.e, parts repaired or replaced (and if old part is available).**

THE BALL JOINT HOLDING WHEEL ON VERTICAL AXLE FAILED CAUSING WHEEL TO TILT 45 DEGREES FROM A STRAIGHT ANGLE. LUCKILY THIS HAPPENED WHEN MY WIFE WAS LEAVING THE GROCERY PARKING LOT AND WAS NOT ON MAIN ROAD DRIVING HIGHER SPEED, OTHERWISE COULD HAVE BEEN FATAL. *JB

Include, if available: Police/Fire Department Report, Photos, and Repair Invoice.        ATTACH ADDITIONAL SHEETS IF NECESSARY

**The Privacy Act of 1974-Public Law 93-579 This information is requested pursuant to authority vested in the National Highway Traffic Safety Act and subsequent amendments. You are under no obligation to respond this questionnaire. Your response may be used to assist the NHTSA in determining whether a Manufacturer should take appropriate action to correct a safety defect. If the NHTSA proceeds with administrative enforcement or litigation against a manufacturer, your response, or a statistical summary thereof, may be used in support of the agency's action.**

# DOT Auto Safety Hotline
## Vehicle Owner's Questionnaire
### To Report Vehicle Safety Defects
### 1-888-DASH-2-DOT
### (1-888-327-4236)
### INTERNET:www.nhtsa.dot.gov/hotline

U.S. Department of Transportation

National Highway Traffic Safety Administration

| FOR AGENCY USE ONLY | 100184 |
|---|---|

| Date Received | Repository ☐ |
|---|---|
| 12-SEP-2003 | Reference No. 10034152 |

## OWNER INFORMATION (Type or Print)

| Name ············· | Daytime Telephone Number ············· | E-mail Address ············· |
|---|---|---|
| Address ············· | | |

| City KINGMAN | State AZ | Zip Code ············· | Evening Telephone Number ············· |
|---|---|---|---|

*Do you authorize NHTSA to provide a copy of this report to the manufacturer of your vehicle?* ☐ YES  [X] NO
*In the absence of an authorization, NHTSA WILL NOT provide your name or address to the vehicle manufacturer.*

Signature of Owner _____ Date ___/___/___

## VEHICLE INFORMATION

| 17 digit Vehicle Identification Number Located at bottom of windshield on driver's side | Make DODGE | Model DURANGO | Model Year 2000 |
|---|---|---|---|

| Date Purchased | Dealer's Name and Telephone Number UNKNOWN | | Engine: No: Cylinders  8 | Fuel Type: |
|---|---|---|---|---|
| Original Owner [X] | Dealer's City | State | Zip Code | |

| Transmission Type | ☐ Antilock Brakes  ☐ Cruise Control | Powertrain | Vehicle Component Code 021520 SUSPENSION:FRONT:CONTROL ARM:UPPER BALL JOINT |
|---|---|---|---|
| | | | Multiple Failure:  1 |

## FAILED COMPONENT(S)/PART(S) INFORMATION

| Incident Date(s) 15-JUL-2003 | Failure Mileage 99000 | Failure Speed | |
|---|---|---|---|

## ADDITIONAL ITEMS TO BE COMPLETED WHEN REPORTING A TIRE FAILURE

| Tire Make | Tire Model (Name or Number) | Tire Size (Example P215/65R15) |
|---|---|---|

| DOT No. (Example: DOTMAL9ABC036) | ☐ Original Equipment  ☐ Prior Repair | Failure Location: |
|---|---|---|

| Tire Component Code | Tire Failure Type |
|---|---|

## ADDITIONAL ITEMS TO BE COMPLETED WHEN REPORTING A CHILD SEAT FAILURE

| Make: | Date Manufactured: | Model No./Name: |
|---|---|---|
| Seat Type: | Installation System: | |
| Child Seat Component Code: | Failed Part: | |

## APPLICABLE INCIDENT INFORMATION
*(Please describe in detail the incident(s), Failure(s), Crash(es), and injury(ies).)*

| Crash ☐ Yes [X] No | Fire ☐ Yes [X] No | Number of Persons Injured 0 | Number of Deaths 0 | Reported to Police N |
|---|---|---|---|---|

Narrative Description of Incident(S), Crash(es), and Injury(ies).
Please describe (1) events leading up to the failure, (2) failure and its consequences, and (3) what was done to correct the failure; i.e, parts repaired or replaced (and if old part is available).

PE 03-032, FRONT SUSPENSION UPPER BALL JOINT FAILURE:  THE UPPER BALL JOINTS PREMATURELY WORE OUT AND THE WHEEL SEPARATED. *AK  THE FRONT END VIBRATED WHILE DRIVING.  BOTH UPPER AND LOWER BALL JOINTS WERE DIAGNOSED AS BAD.  *PH *JB

Include, if available: Police/Fire Department Report, Photos, and Repair Invoice.          ATTACH ADDITIONAL SHEETS IF NECESSARY

The Privacy Act of 1974-Public Law 93-579 This information is requested pursuant to authority vested in the National Highway Traffic Safety Act and subsequent amendments. You are under no obligation to respond this questionnaire. Your response may be used to assist the NHTSA in determining whether a manufacturer should take appropriate action to correct a safety defect. If the NHTSA proceeds with administrative enforcement or litigation against a manufacturer, your response, or a statistical summary thereof, may be used in support of the agency's action.

Case 1:04-cv-00387-WO-PTS   Document 1   Filed 05/03/04   Page 84 of 110

| | DOT Auto Safety Hotline | FOR AGENCY USE ONLY 1368 | |
|---|---|---|---|

**U.S. Department of Transportation**

**National Highway Traffic Safety Administration**

**Vehicle Owner's Questionnaire**
To Report Vehicle Safety Defects
1-888-DASH-2-DOT
(1-888-327-4236)
INTERNET:www.nhtsa.dot.gov/hotline

| Date Received | Repository ☐ |
|---|---|
| 2003 SEP -4 AM 9: 42  23-JUL-2003 | |
| | Reference No. 10029957 |

## OWNER INFORMATION (Type or Print)

| Name | | Daytime Telephone Number | E-mail Address |
|---|---|---|---|
| Address | | Evening Telephone Number | |
| City  BUFFALO | State  NY | Zip Code | |

Do you authorize NHTSA to provide a copy of this report to the manufacturer of your vehicle?   ☐ YES   ☒ NO
In the absence of an authorization, NHTSA WILL NOT provide your name or address to the vehicle manufacturer.

Signature of Owner _____   Date  /  /

## VEHICLE INFORMATION

| 17 digit Vehicle Identification Number Located at bottom of windshield on driver's side | Make  DODGE | Model  DURANGO | Model Year  2002 |
|---|---|---|---|

| Date Purchased | Dealer's Name and Telephone Number | | Engine:  No: Cylinders | Fuel Type: |
|---|---|---|---|---|
| Original Owner  ☒ | Dealer's City | State | Zip Code | |

| Transmission Type | ☒ Antilock Brakes  ☐ Cruise Control | Powertrain | Vehicle Component Code  021540 SUSPENSION:FRONT:CONTROL ARM:LOWER BALL JOINT |
|---|---|---|---|
| | | | Multiple Failure: 1 |

## FAILED COMPONENT(S)/PART(S) INFORMATION

| Incident Date(s)  17-JUL-2003 | Failure Mileage | Failure Speed | |
|---|---|---|---|

## ADDITIONAL ITEMS TO BE COMPLETED WHEN REPORTING A TIRE FAILURE

| Tire Make | Tire Model (Name or Number) | Tire Size (Example P215/65R15) |
|---|---|---|
| DOT No. (Example: DOTMAL9ABC036) | ☐ Original Equipment  ☐ Prior Repair | Failure Location: |
| Tire Component Code | | Tire Failure Type |

## ADDITIONAL ITEMS TO BE COMPLETED WHEN REPORTING A CHILD SEAT FAILURE

| Make: | Date Manufactured: | Model No. /Name: |
|---|---|---|
| Seat Type: | Installation System: | |
| Child Seat Component Code: | Failed Part: | |

## APPLICABLE INCIDENT INFORMATION
(Please describe in detail the Incident(s), Failure(s), Crash(es), and Injury(ies).)

| Crash  ☐ Yes ☒ No | Fire  ☐ Yes ☒ No | Number of Persons Injured | Number of Deaths | Reported to Police  N |
|---|---|---|---|---|

Narrative Description of Incident(s), Crash(es), and Injury(ies).
Please describe (1) events leading up to the failure, (2) failure and its consequences, and (3) what was done to correct the failure;
i.e. parts repaired or replaced (and if old part is available).

