IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JOHN BUSSIAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:04CV00387 |
| | ) | |
| DAIMLERCHRYSLER CORPORATION, | ) | |
| DAIMLERCHRYSLER AG, | ) | |
| DAIMLERCHRYSLER MOTORS | ) | |
| COMPANY OF DELAWARE, LLC, and | ) | |
| DAIMLERCHRYSLER NORTH | ) | |
| AMERICA HOLDING CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This matter comes before the Court on the motion of Plaintiff John Bussian and Intervenor Plaintiffs Clyde and Brenda Freeman to certify a plaintiff class in this action pursuant to Rule 23 of the Federal Rules of Civil Procedure. (Pleading No. 83.) Defendants DaimlerChrysler Corporation, DaimlerChrysler Motors Company of Delaware, LLC, and DaimlerChrysler North America Holding Corporation[1] (collectively "DaimlerChrysler" or "Defendants") have opposed the motion, and Plaintiffs have filed a reply. The pending motion has been fully briefed and is ready for a ruling. The Court does not call for oral argument, finding the briefing to be fully adequate. (*See* Pleading No. 123.)

---

[1] DaimlerChrysler AG is a German holding company and has not been served with process in this matter.

## I. Procedural History

Plaintiff Bussian filed this class action lawsuit in the Superior Court for Durham County, North Carolina, seeking to represent a class of individuals in the United States, except within the State of Wisconsin, who owned or leased model year 1998 through 2003 Dodge Durango sport utility vehicles. The proposed class expressly excluded any individuals with claims against DaimlerChrysler for personal injuries. The complaint alleged that these Dodge Durango vehicles are "inherently defective in that the control arm and the ball joint[2] on the front suspension design are faulty, inferior, and prone to sudden failure." (Pleading No. 1, Defs.' Notice of Removal, Ex. A, Class Action Compl. ¶ 2.) The complaint contained three counts: (1) breach of express warranties; (2) breach of the implied warranty of merchantability; and (3) violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.*[3]

On May 3, 2004, Defendants removed the case to this Court, and on May 10, 2004, Defendants filed a motion to dismiss under Rule 12(b)(6). On September 1, 2004, Plaintiff filed a motion for class certification and a motion for leave to file a second amended complaint. Pursuant to a Consent Scheduling Order entered on November 10, 2004, the

---

[2] Ball joints are part of the steering and suspension system in Durangos and other vehicles. The ball joints, connected to control arms, allow the wheels to turn and the system to absorb bumps without breaking.

[3] On April 5, 2004, Plaintiff filed a First Amended Class Action Complaint, which made changes that are not material to a determination of the instant motions.

Court permitted Plaintiff to file a second amended complaint and delayed Defendants' obligation to respond to Plaintiff's motion for class certification until after the Court had ruled on Defendants' motion to dismiss.

The Second Amended Class Action Complaint reduced the scope of the proposed class to North Carolina residents only, and added a fourth count against Defendants alleging violation of North Carolina's Unfair or Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1 *et seq*. Following the filing of Plaintiff's Second Amended Class Action Complaint, Defendants filed a renewed motion to dismiss under Rule 12(b)(6).

On November 3, 2005, this Court issued an Order and Recommendation recommending dismissal of all but the breach of express warranty claim. (Pleading No. 59.) The Court also recommended that the scope of the proposed class be narrowed to

> only those present and former owners and lessees of all model year 1998-1999 Dodge Durangos and two-wheel drive model year 2000-2003 Durangos who have actually suffered actual injury, i.e., sold their Durangos at a reduced amount; or replaced their Durangos' ball joints; or experienced property damage because of ball joint failure, either to other components of their Durangos or to other property.

(*Id.* at 31.) District Judge William L. Osteen adopted the recommended ruling on January 24, 2006. (Pleading No. 65.)