CONSUMER STATED THAT WHILE DRIVING AND WITHOUT WARNING THE BALL JOINTS WERE WEARING OUT.  DEALER NOTIFIED.  *AK

Include, if available: Police/Fire Department Report, Photos, and Repair Invoice.   ATTACH ADDITIONAL SHEETS IF NECESSARY

The Privacy Act of 1974-Public Law 93-579 This information is requested pursuant to authority vested in the National Highway Traffic Safety Act and subsequent amendments. You are under no obligation to respond to this questionnaire. Your response may be used to assist the NHTSA in determining whether a Manufacturer should take appropriate action to correct a safety defect. If the NHTSA proceeds with an administrative enforcement or litigation against a manufacturer, your response, or a statistical summary thereof, may be used in support of the Agency's action.

**Narrative Description of Incident(s), Failure(s), Crash(es), and Injury(ies)**

On 11-26-02 I was driving on the NYS Thruway from Dunkirk NY to Buffalo NY when I lost control of my truck. As I pulled over to side of the road there was a fire under my truck. The truck was towed to the nearest Dodge Dealership. It was later transfered to the dealership it was bought. No one would tell me what had happen but they were going to fix it. I called Daymler Chrysler headquaters but they sent an investigator. They ruled the fire was on sustained and would fix everything. When I asked for a copy of this report I was told I could not get it without involving a lawyer.

ATTACH ADDITIONAL SHEETS IF NECESSARY

U.S. Department
of Transportation

National Highway
Traffic Safety
Administration

400 Seventh St., S.W.
Washington, D.C. 20590

Official Business
Penalty for Private Use $300

BUFFALO NY
PM
01 AUG
20__

NO POSTAGE
NECESSARY
IF MAILED
IN THE
UNITED STATES

**BUSINESS REPLY MAIL**
FIRST CLASS    PERMIT NO 73175    WASHINGTON, D.C.

POSTAGE WILL BE PAID BY NATL. HWY. TRAFFIC SAFETY ADMIN.

U.S. Department of Transportation
National Highway Traffic Safety Administration
**Office of Defects Investigation, NVS-216**
400 7th Street, SW
Washington, DC 20590



**VEHICLE OWNER'S QUESTIONNAIRE**

DOT AUTO SAFETY HOTLINE

TO REPORT VEHICLE SAFETY DEFECTS
COMPLETE THIS FORM
OR

**DASH2DOT**
and dial toll free at

**1-888-DASH-2-DOT**
1-888-327-4236

DOT Auto Safety Hotline
(DASH) 2 DOT

U.S. Department of Transportation
National Highway Traffic Safety
Administration

Form Approved: O.M.B. No. 2127-0002

**QC'd** (stamped)

**VEHICLE OWNER'S QUESTIONNAIRE**

AUTO SAFETY HOTLINE
NATIONWIDE 1-800-424-9393
DC METRO AREA 202-366-0123

| FOR AGENCY USE ONLY | |
|---|---|
| DATE RECEIVED **RECEIVED** 98 AUG 25 PM 1:01 OFFICE DEFECTS INVESTIGATION | od.o? ___ rt.dt ___ pd.rt ___ up.h? ___ REFERENCE NO. **539331** |

**OWNER INFORMATION (TYPE OR PRINT)**

*COPY* (stamped)

NAME and ADDRESS

[redacted]

Do you authorize NHTSA to provide a copy of this report to the manufacturer of your vehicle? YES [X] NO [ ]
In the absence of an authorization, NHTSA WILL NOT provide your name or address to the vehicle manufacturer.

DAY TIME TELEPHONE NO. [redacted]

| SIGNATURE OF OWNER [redacted] | DATE 8-17-98 |
|---|---|

**VEHICLE INFORMATION**

| VEHICLE IDENTIFICATION NO.* 1 B 4 H S 2 8 4 5 W F 1 3 2 0 8 0 | VEHICLE MAKE DODGE | VEHICLE MODEL DURANGO | MODEL YEAR 98 |
|---|---|---|---|

*LOCATED AT BOTTOM OF WINDSHIELD ON DRIVER'S SIDE

| CURRENT ODOMETER READING | DATE PURCHASED 1/31/98 [ ] NEW [ ] USED | DEALER'S NAME, CITY & STATE DEPENDABLE DODGE CANOGA PARK, CA | ENGINE SIZE (CID/CC/L) 5.2 NO. CYLINDERS 8 | [ ] TURBO [ ] DIESEL [X] GAS [X] FUEL INJECTN |
|---|---|---|---|---|

| TRANSMISSION TYPE | ANTILOCK BRAKES | RESTRAINT SYSTEM | CRUISE CONTROL | DRIVETRAIN | BODY STYLE |
|---|---|---|---|---|---|
| [ ] MANUAL [X] AUTOMATIC | [X] YES [ ] NO | [X] DRIVERSIDE AIRBAG [ ] MOTORBELT [X] PASSENGERSIDE AIRBAG [X] 3-POINT BELT [ ] 2-POINT BELT | [X] YES [ ] NO | [ ] FRONT [ ] REAR [X] 4-WHEEL | STAWAG X HATCH BK ___ 4 DR VAN ___ 2 DR PK UP TRK ___ OTHER ___ SUV |

**FAILED COMPONENT(S)/PART(S) INFORMATION (REPORT TIRE INFORMATION ON BACK)**

| COMPONENT | PART NAME(S) FRONT DIFFERENTIAL | LOCATION [ ] LEFT [X] FRONT [ ] RIGHT [ ] REAR | FAILED PART(S) [X] ORIGINAL [ ] REPLACEMENT |
|---|---|---|---|

| NO. OF FAILURES 1 | DATE(S) OF FAILURE(S) 8/7/98 MILEAGE AT FAILURE(S) 7,000 VEHICLE SPEED AT FAILURE(S) 45-50 MPH | MANUFACTURER CONTACTED [X] YES [ ] NO | NHTSA PREVIOUSLY CONTACTED [ ] YES [X] NO |
|---|---|---|---|

**APPLICABLE ACCIDENT INFORMATION**

| ACCIDENT [ ] YES [ ] NO | FIRE [ ] YES [ ] NO | NUMBER PERSONS INJURED | NUMBER OF FATALITIES | PROPERTY DAMAGE ESTS | POLICE REPORTED [ ] YES [ ] NO |
|---|---|---|---|---|---|

**NARRATIVE DESCRIPTION OF FAILURE(S), ACCIDENT(S), INJURY(IES)**

HEARD NOISE FROM UNDER CAR AT 65 MPH, LET OFF ACCELERATOR STARTED TO PULL OVER TO SIDE OF FREEWAY WHEN FRONT WHEELS LOCKED-UP. WITH HIGH CENTER OF GRAVITY OF 4 W.D. VEHICLE IT FELT VERY UNSAFE. DEALER HAS HAD VEHICLE 11 DAYS -SAYS FRONT DIFF. IS BEING REPLACED.