On May 15, 2006, Plaintiffs filed a Renewed Motion for Class Certification, seeking to maintain this action on behalf of "a class comprised of the Plaintiffs and all other North Carolina persons similarly situated; to wit, all present and former owners and lessees of model year 1998-1999 Dodge Durangos and two-wheel drive model year 2000-2003 Dodge

-3-

Durangos who have suffered actual injury" due to the premature, accelerated wear-out of the ball joints.[4] (Pleading No. 83.) Defendants oppose certification. The renewed motion for class certification has been referred to the undersigned Magistrate Judge for a recommended ruling.

## II. Facts Underlying Breach of Express Warranty Claim

Between 1998 and 2003, DaimlerChrysler manufactured the Dodge Durango sport utility vehicle ("SUV") and sold between 450,000 and 886,000 to the public. (Pleading No. 29, Second Am. Class Action Compl. (hereinafter "Compl.") ¶¶ 1, 22, 23, 29.) In May 2001, Plaintiff John Bussian, a resident of Durham County, North Carolina, purchased a used 1998 Dodge Durango. *Id.* ¶¶ 9, 44. DaimlerChrysler had issued a 3-year/36,000 mile express written warranty to cover the 1998 Durango. *Id.* ¶¶ 25, 35. However, at the time of Plaintiff's purchase, the three-year express warranty on his Durango had expired. *Id.* ¶¶ 44- 46, 56-64.

At some point after his purchase of the 1998 Durango, Plaintiff took the vehicle to a mechanic for an inspection. The mechanic allegedly informed Plaintiff that his ball joints had worn out prematurely and that failing to replace them would constitute a safety hazard. *Id.* ¶ 45. Plaintiff Bussian paid the mechanic $700 to replace the ball joints in his Durango.

---

[4]Plaintiffs' proposed class definition goes beyond class members identified by the Court in its Order of January 24, 2006, with respect to the meaning of "actual injury." The class certification that is recommended at the close of this opinion is the class identified in the January 24, 2006 Order.

-4-

*Id.* ¶ 46. Bussian alleges that after he became aware that many other Durango owners had experienced the same problem with ball joints, he requested that DaimlerChrysler reimburse him for the cost of repair. DaimlerChrysler refused to do so. *Id.* ¶ 47.

Clyde and Brenda Freeman own a 1999 Dodge Durango, which they purchased in Mocksville, North Carolina in July 1999. (Pleading No. 54, Ex. A, Freeman Intervenor Complaint ("Freeman Compl."), ¶ 4.) When the vehicle had been driven approximately 40,000 miles, the Freemans had to replace the front tires. *Id.* ¶ 5. When, after 10,000 miles, the new tires suffered uncharacteristic and premature wear, the Freemans took the Durango to a mechanic. (*Id.*) With just over 59,000 miles, the vehicle required new ball joints. (Pleading No. 84, Ex. C, Deposition of Clyde Freeman ("C. Freeman Dep.") at 44-47. The Freemans incurred several hundred dollars in repair costs associated with the defective ball joints. (Freeman Compl. ¶ 7.)

Both Bussian and the Freemans allege an inherently defective design and rely on a claim for breach of express warranty to recover the cost of repair of their vehicles. Plaintiffs allege that because the ball joints in Durangos cannot be re-lubricated, and the lubrication already inside the ball joints is "prone to deteriorate," the ball joints degrade or wear out rapidly. Plaintiffs maintain that DaimlerChrysler became aware of the ball joints' propensity to wear out prematurely through (1) their own records of customer complaints regarding the ball joints; (2) over 20,000 warranty claims relating to premature ball joint failure; (3) over 850 reports of ball joint failure to the National Highway Traffic Safety Administration

("NHTSA"); (4) an investigation by the NHTSA into the ball joints in Dodge Durangos; (5) various reports in the press concerning failure of the Durango's ball joints; (6) a class action lawsuit in Wisconsin regarding the Durango's ball joints; and (7) requests for action from consumer safety groups concerning the ball joints. (Compl. ¶¶ 30, 41; Freeman Compl. ¶ 3.)