CONTINUE ON BACK IF NEEDED

The Privacy Act of 1974
Public Law 93-579
This information is requested pursuant to authority vested in the National Highway Traffic Safety Act and subsequent amendments. You are under no obligation to respond to this questionnaire. Your response may be used to assist the NHTSA in determining whether a manufacturer should take appropriate action to correct a safety defect. If the NHTSA proceeds with administrative enforcement or litigation against a manufacturer, your response, or a statistical summary thereof, may be used in support of the agency's action

HS Form 350 (Rev. 5-92)

**U.S. Department of Transportation**
**National Highway Traffic Safety Administration**

## DOT Auto Safety Hotline
### Vehicle Owner's Questionnaire
To Report Vehicle Safety Defects
1-888-DASH-2-DOT
(1-888-327-4236)
INTERNET www.nhtsa.dot.gov/hotline

**FOR AGENCY USE ONLY** 1367

| Date Received | Repository ☐ |
|---|---|
| 2003 AUG 22 AM 9:38 22-JUL-2003 | Reference No. 10029818 |

### OWNER INFORMATION (Type or Print)

| Name: ▮ | Daytime Telephone Number | E-mail Address |
|---|---|---|
| Address: ▮ | | |
| City: CAPITOL HEIGHTS | State: MD | Zip Code: ▮ | Evening Telephone Number ▮ | |

Do you authorize NHTSA ...ert to the manufacturer of your vehicle? ☐ YES ☒ NO
In the absence of an ...  provide your name or address to the vehicle manufacturer.
Signature of Owner ▮    Date M 28 #3    7-28-03

### VEHICLE INFORMATION

| 17 digit Vehicle Identification Number Located at bottom of windshield on driver's side | Make DODGE | Model DURANGO | Model Year 1998 |
|---|---|---|---|
| 1B4HS28Y3WF203065 | | | |

| Date Purchased 6-12-98 | Dealer's Name and Telephone Number 1051 E. BROAD ST KOONS DODGE (703)241-▮▮▮ | Engine: No: Cylinders | Fuel Type: |
|---|---|---|---|
| Original Owner ☒ | Dealer's City FALLS CHURCH | State VA | Zip Code 22046 | 5.2L M/T V8 | UNLEADED |

| Transmission Type ☒ Antilock Brakes ☒ Cruise Control | Powertrain | Vehicle Component Code 021520 SUSPENSION:FRONT:CONTROL ARM:UPPER BALL JOINT |
|---|---|---|
| Automatic | | Multiple Failure: 1 |

### FAILED COMPONENT(S)/PART(S) INFORMATION

| Incident Date(s) | Failure Mileage 83000 | Failure Speed |
|---|---|---|

### ADDITIONAL ITEMS TO BE COMPLETED WHEN REPORTING A TIRE FAILURE

| Tire Make | Tire Model (Name or Number) | Tire Size (Example P215/65R15) |
|---|---|---|

| DOT No. (Example: DOTHAL9ABC036) | ☐ Original Equipment ☐ Prior Repair | Failure Location: |
|---|---|---|

| Tire Component Code | | Tire Failure Type |
|---|---|---|

### ADDITIONAL ITEMS TO BE COMPLETED WHEN REPORTING A CHILD SEAT FAILURE

| Make: | Date Manufactured: | Model No./Name: |
|---|---|---|
| Seat Type: | Installation System: | |
| Child Seat Component Code: | Failed Part: | |

### APPLICABLE INCIDENT INFORMATION
(Please describe in detail the incident(s) Failure(s) Crash(es) and Injuries.)

| Crash ☐ Yes ☒ No | Fire ☐ Yes ☒ No | Number of Persons Injured | Number of Deaths | Reported to Police N |
|---|---|---|---|---|

Narrative Description of Incident(s), Crash(es), and Injury(ies).
Please describe (1) events leading up to the failure, (2) failure and its consequences, and (3) what was done to correct the failure; i.e., parts repaired or replaced (and if old part is available).

WHILE DRIVING VEHICLE SUDDENLY LOST STEERING AND CONSUMER LOST CONTROL OF VEHICLE. THIS WAS CAUSED BY UPPER/LOWER BALL JOINT FAILURE. *AK

Include, if available: Police/Fire Department Report, Photos, and Repair Invoice.    **ATTACH ADDITIONAL SHEETS IF NECESSARY**

The Privacy Act of 1974–Public Law 93-579 This information is requested pursuant to authority vested in the National Highway Traffic Safety Act and subsequent amendments. You are under no obligation to respond to this questionnaire. Your response may be used to assist the NHTSA in determining whether a Manufacturer should take appropriate action to correct a safety defect. If the NHTSA proceeds with administrative enforcement or litigation against a manufacturer, your response, or a statistical summary thereof, may be used in support of this agency's action.

DOT Auto Safety Hotline

**Vehicle Owner's Questionnaire**
To Report Vehicle Safety Defects
1-888-DASH-2-DOT
(1-888-327-4236)
INTERNET: www.nhtsa.dot.gov/hotline

U.S. Department of Transportation

National Highway Traffic Safety Administration

| FOR AGENCY USE ONLY | 100147 |
| --- | --- |
| Date Received | 2003 DEC 24 AM 11:32 |
| 19-NOV-2003 | Repository ☐ |
| | Reference No. |
| | 10046337 |

### OWNER INFORMATION (Type or Print)

| Name | | Daytime Telephone Number | E-mail Address |
| --- | --- | --- | --- |
| Address | | | |
| City DOUGLASSVILLE | State PA  Zip Code | Evening Telephone Number | |

Do you authorize NHTSA to provide a copy of this report to the manufacturer of your vehicle?  ☐ YES  ☒ NO
In the absence of an authorization, NHTSA WILL NOT provide your name or address to the vehicle manufacturer.

Signature of Owner _____  Date ___/___/___

### VEHICLE INFORMATION

| 17 digit Vehicle Identification Number located at bottom of windshield on driver's side | Make DODGE | Model DURANGO | Model Year 1999 |
| --- | --- | --- | --- |
| 1B4HS28Y1XF619925 | | | |

| Date Purchased 15-SEP-99 1-5-99  15/99 | Dealer's Name and Telephone Number COUNTY CHRYSLER 610-562-5174 | Engine: No. Cylinders 8 | Fuel Type: 87 OCT. |
| --- | --- | --- | --- |
| Original Owner ☒ | Dealer's City HAMBURG  State PA  Zip Code | | |

| Transmission Type AUTO 4WD | ☒ Antilock Brakes  ☒ Cruise Control | Powertrain 4WD | Vehicle Component Code 021520 SUSPENSION:FRONT:CONTROL ARM:UPPER BALL JOINT |
| --- | --- | --- | --- |
| | | | Multiple Failure: 1 |

### FAILED COMPONENT(S)/PART(S) INFORMATION

| Incident Date(s) 05-NOV-2003 | Failure Mileage 42000  43236 | Failure Speed Slow when Turning | PREMATURE Failure of UPPER + Lower BALL Joints (3) TOTAL |
| --- | --- | --- | --- |

### ADDITIONAL ITEMS TO BE COMPLETED WHEN REPORTING A TIRE FAILURE

| Tire Make | Tire Model (Name or Number) | | Tire Size (Example P215/65R15) |
| --- | --- | --- | --- |
| DOT No. (Example: DOTMAL9ABC036) | ☐ Original Equipment ☐ Prior Repair | Failure Location: | |
| Tire Component Code | | | Tire Failure Type |

### ADDITIONAL ITEMS TO BE COMPLETED WHEN REPORTING A CHILD SEAT FAILURE

| Make: | Date Manufactured: | Model No./Name: |
| --- | --- | --- |
| Seat Type: | Installation System: | |
| Child Seat Component Code: | Failed Part: | |

### APPLICABLE INCIDENT INFORMATION
(Please describe in detail the Incident(s), Failure(s), Crashes, and Injuries.)

| Crash ☐ Yes ☒ No | Fire ☐ Yes ☒ No | Number of Persons Injured | Number of Deaths | Reported to Police N |
| --- | --- | --- | --- | --- |

Narrative Description of Incident(S), Crash(es), and Injury(ies).
Please describe (1) events leading up to the failure, (2) failure and its consequences, and (3) what was done to correct the failure; i.e. parts repaired or replaced (and if old part is available).

WHEN TURNING THE STEERING WHEEL TOWARDS THE RIGHT IT LOCKED UP, CAUSING THE CONSUMER TO LOSE CONTROL OF THE VEHICLE. CONSUMER TOOK VEHICLE TO THE DEALERSHIP TO BE INSPECTED. MECHANIC INFORMED CONSUMER THAT THE UPPER BALL JOINTS WERE WEARING OUT PREMATURELY. *AK

Consumer called Dealer (County Chrysler Hamburg PA..
Dealer Told Consumer (No Recall)(No Warranty)
Consumer Then Took Auto To Private Mech. (Auto Pro)
Invoice Enclosed.. To Find Premature Failure of (3)
Ball Joints..

Include, if available: Police/Fire Department Report, Photos, and Repair Invoice.

ATTACH ADDITIONAL SHEETS IF NECESSARY

The Privacy Act of 1974-Public Law 93-579 This information is requested pursuant to authority vested in the National Highway Traffic Safety Act and subsequent amendments. You are under no obligation to respond this questionnaire. Your response may be used to assist the NHTSA in determining whether a manufacturer should take appropriate action to correct a safety defect. If the NHTSA proceeds with administrative enforcement or litigation against a manufacturer, your response, or a statistical summary thereof, may be used in support of the agency's action.