Plaintiffs allege that despite Defendants' knowledge that the ball joints were inherently defective and prone to premature deterioration and sudden failure, Defendants refused to notify the public of the safety defect, issue a recall of affected vehicles, or reimburse owners for the replacement costs. (Compl. ¶¶ 30, 63, 68, 76-78, 83, 85, 88.) Plaintiffs allege that Defendants breached express warranties contained in the written limited express warranty (*id*. ¶¶ 57, 59) and in certain advertising and promotional literature for the Durango (*id*. ¶¶ 58, 59). Plaintiffs further allege that the durational limitations of the limited express warranty were unconscionable. (*Id*. ¶ 62.) Plaintiffs allege that the costs of ball joint or related repairs vary from $600 to $1,200. (*Id.* ¶¶ 39-40, 91.)

### III. Discussion

A.  Class Certification, General Principles

Federal Rule of Civil Procedure 23(a) imposes four conditions for class certification, commonly referred to as (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a). In addition to these four criteria, the class action must fall within one of the three categories enumerated in Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Here, Plaintiffs seek to proceed under Rule 23(b)(3),

which requires that common issues predominate over individual ones and that a class action be superior to other available methods of adjudication. Fed. R. Civ. P. 23(b)(3).

Although the Court need not decide the merits of the case in analyzing the motion for class certification, it may analyze essential elements of the substantive claims and review the pleadings and any facts procured through discovery in deciding whether certification is appropriate. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974); *DeLoach v. Philip Morris Cos.*, 206 F.R.D. 551, 554 (M.D.N.C. 2002).

B. Rule 23(a) Requirements

1. Numerosity

Rule 23 (a)(1) requires that the class membership be sufficiently large to warrant certification because the alternative of joinder is "impracticable." Fed. R. Civ. P. 23(a)(1); *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001). There is no magic number for purposes of satisfying Rule 23(a)(1). The court has broad discretion to determine whether the numerosity requirement is satisfied in light of the particular circumstances of each case. *Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984) (citations omitted). Plaintiffs submit evidence that between 1998 and 2003, DaimlerChrysler manufactured and sold approximately 823,438 Dodge Durango sport utility vehicles, and that 470,673 of those were not recalled as a result of an NHTSA investigation into the defective ball joints. (Pleading No. 84, Br. in Supp. of Pls.' Renewed Mot. for Class Certification, Ex. A, tables 1-2, at 7.) Plaintiffs reason that, assuming that North Carolina

residents own approximately 5 percent of the 470,673 vehicles not recalled, and further assuming a failure rate of 45 percent (based on documented failure statistics), there may be as many as 10,590 affected vehicles at issue in this class action. Under more conservative estimates, there is evidence suggesting the existence of at least 2,000 class members. (*Id.*, Br. at 6-7 n.7.)

Defendants maintain that Plaintiffs offer nothing but speculation to establish the numerosity requirement. However, the Court finds Plaintiffs' evidence of numerosity adequate to carry the burden under Rule 23(a)(1). *Cf. Centr. Wesleyan College v. W.R. Grace & Co.*, 6 F.3d 177, 183 (4th Cir. 1993) (upholding district court's finding of numerosity, in class action brought on behalf of colleges and universities that had suffered property damage as a result of friable asbestos, based on percentage of colleges and universities that had at least some facilities containing friable asbestos). While additional discovery may be necessary to identify those class members who have sustained actual injury, there is sufficient evidence of numerosity to show that joinder of all Plaintiffs is impracticable.

2.  Commonality

Rule 23(a)(2) requires that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Rule 23(a) test for commonality is not demanding, and is met when there is at least one issue whose resolution will affect all or a significant number of the putative class members. *See Woodard v. Online Info. Servs.*, 191 F.R.D. 502, 505 (E.D.N.C.