## Office of Defects Investigation

# Complaints - Search Results

5 Records Displayed.

Report Date : March 21, 2004 at 04:59 PM
TYPE : VEHICLE
YEAR : All Years
MAKE : DODGE
MODEL : DURANGO

**Make : DODGE**    **Model : DURANGO**    **Year : 2003**
**Crash : No**    **Fire : No**    **Number of Injuries: 0**
**ODI ID Number : 10052058**    **Date of Failure:** November 11, 2003
**Component:** SUSPENSION:FRONT:CONTROL ARM:UPPER BALL JOINT

**Summary:**
PE 03-032/FRONT SUSPENSION/UPPER BALL JOINT FAILURE: AT ANY SPEED, CONSUMER INTERMITTENTLY HEARD A SEMI SCRAPING NOISE COMING FROM THE VEHICLE. CONSUMER'S MECHANIC WAS SCHEDULED TO GIVE THE VEHICLE A CHECK UP, BUT FELT FROM THE SYMPTOMS THAT IT WAS THE UPPER BALL JOINTS. *AK

**Make : DODGE**    **Model : DURANGO**    **Year : 2003**
**Crash : No**    **Fire : No**    **Number of Injuries: 0**
**ODI ID Number : 10061839**    **Date of Failure:** January 26, 2004
**Component:** SUSPENSION:FRONT:CONTROL ARM:UPPER BALL JOINT

**Summary:**
ON JANUARY 26, 2004, OUR 24 YEAR OLD SON, BRANT, WAS DRIVING OUR 2003 DODGE DURANGO ON I-85 NEAR COMMERCE, GEORGIA. TIME 2:00 AM. ROAD CONDITIONS COLD & RAINY. FOR UNKNOWN REASONS, THE RIGHT/FRONT TIRE AND MECHANICAL ASSEMBLY (BALL JOINTS, EVERYTHING) CAME OFF THE CAR CAUSING HIM TO SKID INTO RIGHT SIDE GUARD RAIL. NATIONWIDE INSURANCE ESTIMATED DAMAGE IN EXCESS OF $12,000. THE DURANGO IS 10 MONTHS OLD WITH APPROXIMATELY 17,000 MILES ON THE ODOMETER. WE CONTACTED CHRYSLER CORPORATION REQUESTING A BUYBACK, OR RETURN OF OUR MONEY LESS REASONABLE MILEAGE ALLOCATIONS. WE FEEL THE PRODUCT IS DEFECTIVE AND NOW SERIOUSLY DAMAGED BEYOND REASONABLE REPAIR. CHRYSLER DENIED OUR CLAIM, REFUSED TO ISSUE COPIES OF REPORTS THEY USED FOR THEIR DENIAL, SIMPLY OPTING FOR REASONS UNKNOWN TO DISCUSS THE ISSUE ANY FURTHER. *AK

**Make : DODGE**    **Model : DURANGO**    **Year : 2003**
**Crash : No**    **Fire : No**    **Number of Injuries: 2**
**ODI ID Number : 10062192**    **Date of Failure:** March 5, 2004
**Component:** SUSPENSION:FRONT:CONTROL ARM:UPPER BALL JOINT

**Summary:**
DODGE DURANGO AXLE AND TIRE FROM THE FRONT PASSENGER SIDE BROKE OFF AND CRASHED INTO THE FRONT OF MY VEHICLE. I BELIEVE THE ISSUE HAD TO DO WITH THE UPPER BALL JOINT OF THE DODGE DURANGO. *AK



**Office of Defects Investigation**

# Complaints - Search Results

171 Records Displayed.

| | | |
|---|---|---|
| Report Date : | **February 12, 2004 at 05:59 PM** | |
| TYPE : | **VEHICLE** | |
| YEAR : | **All Years** | |
| MAKE : | **DODGE** | |
| MODEL : | **DURANGO** | |

**Make :** DODGE     **Model :** DURANGO     **Year :** 1998

**Crash :** No     **Fire :** No     **Number of Injuries:** 0

**ODI ID Number :** 10036624     **Date of Failure:** August 26, 1998

**Component:** SUSPENSION:FRONT:CONTROL ARM:UPPER BALL JOINT

**Summary:**
   BALL JOINTS HAVE WORN OUT PREMATURELY. *NLM

**Make :** DODGE     **Model :** DURANGO     **Year :** 1998

**Crash :** No     **Fire :** No     **Number of Injuries:** 0

**ODI ID Number :** 10043143     **Date of Failure:** May 1, 2001

**Component:** SUSPENSION:FRONT:CONTROL ARM:UPPER BALL JOINT

**Summary:**
   I HAD TO REPLACE LEFT AND RIGHT BALL JOINTS ON A 1998 DODGE DURANGO AT APPROXIMATELY 45,000 MILES. IT COST $1400. I JUST LEARNED ABOUT THIS SITE FROM THE DURANGO OWNERS CLUB ON YAHOO GROUPS. THE BALL JOINTS SEEM TO BE A PROBLEM FOR MANY PEOPLE. *LA

**Make :** DODGE     **Model :** DURANGO     **Year :** 1998

**Crash :** No     **Fire :** No     **Number of Injuries:** 0

**ODI ID Number :** 10044907     **Date of Failure:** November 23, 2001

**Component:** SUSPENSION:FRONT:CONTROL ARM:UPPER BALL JOINT

**Summary:**
   WHILE DRIVING 30 MPH DRIVER'S SIDE TIRE COLLAPSED WITHOUT WARNING. DEALER STATED UPPER BALL JOINTS FAILED. *AK

**Make :** DODGE        **Model :** DURANGO        **Year :** 1999

**Crash :** No        **Fire :** No        **Number of Injuries:** 0

**ODI ID Number :** 10028912        **Date of Failure:** July 6, 2001

**Component:** SUSPENSION:FRONT:CONTROL ARM:UPPER BALL JOINT

**Summary:**
     RIGHT UPPER BALL JOINT AND BOTH TIE ROD ASSEMBLIES HAD EXCESSIVE PLAY. PARTS REPLACED UNDER EXTENDED WARRANTY ON 7/6/2001 AT 42,000 MILES. VEHICLE IS DRIVEN BY MATURE ADULTS AND NO OFF ROADING DONE.

---

**Make :** DODGE        **Model :** DURANGO        **Year :** 1999

**Crash :** No        **Fire :** No        **Number of Injuries:** 0

**ODI ID Number :** 10051195        **Date of Failure:** July 19, 2001

**Component:** SUSPENSION:FRONT:CONTROL ARM:UPPER BALL JOINT

**Summary:**
     THE BALL JOINTS FAILED, CAUSING ALL 4 TIRES TO WEAR IMPROPERLY, TWICE.*AK

---

**Make :** DODGE        **Model :** DURANGO        **Year :** 1999

**Crash :** No        **Fire :** No        **Number of Injuries:** 0

**ODI ID Number :** 10034044        **Date of Failure:** August 19, 2001

**Component:** SUSPENSION:FRONT:CONTROL ARM:UPPER BALL JOINT

**Summary:**
     PE 03-032. FRONT SUSPENSION UPPER BALL JOINT FAILURE. TWO SETS OF UPPER BALL JOINTS WERE REPLACED DUE TO PREMATURE WEAR.*AK WHEN THE VEHICLE WAS AT THE DEALER FOR THE FIRST REPAIR, THEY REPLACED THE LOWER CONTROL ARM AND NOT THE LOWER BALL JOINT. THIS WAS COVERED UNDER WARRANTY. AFTER THE SECOND FAILURE, BOTH UPPER AND LOWER BALL JOINTS NEEDED TO BE REPLACED. THE VEHICLE WAS THEN OUT OF WARRANTY. MEPCO REFUSED TO COVER THE WORK UNDER WARRANTY BECAUSE THEY FELT THE UPPER JOINTS WERE EXCESSIVELY WORN. THEY BELIEVE THEY WERE BAD BEFORE THE WARRANTY WAS PURCHASED. *PH *JB