2000). This standard is easily satisfied in this case. Issues common to the proposed class include, *inter alia*, (1) whether the vehicles contain a design defect related to the ball joints; (2) whether Defendants were aware of that defect but refused to take corrective action; (3) whether Defendants made express warranties in advertising and promotional materials; (4) whether Defendants breached any express warranties; (5) whether Defendants' superior knowledge about the failure rate of the ball joints rendered durational and mileage limitations contained in the vehicle warranties unconscionable; and (6) whether Defendants' conduct caused injury to the members of the class. In arguing lack of commonality, Defendants focus on the Rule 23(b)(3) predominance requirement, and the Court will address that issue under its Rule 23(b)(3) analysis. The Court finds that Rule 23(a) commonality exists in this case.

   3.    Typicality

Under Rule 23(a)(3), the individual claim of a representative plaintiff must be sufficiently typical of the claims of the class as a whole. As with the Rule 23(a) commonality requirement, the typicality requirement is not exacting. "Typicality does not mean identical." *Simpson v. Specialty Retail Concepts*, 149 F.R.D. 94, 99 (M.D.N.C. 1993). The typicality requirement is met "if the plaintiffs' claims arise from the same event or practice or course of conduct that gives rise to the claims of other class members and plaintiffs' claims are based on the same legal theory." *Rodger v. Elec. Data Sys. Corp.*, 160 F.R.D. 532, 538 (E.D.N.C. 1995) (citations, internal punctuation omitted). Both Bussian

and the Freemans allege an inherently defective ball joint design and assert a claim for breach of express warranty to recover the cost of repair to their vehicles. Defendants offer no argument or evidence opposing a finding that the claims of the named Plaintiffs are typical of the class in general. (Pleading No.104, Defs.' Opp'n. to Renewed Mot. for Class Certification, at 21.) The Court finds the named Plaintiffs' claims to be sufficiently typical of the claims of the entire proposed class.

    4.    Adequacy of Representation

Under Rule 23(a)(4), the Court examines whether, given the nature of the named representatives' claim, the representatives will fairly and adequately protect the interests of the absent class members. Because class actions vest the named Plaintiffs with authority over the interests of the absent members, the Court must ensure that the named representatives are "part of the class and possess the same interests and suffer the same injury as the class members." *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 338 (4th Cir. 1998). The burden is on the Defendant to demonstrate that the proposed representatives will not adequately and fairly represent the class. *Haywood v. Barnes*, 109 F.R.D. 568, 579 (E.D.N.C. 1986); *McGlothlin v. Connors*, 142 F.R.D. 626, 633-34 (W.D.Va. 1992).

Defendants maintain that "conflicts abound" in this case, but focus on two alleged conflicts: Bussian's prior role as counsel in this action, and the differences in the warranties held by Bussian and the Freemans. First, Defendants point out that John Bussian has acted

as counsel for the class, giving him an incentive to maximize attorney's fees, an interest in conflict with that of other class members. Bussian is not currently acting as attorney of record, and there is no evidence to suggest that Bussian's limited service as counsel in the past will create a problem in the future. The Court notes, however, that any renewed representation by Bussian in this action could threaten his ability to adequately and fairly serve as a class representative. *See In Re Cadillac V8-6-4 Class Action*, 461 A.2d 736 (N.J. 1983).

Second, Defendants maintain that there is an inherent conflict between the Freemans (and absent class members like the Freemans) and Bussian (and absent class members like Bussian) because the Freemans' express warranty was different in duration than Bussian's. The Court is not convinced that this factual distinction renders the named Plaintiffs inadequate representatives or their claims atypical. To the extent that different class members had warranties of differing durations, the Court may create subclasses as necessary. Defendants do not appear to contend that there are more than two distinct durational warranties.

C.   Rule 23(b)(3) Requirements

The final inquiry the Court must make is under Rule 23(b)(3). In contrast to actions under Rules 23(b)(1) and (b)(2), Rule 23(b)(3) is designed for cases in which class action treatment is not clearly called for but "may nevertheless be convenient and desirable." *Amchem Prods.,* 521 U.S. at 615. To qualify for certification under Rule 23(b)(3), the

questions of law or fact common to the class must predominate over individual interests and the class action device must be superior to other available methods for fair and efficient adjudication of the case. Fed. R. Civ. P. 23(b)(3); *Gregory v. Finova Capital Corp.*, 442 F.3d 188, 190 (4th Cir. 2006).