---

**Make :** DODGE        **Model :** DURANGO        **Year :** 1999

**Crash :** No        **Fire :** No        **Number of Injuries:** 0

**ODI ID Number :** 10044981        **Date of Failure:** November 1, 2001

**Component:** SUSPENSION:FRONT:CONTROL ARM:UPPER BALL JOINT

**Summary:**
     WHILE DRIVING 40 MPH DOWN A HILL FRONT END MADE A GRINDING NOISE, AND IT BECAME DIFFICULT TO STOP. CONSUMER HAD FRONT BALL JOINTS REPLACED. *AK

---

**Make :** DODGE        **Model :** DURANGO        **Year :** 1999

**Crash :** No        **Fire :** No        **Number of Injuries:** 0

**ODI ID Number :** 10029191        **Date of Failure:** December 18, 2001

**Component:** SUSPENSION:FRONT:CONTROL ARM:UPPER BALL JOINT

**Summary:**
     I READ ABOUT THIS IN THE NEWSPAPER, CALLED DODGE, AND FOUND OUT TEH NTSB WAS LOOKING INTO THE PROBLEM.I PURCHASED A 1999 DODGE DURANGO IN FEBRUARY OF 2000, AND IT HAD 45,109 MILES ON IT. BEFORE I TOOK POSSESSION THEY HAD TO REPLACE THE BALL JOINTS (NOT SURE IF IT WAS UPPER/LOWER OR BOTH). THEN IN DECEMBER OF 2001 I WAS TOLD THEY WERE BAD, AND IT WASN'T UNDER WARRANTY. THEY (FOREST LAKE

**Make :** DODGE          **Model :** DURANGO          **Year :** 1999

**Crash :** No            **Fire :** No                **Number of Injuries:** 0

**ODI ID Number :** 10029203          **Date of Failure:** January 7, 2003

**Component:** SUSPENSION:FRONT:CONTROL ARM:UPPER BALL JOINT

**Summary:**
   BALL JOINTS NEEDED REPLACING AFTER 45,000 MILES. *AK

---

**Make :** DODGE          **Model :** DURANGO          **Year :** 1999

**Crash :** No            **Fire :** No                **Number of Injuries:** 0

**ODI ID Number :** 10028817          **Date of Failure:** January 22, 2003

**Component:** SUSPENSION:FRONT:CONTROL ARM:UPPER BALL JOINT

**Summary:**
   I HAVE A 1999 DODGE DURANGO. THE BALL JOINTS WRE OUT AND I HAD THE DRIVER'S SIDE WHEEL FALL OFF
WHILE GOING DOWN THE ROAD. I SPENT SEVERAL THOUSAND DOLLARS IN REPAIRS AT A DODGE DEALERSHIP. HAS
THERE BEEN A RECALL OR OTHER SIMILAR INCIDENTS? THANKS, KENNETH LOWRIE

---

**Make :** DODGE          **Model :** DURANGO          **Year :** 1999

**Crash :** No            **Fire :** No                **Number of Injuries:** 0

**ODI ID Number :** 10043695          **Date of Failure:** February 20, 2003

**Component:** SUSPENSION:FRONT:CONTROL ARM:UPPER BALL JOINT

**Summary:**
   I AM THE ORIGINAL OWNER OF A 1999 DODGE DURANGO. IT CURRENTLY HAS 77,000 MILES ON IT. I JUST
WATCHED A REPORT ON CBS EYE ON AMERICA ABOUT THE NHTSA'S INVESTIGATION INTO FAULTY UPPER BALL
JOINTS ON THE DODGE DURANGOS. *AK I'M WRITING BECAUSE IN THE REPORT A GENTLEMAN DESCRIBED THE
SYMPTOMS HE FOUND, THAT WHEN CHECKED CONFIRMED THE BALL JOIN FAILURE. I HAVE BEEN CHASING THOSE
EXACT SYMPTOMS FOR THE BETTER PART OF 2003. NO ONE HAS BEEN ABLE TO DIAGNOSE THE PROBLEM. I WANT TO
KNOW HOW I CAN FOLLOW THIS ISSUE AND THE BEST COURSE OF ACTION FOR ME TO TAKE IMMEDIATELY. I AM ONE
OF THOSE WHO LOST A TECH JOB 21 MONTHS AGO, I AM FIGHTING TO KEEP MY FAMILY AFLOAT FINANCIALLY WHILE
I SECURE ANOTHER JOB - I CANNOT AFFORD TO PERFORM PREVENTIVELY MAINTENANCE ON MY DURANGO - AND IT
IS NOT NORMAL WEAR AND TEAR, NOR IS IT MY FAULT. IF DODGE SHOULD BE HELD ACCOUNTABLE, I NEED THEM TO
DO SO QUICKLY...MY FAMILY'S SAFETY IS NOW AT RISK.*AK

---

**Make :** DODGE          **Model :** DURANGO          **Year :** 1999

**Crash :** No            **Fire :** No                **Number of Injuries:** 0

**ODI ID Number :** 10029026          **Date of Failure:** February 20, 2003

**Component:** SUSPENSION:FRONT:CONTROL ARM:UPPER BALL JOINT

**Summary:**
   ON FEB 20, 2003 WHEN I BROUGHT MY DODGE DURANGO IN FOR ROUTINE SERVICE (49,070 MILES) I WAS
INFORMED THAT, "THE UPPER BALL JOINTS AND TIE RODS WERE WORN OUT AND NEEDED REPLACEMENT OR THE
STEERING COULD SUDDENLY FAIL." I WAS CHARGE $865.28 FOR THIS REPAIR WHICH WAS NOT COVERED BY THE
WARRANTY. I PROTESTED THAT IT WAS PREMATURE FOR THIS SORT OF WEAR AFTER ONLY 49000 MILES BUT THE
MECHANIC INSISTED THE WORK NEEDED TO BE DONE FOR "SAFELY REASONS" AND THAT CHRYSLER WOULD NOT
COVER THE COST. I HAVE THE RECEIPT FOR THE WORK.*AK

---

DODGE                  Model : DURANGO           Year : 2000
: No                   Fire : No                 Number of Injuries: 0
ID Number : 10041324                             Date of Failure: October 3, 2003
omponent: WHEELS

**Summary:**
THE BALL JOINT HOLDING WHEEL ON VERTICAL AXLE FAILED CAUSING WHEEL TO TILT 45 DEGREES FROM A STRAIGHT ANGLE. LUCKILY THIS HAPPENED WHEN MY WIFE WAS LEAVING THE GROCERY PARKING LOT AND WAS NOT ON MAIN ROAD DRIVING HIGHER SPEED, OTHERWISE COULD HAVE BEEN FATAL. *JB

---

**Make : DODGE**       **Model : DURANGO**       **Year : 2000**
**Crash : No**         **Fire : No**             **Number of Injuries: 0**
**ODI ID Number : 10046253**                     **Date of Failure: November 3, 2003**
**Component: WHEELS**

**Summary:**
WHILE DRIVING 65 MPH AND WITHOUT WARNING FRONT PASSENGER WHEEL FELL OFF. THE DRIVER WAS ABLE TO PULL OVER TO THE SHOULDER. VEHICLE WAS TOWED TO THE DEALER FOR ANALYSIS. THE MECHANIC RECOMMENDED THAT THE WHEEL BE REPLACED. *AK

---

**Make : DODGE**       **Model : DURANGO**       **Year : 2000**
**Crash : No**         **Fire : No**             **Number of Injuries: 5**
**ODI ID Number : 10045092**                     **Date of Failure: September 27, 2003**
**Component: WHEELS**

**Summary:**
WHILE DRIVING IN A 2000 DODGE DURANGO THE LEFT FRONT WHEEL FELL OFF CAUSING THE VEHICLE TO ROLL NUMEROUS TIMES. THREE PEOPLE DIED AS A RESULT OF THIS ACCIDENT. *LA

---

**Make : DODGE**       **Model : DURANGO**       **Year : 2000**
**Crash : No**         **Fire : No**             **Number of Injuries: 0**
**ODI ID Number : 894073**                       **Date of Failure: July 22, 2001**
**Component: WHEELS**

**Summary:**
WHILE DRIVING 70 MPH LEFT REAR WHEEL FLARE CAME OFF AND NEARLY HIT VEHICLE BEHIND HIM. DEALER TAPED IT BACK ON. FACTORY REPRESENTATIVE SAID IT SEEMED TO BE SECURE. CONSUMER FELT THIS WAS A SEFETY ISSUE.*AK CONSUMER STATES FACTORY INTALLS THIS WITH D2 SIDED TAPE. *SLC