      1.      Predominance of Common Questions of Law or Fact

Defendants argue that significant questions peculiar to different class members predominate over the common questions related to the alleged breach of express warranty. Defendants maintain that there were at least three distinct upper ball joint designs and at least two different durational warranties over the course of the class period. Even accepting these variations, the claim for breach of express warranty generally arises out of the same set of operative facts, and it is unlikely that the factual variations, such as varying uses and maintenance, will overwhelm the common factual issues.

On the legal theory, Defendants maintain that *every* element of the claim for breach of express warranty – existence of a warranty, breach, causation, and injury – requires an individualized inquiry and is not susceptible to class treatment. On the issue of whether Defendants made an express warranty, Plaintiffs point to the following statements, among others, made by Defendants:

- Upper ball joints are permanently lubricated and maintenance-free. Improved sealing assures durability equal to or greater than that provided by ball joints that require periodic lubrication. (Compl. ¶ 21.)

- Ball joints have "a projected design life of 10 years/150,000 miles." *Id.* ¶¶ 87-88.

Plaintiffs allege that these statements were made in promotional and advertising materials and represent "clear affirmations of fact that . . . go well beyond anything that might be considered [sales] 'puffery'" and constitute express warranties. (Pleading No. 42, Pls.' Mem. in Opp'n to Defs.' Mot. to Dismiss at 10.) The Court finds that the common issues of whether these representations were made, whether they represent clear affirmations of fact as opposed to mere puffery, and whether Defendants breached these warranties predominate over any individualized issues related to the existence of verbal warranties. These issues, as well as the issue of breach, appear sufficiently susceptible to class-wide proof, in the form of the advertising and promotional materials and evidence of the defective nature of the ball joints.

Defendants maintain that individualized issues of reliance defeat certification in this case. The cases on which Defendants rely involved allegations of fraud, or breach of express warranty claims in jurisdictions requiring individualized showings of reliance for those claims. However, it is not clear that individualized proof of reliance is necessary in this jurisdiction to establish liability on a claim for breach of express warranty. *Bernick v. Jurden*, 306 N.C. 435, 448, 293 S.E.2d 405, 413-14 (1982); *Kinlaw v. Long Mfg. N.C., Inc.*, 298 N.C. 494, 501 n.7, 259 S.E.2d 552, 557 n.7 (1979)(reliance need not always be expressly alleged and "can often be inferred from allegations of mere purchase . . . if the natural tendency of the representations made is . . . to induce such purchase.") Even if some level of individualized inquiry is required, the common issues relating to the existence of a

-13-

design defect, Defendants' knowledge of the defect, Defendants' failure to disclose the defect, and whether express warranties were made and breached are common issues that predominate over any individualized issues in this case.

The damages calculations in this case likewise do not appear to be particularly complex. While Plaintiffs must establish actual injury (*see* Pleading No. 59, Recommendation at 31), it is unlikely that the extent of such injury will vary so greatly as to defeat certification of a Rule 23(b)(3) class. Plaintiffs suggest that the range of damage is between $600 and $1,200 per class member. It has been commonly recognized that the necessity for calculation of damages on an individual basis should not preclude certification when the common issues that go to liability predominate. *DeLoach*, 206 F.R.D. at 566.

The unconscionability of durational and mileage limitations may require evidence of time, place and commercial setting, necessitating individualized inquiries. However, again, the Court does not find that these issues overwhelm the common issues susceptible to proof on a class-wide basis. The predominance inquiry simply "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623. The required predominance of common issues does not mean that individual issues must be *non-existent*. Any individual differences, however, must be of lesser overall significance than the common issues, and they must be manageable in a single class action. The Court finds that the breach of express warranty claim against Defendants arises out of

-14-

the same set of operative facts and is sufficiently susceptible of class-wide proof on liability to satisfy the predominance requirement of Rule 23(b)(3).