---

**Make : DODGE**       **Model : DURANGO**       **Year : 2000**
**Crash : No**         **Fire : No**             **Number of Injuries: 0**
**ODI ID Number : 10030098**                     **Date of Failure: July 18, 2003**
**Component: WHEELS**

**Summary:**
WHILE PULLING INTO AN INTERSECTION VEHICLE MADE A LOUD CRUNCHING SOUND. CONSUMER PULLED OVER, AND NOTICED THAT DRIVERS SIDE FRONT WHEEL HAD ALMOST COME OFF. *AK THE LEFT FRONT AXLE BROKE. MECHANIC RECOMMENDED REPLACING THE HUB AND BEARING, STEERING KNUCKLE, ABS SENSOR, FRONT BRAKE AND CALIPER PINS. CONSUMER DECLINED AND NOTED THAT THE REPAIR INCLUDED KEEPING THE FAILED PARTS. *PH *NLM



# Office of Defects Investigation

# Complaints - Search Results

Records Displayed.

| Report Date : **February 12, 2004 at _05:09 PM_** |
| --- |
| TYPE : **VEHICLE** |
| YEAR : **All Years** |
| MAKE : **DODGE** |
| MODEL : **DURANGO** |

**Make : DODGE**      **Model : DURANGO**      **Year : 1999**

**Crash : No**      **Fire : No**      **Number of Injuries: 0**

**ODI ID Number : 10040813**      **Date of Failure:** September 26, 2003

**Component: WHEELS**

**Summary:**
　　CONSUMER STATED THAT WHEN HE PURCHASED TIRES IN MARCH OF 2002 AND WANTED THE TIRES ALIGNED, HE WAS TOLD BY DEALER THAT BALL JOINTS WERE BAD. LATER, TOOK VEHICLE TO ANOTHER DEALER AND WAS TOLD THAT BALL JOINTS WERE ALRIGHT. THEN ,ABOUT 2-3 WEEKS LATER WHILE PUTTING BRAKES ON VEHICLE DEALER NOTICED THAT WHEELS WERE WOBBLY DUE TO DEFECTIVE BALL JOINTS. HOWEVER, SINCE WARRANTY EXPIRED CONSUMER COULD NOT GET HELP.*AK CONSUMER STATED THAT WHEN HE PURCHASED TIRES IN MARCH OF 2002 AND WANTED THE TIRES ALIGNED, HE WAS TOLD BY DEALER THAT BALL JOINTS WERE BAD. LATER, TOOK VEHICLE TO ANOTHER DEALER AND WAS TOLD THAT BALL JOINTS WERE ALRIGHT. THEN ,ABOUT 2-3 WEEKS LATER WHILE PUTTING BRAKES ON VEHICLE DEALER NOTICED THAT WHEELS WERE WOBBLY DUE TO DEFECTIVE BALL JOINTS. VEHICLE WAS OUT OF WARRANTY AND CONSUMER IS NOT ORGINIAL OWNER OF VEHICLE SO THE MANUFACTURER WOULD NOT DO ANYTHING TO HELP. THE ESTIMATE FOR REPAIRS CAME TO $1943.25. *MR

**Make : DODGE**      **Model : DURANGO**      **Year : 1999**

**Crash : No**      **Fire : No**      **Number of Injuries: 0**

**ODI ID Number : 10044903**      **Date of Failure:** October 28, 2003

**Component: WHEELS**

**Summary:**
　　THE PASSENGER SIDE FRONT WHEEL FELL OFF WHILE DRIVING 35 MPH ON THE ROAD. DRIVER WAS ABLE TO PULL THE VEHICLE OFF THE ROAD. NO INJURIES WERE REPORTED. VEHILCE WAS TOWED TO THE DEALER. THE PROBLEM WAS UNDETERMINED AT THIS TIME. *AK

**Make : DODGE**      **Model : DURANGO**      **Year : 1999**

**Crash : No**      **Fire : No**      **Number of Injuries: 0**

**ODI ID Number : 10038486**      **Date of Failure:** September 2, 2002

**Component: WHEELS**

**Summary:**
　　LEFT REAR TIRE RIM SEPARATED FROM THE AXLE. CAUSING CONSUMER TO LOSE CONTROL. WHILE DRIVING AROUND A SMALL BEND IN THE ROAD THE VEHICLE PULLED TO THE LEFT. THE DRIVER TRIED TO STEER THE VEHICLE BACK INTO THE RIGHT LANE BUT LOST CONTROL IF THE VEHICLE. IT SPUN AROUND, HIT A BARRIER WALL AND CAME

O REST FACING TRAFFIC. THE LEFT REAR WHEEL SEPARATED AND WAS FOUND ACROSS THE HIGHWAY. IT WAS
DETERMINED BY AN INVESTIGATOR THAT THE LEFT REAR TIRE/RIM SEPARATED AND CAUSED THE ACCIDENT. *NLM

---

**Make : DODGE**          **Model : DURANGO**          **Year : 1999**

**Crash : No**            **Fire : No**                **Number of Injuries:** 0

**ODI ID Number : 10034008**                          **Date of Failure:** September 2, 2002

**Component: WHEELS**

**Summary:**
     VEHICLE'S LEFT REAR WHEEL SEPARATED FROM AXLE CAUSING VEHICLE TO GO OUT OF CONTROL. *MR THE
CONSUMER HAD GONE AROUND A SMALL BEND AND THE VEHICLE PULLED TO THE LEFT. AS THE CONSUMER TRIED TO
STEER BACK INTO THE LANE, THE VEHICLE WENT INTO THE RIGHT LANE. THE CONSUMER HAD NO CONTROL OF THE
STEERING. THE CONSUMER APPLIED THE BRAKES BUT THE VEHICLE DIDN'T SLOW DOWN, INSTEAD IT WENT OUT
CONTROL AND TRAVELED BACKWARDS FACING TRAFFIC, THE VEHICLE HIT A BARRIER WALL OF THE BRIDGE ON THE
DRIVERS SIDE, BOUNCED OFF THE WALL, SPUN AROUND AGAIN, AND HIT THE BARRIER WALL AGAIN IN THE REAR
LEFT SIDE. THE VEHICLE SPUN AROUND AGAIN AND ENDED BACK ON THE INTERSTATE. THE LEFT REAR WHEEL HAD
SEPARATED FROM THE VEHICLE AND WAS FOUND ACROSS THE HIGHWAY. A WITNESS STATED THAT IT APPEARED AS
IF THE REAR AXLE CRACKED AND THE LEFT REAR WHEEL WENT AT AN OPPOSITE ANGLE OF THE VEHICLE. *SCC *JB

---

**Make : DODGE**          **Model : DURANGO**          **Year : 1999**

**Crash : No**            **Fire : No**                **Number of Injuries:** 0

**ODI ID Number : 10044862**                          **Date of Failure:** August 6, 2003

**Component: WHEELS**

**Summary:**
  .. WHILE DRIVING APPROXIMATELY 45 MPH LEFT FRONT WHEEL COLLAPSED, CAUSING THE VEHICLE TO HIT ONE
OTHER VEHICLES THAT WERE ON THE ROAD. *AK *SC

---

**Make : DODGE**          **Model : DURANGO**          **Year : 1999**

**Crash : No**            **Fire : No**

**ODI ID Number : 10029928**                          **Date of Failure:**

**Component: WHEELS**

**Summary:**
     CONSUMER NOTICED WHILE TRAVELING 50-55 MPH AND WITHOUT ANY INDICATION PASSENGER'S FRONT WHEEL
FELL OFF. DEALER WAS CONTACTED. *AK

---

**Make : DODGE**          **Model : DURANGO**          **Year : 1999**

**Crash : No**            **Fire : No**                **Number of Injuries:** 0

**ODI ID Number : 10031911**                          **Date of Failure:**

**Component: WHEELS**

**Summary:**
     CONSUMER STATED THAT VEHICLE WAS TAKEN IN FOR A ROUTINE INSPECTION, AND MECHANIC NOTICED THAT
FRONT WHEELS WERE ABOUT TO FALL OFF DUE TO BALL JOINTS BEING WORN OUT.*AK

---

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JOHN BUSSIAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cause No. _____ |
| | ) | |
| | ) | |
| DAIMLERCHRYSLER CORPORATION; | ) | |
| DAIMLERCHRYSLER AG; | ) | |
| DAIMLERCHRYSLER MOTORS | ) | |
| COMPANY OF DELAWARE LLC; and | ) | |
| DAIMLERCHRYSLER NORTH | ) | |
| AMERICA HOLDING CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF STEPHEN L. WILLIAMS

Stephen L. Williams, first being duly sworn, states:

1.     I am more than twenty-one years of age and competent to make this affidavit. It is based on my personal knowledge, and a review of documents of DaimlerChrysler Corporation.