2. Superiority of the Class Action

Even assuming that common issues predominate, the Court must still determine that the class action is superior to other available methods for the fair and efficient adjudication of the controversy. Four factors inform this determination: (1) the interests of the members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of any related litigation already commenced; (3) the desirability or undesirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in the management of the class action. Fed. R. Civ. P. 23(b)(3)(A)-(D).

Defendants argue that the lack of superiority is evident in light of the fact that the NHTSA has already assumed jurisdiction over the issue of design defect in the ball joints of the Durango vehicles encompassed in this litigation, and that the NHTSA is the proper arbiter of this dispute. While the NHTSA conducted an investigation of alleged defects in the ball joints of 1998-2003 Dodge Durangos and recalled certain model year vehicles, it closed its investigation with respect to other model years, specifically noting that its decision not to pursue a recall of certain year vehicles did *not* equate to a finding of no problem or defect in the ball joints of those vehicles. *See* Nat'l Highway Traffic Safety Admin., *Engineering Analysis Closing Report*, Feb. 11, 2005 at 32 (available at http://www-odi.nhtsa.dot.gov/cars/problems/recalls/recallsearch.cfm). The cases cited by

-15-

Defendants are distinguishable, as they involved nationwide class actions, millions of plaintiffs, multiple legal theories, claims for diminished value and/or ongoing and potentially conflicting NHTSA investigations. Here, the proposed class consists only of North Carolina owners and lessees who have incurred actual damage as a result of the alleged defect. The NHTSA investigation has been closed, and injured consumers seeking damages are not constrained to petition for its reopening. *Cf. In re Cadillac V8-6-4 Class Action*, 461 A.2d at 746; *Ysbrand v. DaimlerChrysler Corp.*, 81 P.3d 618, 628 (Oklahoma 2003) (closed NHTSA investigation was not an "available" alternate method for adjudication).

There is nothing to suggest that this class action will present unusual management difficulties better addressed by an alternative procedure, that this forum is inappropriate, or that other, potentially conflicting litigation exists. Whereas recall and retrofit are remedies particularly within the competence of the NHTSA, courts are well situated to address claims for money damages. *Kent v. DaimlerChrysler Corp.*, 200 F. Supp. 2d 1208, 1218-19 (N.D. Cal. 2002) (no NHTSA primary jurisdiction where damage claims in defect class action were "within the conventional experience of judges.") In a case such as this one, where individual damages are small, it is unlikely that injured consumers would proceed in the absence of class certification. *DeLoach*, 206 F.R.D. at 566 (class treatment is superior to any other procedure where "[d]iscovery expenses alone would make individual pursuit of the claims prohibitive."). This factor dictates in favor of certification.

## Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiffs' Renewed Motion for Class Certification (Pleading No. 83) be granted insofar as the following plaintiff class should be certified:

> the Plaintiffs and all other North Carolina persons similarly situated; to wit, all present and former owners and lessees of model year 1998-1999 Dodge Durangos and two-wheel drive vehicle model year 2000-2003 Dodge Durangos who have suffered actual injury, that is, who have sold their Durangos at a reduced amount, or replaced their Durangos' ball joints, or experienced property damage because of ball joint failure, either to other components of their Durangos or to other property.

Further, **IT IS ORDERED** that, upon entry of any Order of a District Judge adopting, modifying, or rejecting this Recommendation, the Clerk shall give no less than 30 days notice to counsel of a pretrial conference before the undersigned to address the scheduling of remaining proceedings. The parties shall confer in advance and attempt to agree upon such a schedule.

           /s/ P. Trevor Sharp
           United States Magistrate Judge

Date: April 23, 2007

-17-

Case 1:04-cv-00387-WO-PTS   Document 137   Filed 04/23/07   Page 17 of 17