2.     I received a Bachelor of Science in Mechanical Engineering from Michigan Technological University in 1986. I received a Masters in Business Administration from Wayne State University in 1992. I received a Masters in Mechanical Engineering from Wayne State University in 1996. Since 1990, I have been employed by DaimlerChrysler Corporation.

3.     I understand that the vehicles at issue in this litigation (as alleged in the Complaint) are model-years 1998 through 2003 Dodge Durango vehicles, and that the plaintiff contends that the "control arm and the ball joint on the front suspension design are faulty, inferior, and prone to sudden failure."

4.     I understand that through this lawsuit the plaintiff seeks all forms of equitable relief, and that such relief could include: an order for Defendants to redesign and retrofit the

control arm and upper ball joint on Dodge Durango vehicle from model year 1998 to 2003; and/or and order requiring Defendants to institute, at their own cost, a public awareness campaign to disseminate information about the alleged defect in these vehicles.

5.     DaimlerChrysler Corporation now has available for installation in model-year 1998-2003 Dodge Durango vehicles a redesigned upper ball joint; however, there is no redesigned control arm or lower ball joint.  If ordered by the Court to design and develop a different control arm and/or a different lower ball joint and/or a different upper ball joint (if the current redesign was not acceptable to the Court), set costs would have to be incurred by Defendants.  I am familiar with the design and development costs incurred when a vehicle component must be retrofitted.  If the Court were to find that the "control arm and the ball joint on the front suspension" of model-year 1998-2003 Dodge Durangos was improperly designed, and were to order Defendants to correct this condition, they would have to incur costs associated with redesign, development, and tooling.  Because there are so many unknowns, no one can know for certain the exact amount of these costs.  However, although the exact costs cannot be determined at this time, I can say, without any doubt, that the cost would exceed $75,000.  The costs involved would include, and not be limited to, redesign and development costs, and federal compliance report costs.

6.     The redesign, development, and tooling costs described in Paragraph 5 would not be volume-dependent; in other words, the entire amount of the redesign, development, and tooling costs would have to be incurred even if the named Defendants were ordered to redesigned the control arm or the lower ball joints or the upper ball joints on just the named plaintiff's vehicle.

7.     I am also familiar with the costs associated with notifying vehicle owners of potential safety concerns.  Even putting aside the cost of any television or print media advertising

1830491.1                                          2

which might be ordered by the Court, I can say, without any doubt, that the cost of notifying vehicle owners of any potential safety issue in model-year 1998-2003 Dodge Durangos would exceed $75,000. Historical data at DaimlerChrysler Corporation indicates that the cost of formulating, procuring, and processing notice to a class of vehicle owners is at least $1.50 per vehicle. The total number of model-year 1998 through 2003 Dodge Durango vehicles sold by DaimlerChrysler Corporation was in excess of 886,000. Thus, the cost of notification to Defendants would greatly exceed $75,000.

8.      If the Court were to grant such equitable relief, and were to order the Defendants to provide such notification and/or conduct some type of public awareness campaign, these costs would be the same whether the order was entered in favor of the plaintiff, individually, or as the representative of the class.

FURTHER AFFIANT SAYETH NOT.

_____
Stephen L. Williams

STATE OF MICHIGAN      )
                       )
COUNTY OF OAKLAND      )

Subscribed and sworn to before me, a Notary Public, this 28th day of April, 2003

_____
Notary Public

PEGGY A. STEWART
NOTARY PUBLIC MACOMB CO., MI
MY COMMISSION EXPIRES May 2, 2005

My Commission Expires:

_May 2, 2005_____

*Acting in Oakland County*

1830491.1                              3

ATTACHMENT/EXHIBIT_____

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

BAJRAM ZEQIRI, on behalf of himself
and all others similarly situated,

      Plaintiff,

      v.                            Case No. 03-C-0852

DAIMLERCHRYSLER AG,
DAIMLERCHRYSLER NORTH
AMERICA HOLDING CORPORATION,

      Defendants.

---

NAVDEEP SING, on behalf of himself
and all others similarly situated,

      Plaintiff,

      v.                            Case No. 03-C-0853

DAIMLERCHRYSLER AG,
DAIMLERCHRYSLER NORTH
AMERICA HOLDING CORPORATION,

      Defendants.

---

## ORDER

These cases were removed from the Milwaukee County Circuit Court to this

court on September 4, 2003. On September 17, 2003, defendant

DaimlerChrysler North America Holding Corporation ("DCNA") filed a motion

to consolidate the cases because they contained identical questions of law and

fact. *See* Fed. R. Civ. P. 42(a) (stating that a court may order actions consolidated where the actions involve a common question of law or fact). No party has objected to the motion to consolidate. The plaintiff in each action alleges that model-year 1998 through 2003 Dodge Durango vehicles are defective in that the upper ball joint is faulty, inferior, and prone to sudden failure; the plaintiffs seek relief under identical theories of recovery. (*See* Motion to Consolidate, ¶¶ 1, 4.) Therefore, the court will order that *Singh v. DaimlerChrysler AG, et al.,* Case No. 03-C-0853, be consolidated with *Zeqiri v. DaimlerChrysler AG, et al.,* Case No. 03-C-0852, for all further proceedings. All of the documents in these cases shall hereafter be docketed on the docket sheet for Case No. 03-C-0852 pursuant to Civil L.R. 42.1(b).

The plaintiffs filed motions to remand on the basis that the damages sought in the original complaint cannot reach the $75,000 amount in controversy and that the first amended complaint does not seek injunctive relief and limits recovery below the amount in controversy. The court must deny the plaintiffs' motions. In determining whether the plaintiffs' claims exceed the amount in controversy, the court looks to the allegations of the plaintiffs' original complaints and ignores the scaled back relief sought in the plaintiffs' amended complaints. *See Gossmeyer v. McDonald*, 128 F.3d 481, 487-88 (7th Cir. 1997) ("[W]hether subject matter jurisdiction exists is a question answered by looking at the

- 2 -

complaint *as it existed at the time the petition for removal was filed*. . . . Once an action is properly removed from state court to federal court, an amendment of the complaint rendering it outside the federal court's jurisdiction does not defeat the original removal.") (emphasis in original). *Compare Jeffrey v. Cross Country Bank,* 131 F. Supp. 2d 1067, 1069 (E.D. Wis. 2001) (remanding action where plaintiff disavowed a damage claim in excess of $75,000 one day *before* removal was effected).

The cost to DCNA of the injunctive relief sought in the plaintiffs' original complaints exceeds $75,000. In this circuit, "the jurisdictional minimum in diversity cases is not the amount sought by the plaintiff but the amount at stake to either party to the suit." *BEM I, L.L.C. v. Anthropologie, Inc.,* 301 F.3d 549, 553 (7th Cir. 2002), citing *Del Vecchio,* 230 F.3d at 977 (7th Cir. 2000); *In re Brand Name Prescription Drugs Antitrust Litigation,* 123 F.3d 599, 609 (7th Cir. 1997); *McCarty v. Amoco Pipeline Co.,* 595 F.2d 389, 395 (7th Cir. 1979) (adopting "either viewpoint" approach, where the amount in controversy can be determined from either the plaintiff's or the defendant's viewpoint). Therefore, if the cost to DCNA of complying with the injunctive relief would exceed $75,000, the amount in controversy requirement is satisfied. *In re Brand Name Prescription Drugs,* 123 F.3d at 609-10 (discussing various ways in which injunctive relief might carry a case over the amount in controversy threshold).

DCNA argues that an injunction requiring DCNA "to repair the defective upper ball joint on Dodge Durangos from the model years 1998 to 2003" would force DCNA to redesign and redevelop that upper ball joint at a cost that would exceed $75,000. DCNA also argues that an injunction requiring DCNA to "institute, at [its] own cost, an awareness campaign to alert the Class of the defect in and the dangers associated with, the Dodge Durango" would cost DCNA more than $75,000. In support of its argument, DCNA submits an affidavit of Stephen L. Williams who states that both the redesign and the awareness campaign would cost more than $75,000 and would do so whether the injunction ran in favor of one plaintiff or of the entire proposed class. (Williams Aff. ¶¶ 5-8.)[1] The plaintiffs reply that replacing a defective part would not constitute a change in DCNA's business processes, (*see* plaintiff's reply brief, at 3), but the plaintiffs do not dispute that redesigning the upper ball joint would cost DCNA more than $75,000. Moreover, the plaintiffs do not dispute that an awareness campaign would cost DCNA more than $75,000. DCNA has the burden of proving to a reasonable probability that jurisdiction exists because DCNA is the party attempting to invoke federal jurisdiction, *see Chase v. Shop 'N Save Warehouse Foods, Inc.,* 110 F.3d 424, 427 (7th Cir. 1997), and Williams' affidavit satisfies the

---

[1]Williams' affidavit is attached as Exhibit B to DCNA's September 4, 2003 Notice of Removal.

court that there is a reasonable probability that the cost to DCNA of redesigning the upper ball joint and instituting an awareness campaign would exceed $75,000. *See Holcombe v. Smithkline Beecham Corp.*, 272 F. Supp. 2d 792, 798 (E.D. Wis. 2003) ("An unchallenged affidavit with respect to the cost of complying with an injunction is sufficient to establish the amount in controversy."). The court must deny the plaintiffs' motions to remand.

DCNA has filed motions to dismiss the plaintiffs' original and amended complaints. Because the plaintiffs have filed amended complaints, the court will dismiss as moot DCNA's motions to dismiss the plaintiffs' original complaints. *See Duda v. Board of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1057 (7th Cir. 1998) (stating that an amended pleading supersedes the prior pleading). The court will also grant the plaintiffs' motions to stay briefing of DCNA's motion to dismiss the plaintiffs' amended complaints. The plaintiffs shall file a brief in response to DCNA's motions to dismiss the plaintiffs' first amended complaints on or before twenty (20) days from the date of this order; DCNA shall file a reply brief on or before twenty (20) days from the receipt of the plaintiffs' brief.

Accordingly,

**IT IS ORDERED** that DCNA's motions to consolidate [docket # 3 in Case No. 03-C-0852; docket # 3 in Case No. 03-C-0853] be and the same are hereby

**GRANTED**; Case No. 03-C-0852 and Case No. 03-C-0853 are hereby **CONSOLIDATED** under Case No. 03-C-0852;

IT IS FURTHER ORDERED that the plaintiffs' motions to remand [docket # 5 in Case No. 03-C-0852; docket # 5 in Case No. 03-C-0853] be and the same are hereby **DENIED**;

IT IS FURTHER ORDERED that DCNA's October 9, 2003 motions to dismiss the plaintiffs' original complaints [docket # 9 in Case No. 03-C-0852; docket # 7 in Case No. 03-C-0853] be and the same are hereby **DENIED** as moot;

IT IS FURTHER ORDERED that the plaintiffs' motions to stay briefing [docket # 21 in Case No. 03-C-0852; docket # 15 in Case No. 03-C-0853] be and the same are hereby **GRANTED**;

IT IS FURTHER ORDERED that the plaintiffs' motions to clarify time to respond [docket # 15 in Case No. 03-C-0852; docket # 12 in Case No. 03-C-0853] be and the same are hereby **GRANTED**; the plaintiff shall file a brief in response to DCNA's motion to dismiss the plaintiff's first amended complaint

on or before twenty (20) days from the date of this order; DCNA shall file a reply brief on or before twenty (20) days from the receipt of the plaintiff's brief.

Dated at Milwaukee, Wisconsin this __9th__ day of April, 2004.

BY THE COURT:


_s/ J. P. Stadtmueller_
J. P. Stadtmueller
U.S. District Judge

ATTACHMENT/EXHIBIT_____

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JOHN BUSSIAN,               )
                                )
        Plaintiff,       )
                                )
vs.                        )     Cause No. _____
                                )
                                )
DAIMLERCHRYSLER CORPORATION; )
DAIMLERCHRYSLER AG;        )
DAIMLERCHRYSLER MOTORS    )
COMPANY OF DELAWARE LLC; and  )
DAIMLERCHRYSLER NORTH      )
AMERICA HOLDING CORPORATION, )
                                )
        Defendants.    )

## AFFIDAVIT OF STEPHEN L. WILLIAMS

Stephen L. Williams, first being duly sworn, states:

1.     I am more than twenty-one years of age and competent to make this affidavit. It is based on my personal knowledge, and a review of documents of DaimlerChrysler Corporation.

2.     I received a Bachelor of Science in Mechanical Engineering from Michigan Technological University in 1986. I received a Masters in Business Administration from Wayne State University in 1992. I received a Masters in Mechanical Engineering from Wayne State University in 1996. Since 1990, I have been employed by DaimlerChrysler Corporation.

3.     I understand that the vehicles at issue in this litigation (as alleged in the Complaint) are model-years 1998 through 2003 Dodge Durango vehicles, and that the plaintiff contends that the "control arm and the ball joint on the front suspension design are faulty, inferior, and prone to sudden failure."

4.     I understand that through this lawsuit the plaintiff seeks all forms of equitable relief, and that such relief could include: an order for Defendants to redesign and retrofit the

control arm and upper ball joint on Dodge Durango vehicle from model year 1998 to 2003; and/or and order requiring Defendants to institute, at their own cost, a public awareness campaign to disseminate information about the alleged defect in these vehicles.

5.      DaimlerChrysler Corporation now has available for installation in model-year 1998-2003 Dodge Durango vehicles a redesigned upper ball joint; however, there is no redesigned control arm or lower ball joint.  If ordered by the Court to design and develop a different control arm and/or a different lower ball joint and/or a different upper ball joint (if the current redesign was not acceptable to the Court), set costs would have to be incurred by Defendants.  I am familiar with the design and development costs incurred when a vehicle component must be retrofitted.  If the Court were to find that the "control arm and the ball joint on the front suspension" of model-year 1998-2003 Dodge Durangos was improperly designed, and were to order Defendants to correct this condition, they would have to incur costs associated with redesign, development, and tooling.  Because there are so many unknowns, no one can know for certain the exact amount of these costs.  However, although the exact costs cannot be determined at this time, I can say, without any doubt, that the cost would exceed $75,000.  The costs involved would include, and not be limited to, redesign and development costs, and federal compliance report costs.

6.      The redesign, development, and tooling costs described in Paragraph 5 would not be volume-dependent; in other words, the entire amount of the redesign, development, and tooling costs would have to be incurred even if the named Defendants were ordered to redesigned the control arm or the lower ball joints or the upper ball joints on just the named plaintiff's vehicle.

7.      I am also familiar with the costs associated with notifying vehicle owners of potential safety concerns.  Even putting aside the cost of any television or print media advertising

1830491.1                                  2

which might be ordered by the Court, I can say, without any doubt, that the cost of notifying vehicle owners of any potential safety issue in model-year 1998-2003 Dodge Durangos would exceed $75,000. Historical data at DaimlerChrysler Corporation indicates that the cost of formulating, procuring, and processing notice to a class of vehicle owners is at least $1.50 per vehicle. The total number of model-year 1998 through 2003 Dodge Durango vehicles sold by DaimlerChrysler Corporation was in excess of 886,000. Thus, the cost of notification to Defendants would greatly exceed $75,000.

8.     If the Court were to grant such equitable relief, and were to order the Defendants to provide such notification and/or conduct some type of public awareness campaign, these costs would be the same whether the order was entered in favor of the plaintiff, individually, or as the representative of the class.

FURTHER AFFIANT SAYETH NOT.

_____
Stephen L. Williams

STATE OF MICHIGAN     )
                      )
COUNTY OF OAKLAND     )

Subscribed and sworn to before me, a Notary Public, this 28th day of April, 2003

_____
Notary Public
PEGGY A. STEWART
NOTARY PUBLIC MACOMB CO., MI
MY COMMISSION EXPIRES May 2, 2005

My Commission Expires:

*acting in Oakland County*

*May 2, 2005*